## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | CHAPTER 7 |
| **REMOTEDMD, L.L.C.** | CASE NO. 22-11254 (MSG) |
| Debtor | SECTION "A" |

### AMENDED MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO (A) PAY WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF

**NOW INTO COURT**, through undersigned counsel, comes RemoteMD, L.L.C. (the "*Movant*" or "*RemoteMD*"), who hereby submits this *Amended Motion for Entry of an Order (i) Authorizing the Debtor to (A) Pay Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (ii) Granting Related Relief* (the "*Motion*"). In support of the Motion, the Debtor avers as follows:

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Eastern District of Louisiana (the "*Court*") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis and rule-based predicates for the relief requested herein are sections 105(a), 303(f), 362(d), 363(b), 507(a), and 541(b)(1) Chapter 11 of Title 11 of the United States Code (11 U.S.C. §§ 101, as amended, *et seq.*, the "*Bankruptcy Code*"), Bankruptcy Rules 6003 and 6004 under the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rule(s)*"), and rule 9013-1 of the Uniform Local Rules of the United States Bankruptcy Court for the Eastern District of Louisiana (the "*Local Rules*").

{00379256-1}

## PROCEDURAL HISTORY AND BACKGROUND

4. On October 18, 2022, (the "*Petition Date*"), Robert Dudley, Premier Laboratory Services, Inc., Steele Strategies, Inc., Securitas Security Services USA, Inc. and KJG Strategies (the "*Petitioning Creditors*"), filed an Involuntary Petition Against a Non-Individual [Dkt. # 1], thereby commencing the above-captioned Bankruptcy Case. See 11 U.S.C. § 303(b).

5. On November 4, 2022, the Court entered the *Order Converting the Involuntary Bankruptcy Case to a Case Under Chapter 11 of the Bankruptcy Code and Notice of Election to Proceed Under Subchapter V of Chapter 11* ("*Order for Relief*") [Dkt. # 29] converting the case to a Chapter 11 proceeding under the Bankruptcy Code.

6. Since 2008, the Debtor has successfully provided a proprietary system for the delivery of healthcare, conceived and developed by the Debtor for distant/remote or inaccessible locations, such as Oil, Gas & Remote Industrial/Work Sites gaining the company a Global reputation for capability and quality of care on all seven continents. The Debtor further developed the capability to safely & responsibly provide comprehensive care for effectively treating Medical & Traumatic Emergencies, as well as, routine Medical Conditions. We further combined the same advanced Technology, Equipment, Training, Communication & Medical Skills for Civilian Sites, Government Sites, Disaster Response and routine, daily care for Assisted Living and Skilled Nursing Facilities. Using variations of these same Systems, we integrated our Technology with, *for purpose,* Training, Medicine & Communication Skills stretching our Medical Resources in a responsible and cost-effective fashion. This, literally, saves millions of dollars every year, while keeping elderly, debilitated patients comfortable in the familiarity of their normal surroundings. Particularly for minor issues, it avoids endless hours lying on uncomfortable, ER Stretchers, in prohibitively expensive Emergency Departments, often leading to increased morbidity due to

things like pressure sores and the many highly contagious vectors circulating through any Emergency Department. The Debtor provides proprietary Telemedicine System/program, specifically developed by the Debtor, to allow our Seniors to continue to safely & comfortably live within the confines of their own *homes*.

7. Debtor provides Consulting Services to assist Corporate Clients with the development, implementation, and management of their Medical Policies and Procedures; including Health & Hygiene Policies & Procedures, Infectious Disease Prevention & Avoidance Strategies; and Drug and Alcohol Avoidance Policies. The Debtor provides Real Time, 24/7/365, Remote Medical Care, Globally, including Subspecialty Care. Upon request, the Debtor provides Corporate Clients with MERP's, Medical Emergency Response Planning; information outlining Medical & Logistical Resources; including geographically specific Hospitals, Medical Clinics/Providers, Air, Land & Sea Transportation Providers specific for the duration of each and every project. Most importantly, Debtor offers in-depth, *trained for purpose*, Paramedics, Physicians and Nurses for our Proprietary IREMS Program. Each individual goes through this very in-depth and personal education every two years on top of all of their other required training to remain in compliance with all Governmental & Industrial Regulations

8. The Debtor also offers training for outside Healthcare Providers who treat patients in an Industrial Setting. The Debtor also offers American Heart Association Courses, National Association of Emergency Medical Technician Courses, United States Coast Guard Courses and other Specialty Courses specific to Industry.

9. The Debtor continues to operate the business and manage the property as debtor in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

10. On November 7, 2022, the United States Trustee appointed Craig M. Geno as the Subchapter V Trustee [Dkt. # 34].

## THE DEBTORS' WORKFORCE

11. The Debtor's ability to preserve the value of the business and successfully reorganize is dependent upon the expertise and continued enthusiasm and service of the Debtor's employees, temporary staff, and independent contractors. As of the Order for Relief, the Debtor approximately employs the following number of employees who are not insiders as defined by Section 101(31B) (collectively, the "*Employees*"):

| Employee Type | Contractor | Full Time | Part Time | As needed | Temp to Perm | Total |
|---|---|---|---|---|---|---|
| RMD 1099 | 18 | | | | | 18 |
| RMD W2 | 1 | 27 | 1 | 3 | 2 | 34 |
| Grand Total | 19 | 27 | 1 | 3 | 2 | 52 |

12. The business model of the Debtor is such that the management and accounting staff that perform services for the Debtor (collectively, the "*Back of House Employees*") are employed through MedClinic Management, LLC. The Debtor, each pay period funds the wages and all associated costs for the Back of House Employees. As of the Order for Relief, the Back of House Employees who are not insiders as defined by Section 101(31B) include:

| Employee Type | Contractor | Cont-Contract | Part Time | Total |
|---|---|---|---|---|
| MCM 1099 | 2 | 1 | | 3 |
| MCM W2 | | 1 | 15 | 16 |
| Grand Total | 2 | 2 | 15 | 19 |

13. The Employees and Back of House Employees perform a wide variety of functions critical to the Debtor's operations. Their skills, knowledge, and understanding of the Debtors' operations are essential to preserving operational stability and efficiency. In many instances, the

{00379256-1}

Employees and Back of House Employees are highly trained personnel who cannot be easily replaced. Without continued, uninterrupted services of their staff, the Debtor's ability to conduct business and administer their estates will be substantially impaired.

14. Moreover, the vast majority of the Employees and Back of House Employees, rely exclusively on their compensation and benefits to pay their daily living expenses and to support their families. Thus, these workers will be exposed to significant financial constraints if the Debtor is not permitted to continue paying their compensation and providing benefits. Consequently, the relief requested herein is necessary and appropriate.

15. The business model of the Debtor is such that the Debtor is the contracting party for services rendered by RemoteMD – Guyana, RemoteMD Guyana Clinic, RemoteMD – Mexico, and RMD Guyana Suriname. In summary, the Debtor is the contracting party for all services and the employer of staff.

## RELIEF REQUESTED

16. The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "*Order*"): (a) authorizing, but not directing, the Debtor to (i) pay prepetition wages, salaries, other compensation, and reimbursable expenses and (ii) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, and (b) granting related relief for the time period prior to the Order for Relief. The Debtor's payroll period at issue is October 30, 2022 through November 12, 2022 and, specifically, the Debtor is seeking authority with regards to amounts incurred prior to the Order for Relief. See 11 U.S.C. § 303(f).

## COMPENSATION AND BENEFITS

17. To minimize the personal hardship the Debtor's workforce would suffer if Employee-related obligations are not paid when due or as expected, the Debtor seeks the authority

to pay and honor certain claims that arose after the Order for Relief relating to, among other things, wages, salaries, other compensation, expense reimbursement, payroll obligations and withholding of federal, state, and local taxes (including garnishments, Employees' share of insurance premiums, taxes, and other amounts withheld), payroll processing, health benefits (including medical, vision and dental coverage), insurance programs, workers' compensation benefits, short- and long-term disability coverage, retirement savings plans, time-off policies, and certain other benefits that the Debtor as historically provided in the ordinary course of business (collectively, the "***Compensation and Benefits***"). In addition, the Debtor seeks authority to pay all costs related to or on account of the Compensation and Benefits.

18. Subject to Court approval, the Debtors intend to continue their applicable prepetition Compensation and Benefits in the ordinary course. Out of an abundance of caution, the Debtors further request authority to modify, change, and/or discontinue any of their Compensation and Benefits and/or to implement new programs, policies, and benefits on a postpetition basis in the ordinary course of business during these chapter 11 cases without the need for further Court approval, subject to the Bankruptcy Code and applicable law.

19. The Debtors estimate that they owe prepetition amounts of the Compensation and Benefits in approximately the following amounts:

| RELIEF SOUGHT | AMOUNT |
|---|---|
| **Compensation and Withholding Obligations For Debtor** ||
| Employee Wages | $48,975.16 |
| Independent Contractor Obligations | $16,429.07 |
| Reimbursable Expenses | $2,762.70 |
| Withholding and Deduction Obligations | $3,704.40 |
| *Employee Compensation Total* | $71,871.33 |
| **Benefits and Other Programs** ||
| Healthcare Plans | $19,890.00 |
| 401(k) Matching Contributions | $1,098.08 |
| *Employee Benefits Total* | $20,988.08 |
| **Total Employee Wages and Benefits Obligations** | $92,859.41 |

| RELIEF SOUGHT | AMOUNT |
|---|---|
| **Compensation and Withholding Obligations for MCM** ||
| Employee Wages | $66,201.04 |
| Independent Contractor Obligations | $9,233.89 |
| Withholding and Deduction Obligations | $5,261.90 |
| *Employee Compensation Total* | $80,696.83 |
| **Benefits and Other Programs** ||
| 401(k) Matching Contributions | $1,425.78 |
| *Employee Benefits Total* | $1,425.78 |
| **Total Employee Wages and Benefits Obligations** | $82,122.61 |

| RELIEF SOUGHT | AMOUNT |
|---|---|
| **Compensation and Withholding Obligations RMD Guyana Doctors** ||
| Independent Contractor Obligations | $14,142.35 |
| *Employee Compensation Total* | $14,142.35 |
| **Benefits and Other Programs** ||
| *Employee Benefits Total* | $0.00 |
| **Total Employee Wages and Benefits Obligations** | $14,142.35 |

| RELIEF SOUGHT | AMOUNT |
|---|---|
| **Compensation and Withholding Obligations RMD Guyana Clinic** | |
| Independent Contractor Obligations | $6,718.12 |
| *Employee Compensation Total* | $6,718.12 |
| **Benefits and Other Programs** | |
| *Employee Benefits Total* | $0.00 |
| **Total Employee Wages and Benefits Obligations** | $6,718.12 |

| RELIEF SOUGHT | AMOUNT |
|---|---|
| **Compensation and Withholding Obligations RMD - Mexico** | |
| Independent Contractor Obligations | $4,200.00 |
| *Employee Compensation Total* | $4,200.00 |
| **Benefits and Other Programs** | |
| *Employee Benefits Total* | $0.00 |
| **Total Employee Wages and Benefits Obligations** | $4,200.00 |

| RELIEF SOUGHT | AMOUNT |
|---|---|
| **Compensation and Withholding Obligations – RMD Guyana Suriname** | |
| Independent Contractor Obligations | $2,307.70 |
| *Employee Compensation Total* | $2,307.70 |
| **Benefits and Other Programs** | |
| *Employee Benefits Total* | $0.00 |
| **Total Employee Wages and Benefits Obligations** | $2,307.70 |

20. The Debtor does not owe Compensation and Benefits to any Employee or Back of House Employee in excess of the statutory cap of $15,150.00 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. Accordingly, the Debtor seeks authority to pay all prepetition Compensation and Benefits (subject to the cap in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code), if any, and to continue to pay postpetition Compensation and Benefits in the ordinary course of business and consistent with past practice.

**BASIS FOR RELIEF**

**I.    Sufficient Cause Exists to Authorize the Debtor to Honor the Compensation and Benefits Obligations**.

    **A.    Certain Compensation and Benefits Obligations Are Entitled to Priority Treatment**.

21.    Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain Compensation and Benefits programs to priority treatment. Section 507(a)(4) of the Bankruptcy Code provides that certain employee claims for "wages, salaries and commissions, including vacation, severance and sick leave pay" earned within the 180 days prior to the Petition Date are entitled to priority treatment up to $15,150.00. 11 U.S.C. § 507(a)(4). Priority treatment is also granted to claims for contributions to an employee benefit plan arising from services rendered within 180 days before the Petition Date so long as the amount does not exceed the cap set forth in section 507(a)(5). 11 U.S.C. § 507(a)(5). Section 303(f) permitted the Debtor to continue to use or dispose of property in the ordinary course of business. Thus, the Debtor satisfied its Compensation and Benefits Obligations after the Petition Date during the "GAP" Period.

22.    As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See* U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan). Thus, granting the relief sought herein should only affect the timing of certain payments to the Employees and Back of House Employees and should not negatively impact recoveries for general unsecured creditors.

23.    The Debtors should be permitted to pay the Compensation and Benefits obligations. Satisfying such obligations in full is a matter of timing, considering that the Bankruptcy Code prioritizes certain employee wages and compensation claims and requires that such claims be paid

in full under a chapter 11 plan. It is appropriate to pay the Compensation and Benefits obligations now rather than later because the Employees and Back of House Employees are essential to the Debtor's operations and the administration of the Bankruptcy Case. The authority to pay Employees and Back of House Employees their wages and benefits now will not have a material negative impact on recoveries for general unsecured creditors. It would be difficult for the Debtor to find, attract, and train new qualified talent, who would likely require higher salaries, guaranteed bonuses, and more comprehensive compensation packages than those currently provided.

### B. Payment of Certain Compensation and Benefits Is Required by Law.

24. The Debtor seeks authority to pay the applicable payroll taxing obligations to the appropriate third-party governmental units and entities. Indeed, certain payroll withholding and deduction obligations are not property of the Debtor's estate because the Debtor has withheld such amounts on another party's behalf. *See* 11 U.S.C. § 541(b)(1), (d); *see also In re Equalnet Commc'ns*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) (noting that, for tax obligations where funds are held by the debtor in trust, "the legal right to payment of such claims at any time appears irrefutable.") (citing *In re Al Copeland Enter., Inc.*, 991 F.2d 233 (5th Cir. 1993)).

25. Further, federal and state laws require the Debtor to withhold certain tax payments from the Employees' and Back of House Employees' paychecks and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).

II. **Payment of the Compensation and Benefits and the Relief Sought Herein Is a Sound Exercise of the Debtors' Business Judgment and Necessary to Preserve the Value of the Estates.**

26. Section 363(v) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See In re Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Courts in the Fifth Circuit allow a debtor to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc.* (*In re Cont'l Air Lines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986) ("That is, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (citation omitted). In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value." *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ*, 273 B.R. at 497).

27. Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). Courts apply section 105(a) pursuant to the "doctrine of necessity," which functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re Babcock & Wilcox Co.*, 274 B.R. at 256 n.208; *In re CoServ, L.L.C.*, 273 B.R. at 497 (recognizing

the "doctrine of necessity"). The above-referenced sections of the Bankruptcy Code therefore authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here. *See, e.g.*, *In re CoServ*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate.").

28. The payment of Compensation and Benefits is a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the estate, the Employees and the Back of House Employees, and is therefore justified under sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code, allowing the Debtor's business operations to continue without interruption. Accordingly, the Debtors request that the Court authorize the Debtors to pay any prepetition amounts accrued and unpaid on account of the Compensation and Benefits and to continue the Compensation and Benefits on a postpetition basis in the ordinary course of business and consistent with past practices. Further, the Debtor respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

29. To implement the foregoing successfully, the Debtor requested that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

Dated: November 14, 2022

Respectfully submitted,

/s/ *Greta M. Brouphy*
Douglas S. Draper, La Bar No. 5073
Leslie A. Collins, La Bar No. 14891
Greta M. Brouphy, La Bar No. 26216
Michael E. Landis, La Bar No. 36542
Heller, Draper, & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Office: 504 299-3300/Fax: 504 299-3399
E-mail: ddraper@hellerdraper.com
E-mail: lcollins@hellerdraper.com
E-mail: gbrouphy@hellerdraper.com
E-mail: mlandis@hellerdraper.com

*Attorneys for Debtor*