RemoteMD, LLC - Case Number 22-11254

---

**Fill in this information to identify the case:**

Debtor Name:  RemoteMD, LLC

United States Bankruptcy Court for the Eastern District of Louisiana

Case number:  22-11254

---

❑ Check if this is an amended filing

---

Official Form 425A

---

Plan of Reorganization for Small Business Under Chapter 11                              **10/20**

---

**RemoteMD, LLC Plan of Reorganization, Dated:  November 10, 2023**

**Petition Date for the Involuntary Chapter 7 Case: October 18, 202 [Dkt. # 1]**
**Entry of Order Converting the Case to Voluntary:  November 4, 2022 [Dkt. # 29]**
**Amended Voluntary Petition Filed by the Debtor:  November 7, 2022 [Dkt. # 32]**

**Petition Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)  This Plan is a proposal by the Debtor, RemoteMD, LLC, and subject to court approval after opportunity for objections and a hearing.**

**Background for Cases Filed Under Subchapter V:**

**A.        Description and History of the Debtor's Business**

Since 2008, the Debtor has successfully provided a proprietary system for the delivery of healthcare, conceived and developed by the Debtor for distant/remote or inaccessible locations, such as Oil, Gas & Remote Industrial/Work Sites gaining the company a Global reputation for capability and quality of care on all seven continents. The Debtor further developed the capability to safely & responsibly provide comprehensive care for effectively treating Medical & Traumatic Emergencies, as well as routine Medical Conditions.

Debtor provides Consulting Services to assist Corporate Clients with the development, implementation, and management of their Medical Policies and Procedures; including Health & Hygiene Policies & Procedures, Infectious Disease Prevention & Avoidance Strategies; and Drug and Alcohol Avoidance Policies.  The Debtor provides Real Time, 24/7/365, Remote Medical Care, Globally, including Subspecialty Care.   Upon request, the Debtor provides Corporate Clients with

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

MERP's, Medical Emergency Response Planning; information outlining Medical & Logistical Resources; including geographically specific Hospitals, Medical Clinics/Providers, Air, Land & Sea Transportation Providers  specific for the duration of each and every project.

The Debtor also offers training for outside Healthcare Providers who treat patients in an Industrial Setting.  The Debtor also offers American Heart Association Courses, National Association of Emergency Medical Technician Courses, United States Coast Guard Courses and other Specialty Courses specific to Industry.

**B.** **Creation of a Litigation Trust and Appointment of the Litigation Trustee**

This Plan provides for the creation of a Litigation Trust.  A summary of the Litigation Trust is as follows and is further delineated in the attached Litigation Trust Agreement:

Establishment of a Litigation Trust. On the Effective Date, the Reorganized Debtor on their own behalf and on behalf of the holders of Allowed Claims, shall execute the Litigation Trust Agreement.  **See Exhibit A.**  The entry of the confirmation order shall include and constitute approval of the Litigation Trust Agreement and authorization of the Debtor to execute the Litigation Trust Agreement. In connection with the formation of the Litigation Trust, the Reorganized Debtors shall transfer the Initial Litigation Trust Funds to the Litigation Trust.

Purpose of the Litigation Trust. The Litigation Trust shall be established for the purposes of: (i) making all Plan distributions to holders of Allowed unclassified claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed classified claims; (ii) confecting all objections to Claims; (iii) collection of the Remote Texas Note to the Reorganized Debtor; and (iv) receiving and distributing the proceeds derived from the Reserved Causes of Action according to the terms of this Plan, and taking such other and further action as the Litigation Trustee deems necessary, in its sole discretion, to enforce the rights and obligations associated therewith.

Appointment of the Litigation Trustee. On the Effective Date, the individual or entity identified by the Petitioning Creditors, or such other individual or entity approved by the Bankruptcy Court and the United States Trustee at the Confirmation Hearing, shall be appointed as the Litigation Trustee under this Plan. Any successor Litigation Trustee shall be appointed as set forth in the Litigation Trust Agreement. The Litigation Trustee's powers, duties, bonding requirements and compensation shall be set forth in the Litigation Trust Agreement, which shall be approved by the Court and which the Reorganized Debtors shall be specifically authorized to execute in the Confirmation Order.  The proposed initial Litigation Trustee is Dwayne Murray.

Authority of the Litigation Trustee to Settle and Grant Releases. The Litigation Trustee is authorized to settle the Retained Causes of Action, and release and discharge, to the fullest extent permitted by applicable Law, from the Retained Causes

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

of Action to which the Litigation Trustee is a party in accordance with this Plan without the need for approval by the Bankruptcy Court. Any settlement effectuated prior to the Confirmation Date, upon approval thereof by the Bankruptcy Court or other court of competent jurisdiction, shall be deemed incorporated into this Amended Plan by reference, and entry of the Confirmation Order, including provisions of such settlement, shall be deemed a settlement pursuant to § 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019. With respect to any settlement effectuated subsequent to the Confirmation Date, the Litigation Trustee shall have the authority to settle or otherwise dispose of any Retained Cause of Action without the need for obtaining approval of the Bankruptcy Court, however, the Litigation Trustee, in their discretion, can seek approval of the Bankruptcy Court.  Further, the Litigation Trustee will be required to file a notice of the settlement into the record of this case and serve upon all parties entitled to such notice, which includes the sums received by the Litigation Trustee and the costs associated with the settlement.

Powers and Duties of the Litigation Trustee. The Litigation Trustee's powers and duties shall consist of (i) distributing the Litigation Trust Assets based on the terms of the Plan and based on the following priority (a) first for Litigation Trust Expenses and Fees; (b) second for Allowed Administrative Claims; (c) third to priority tax claims and pro rata to holders of Allowed Class 1, Class 2 and Class 3 Claims; (ii) receiving the proceeds derived from the Retained Causes of Action according to the terms of this Plan, (iii) investigate, file, prosecute and settle the Retained Causes of Action, (iv) taking such other and further action as the Litigation Trustee deems necessary, in its sole discretion, to enforce the rights and obligations associated with the Retained Causes of Action; and (v) and other such duties which are necessary to give effect to the terms and provisions of this Plan.

Fees and Expenses of the Litigation Trustee. The Litigation Trustee shall be compensated for the services rendered and expenses incurred in accordance with an agreement reached between the Debtor, the Litigation Trustee and the Petitioning Creditors.   The proposed compensation agreement includes the distribution of $20,000.00 from the Debtor's projected disposable income, with a minimum of compensation of $40,000.00 and 3% of gross recoveries by the Litigation Trustee in the performance of his powers and duties.  The Litigation Trust Expenses and Fees as agreed will be incorporated into the Litigation Agreement, which is subject to approval by the Bankruptcy Court and the United States Trustee at the Confirmation Hearing.

Litigation Trust Distributions   The Litigation Trustee shall have discretion as to when and in what amounts distributions will be made to creditors and other parties in interest who will receive payment under the Plan.  When funds are distributed to parties receiving payments under the plan the Litigation Trustee shall distribute to such parties as follows
A) 25%  to Allowed Professional Fee Claims
B) 25%  to Other Administrative Claims
C) 25%  to Tax Claims and
D) 25%  to the holders of claims in Class 3

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

Applicability of Securities Laws and Reporting Requirements. Under § 1145 of the Bankruptcy Code, this Plan and the interests of creditors in the distributions provided therein shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities. If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Litigation Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

Termination of Litigation Trust and the Litigation Trustee. The Litigation Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that, on or prior to the date three (3) months prior to such termination, a party in interest, including the Litigation Trustee, may file a motion to extend the term of the Litigation Trust, upon notice to all interested parties and showing that such an extension is necessary in the discretion of the Litigation Trustee. Notwithstanding the foregoing, multiple extensions may be obtained so long as Bankruptcy Court approval is requested at least three (3) months prior to the expiration of each extended term. Furthermore, the Litigation Trustee shall further cause the Litigation Trust to be terminated within three (3) months of the occurrence of the later of (i) the entry of a Final Order by the Bankruptcy Court closing the Bankruptcy Case pursuant to § 350(a) of the Bankruptcy Code, or (ii) the final distribution of all net liquidated recovery derived from the Retained Causes of Action.

The Debtor states that it any funds recovered under the Retained Causes of Action will be distributed pursuant to the terms of the Plan, however recovery is uncertain and at this time, the Debtor is unable to quantify the amount of any proposed distribution.

## C.      Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit B**.

## D.      Feasibility and the Debtor's ability to make future plan payments and operate without further reorganization

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.  The Debtor, among other things, will perform remote medical services, lease of equipment for remote medical services, the continuance of factoring its receivables, and the continuance of collection of the Remote Receivables.

RemoteMD, LLC - Case Number 22-11254

The Debtor and Evergreen Working Capital, LLC reached an agreement, with court approval, whereby Evergreen provides the Debtor financing for working capital by factoring receivables.  Debtor and Evergreen do not have a pre-petition contract for the factoring of receivables.  No other party or person has a security interest in Debtor's post-petition receivables. Sallyport Commercial Finance, LLC had a first-priority security interest in Debtor's pre-petition receivables, but Evergreen purchased Sallyport Commercial Finance, LLC's interest in the pre-petition receivables and is assigned the priming security interest. Upon information and belief, there may be other lower priority interests in Debtor's pre-petition receivables, but, due to the assignment, Evergreen has a first priority interest in pre-petition receivables.  The Debtor, on a post-confirmation basis, will continue with the sale of its accounts receivable to Evergreen pursuant to the post-petition agreement reached with court approval.  In that regard, all obligations arising between Evergreen and the Debtor are deemed to be valid and binding obligations which are enforceable against the Reorganized Debtor in favor of Evergreen.  The Reorganized Debtor, with the confirmation of this Plan, is granted the authority to execute all documents and take all actions, to the extent necessary, to continue selling and assign the post-confirmation receivables to Evergreen. Notwithstanding the foregoing, the Reorganized Debtor reserve the right to reach a factoring agreement with another party, reserves the right to terminate any agreement with Evergreen subject to the contract in place, or the dispense with factoring receivable is the financial conditions are such that it is no longer necessary.

The Plan Proponent has provided projected financial information as **Exhibit C.**

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of three (3) years. The financial projections indicate that the Debtor, after payments for expenditures necessary for the continuation, preservation and operations Class 2, and to fund the Liquidation Trust, will have projected disposable income of: (i) $3,481.17 for year one; (ii) $220,848.02 for year two; and (iii) $215,578.39 for year three total of $584,921.34 (as defined by § 1119(d) of the Bankruptcy Code) for the payment term as indicated in § 1191(c)(2) in the amounts indicated therein. However, the projected disposable total income will be reduced by $20,000.00 to fund the Liquidation Trust, such that the distribution is $564,921.34.  The financial projections are based on historical data, current performance, and the management's experience.

The anticipated Effective Date is December 30, 2023.  Payments will commence pursuant to the terms of this Plan.

*You should consult with your accountant, financial advisor and/or attorney if you have question pertaining to the Debtor's projections***.**

The Debtor, if it is deemed necessary, will file a declaration from Dr. Michael D. Kotler prior to the Confirmation Hearing.

The final Plan payment is expected to be paid on or before the second quarter of 2027.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

## D.     Remedies upon Plan default

The Debtor must make monthly distributions of the Projected Disposable Income to the Litigation Trustee.  If the Debtor fails to make any payments as described herein, the Litigation Trustee must give written notice of such default to the Debtor and counsel. The Debtor shall have thirty days from the date of such written notice to bring all payments current or seek appropriate plan modifications pursuant to § 1193 of the Bankruptcy Code within a reasonable amount of time after such default.  If the Debtor does not timely bring the payments current or seek appropriate plan modifications, the Litigation Trustee shall market the business for sale for a six (6) month period.  During the six-month period the Litigation Trustee must approve all expenditures and no payments shall be made to Dr. Kotlar or any insider or affiliate of Dr. Kotlar without the express written consent of the Litigation Trustee.  If at the end of the six (6) month period no buyer has been found, then the Litigation Trustee shall either schedule a liquidation auction or convert the proceeding to a Chapter 7 liquidation.

A failure by the reorganized Debtor to make a payment to TWC or the Texas Comptroller pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the TWC or the Texas Comptroller, the TWC or the Texas Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the reorganized Debtor at:  880 W. Commerce Rd., Suite 101, New Orleans, LA  70123; Attn:  Chief Executive Officer, and upon Debtor's attorney at Heller, Draper, & Horn, LLC, 650 Poydras St., Suite 2500, New Orleans, LA  70130; Attn: Greta M. Brouphy, Esq.; gbrouphy@hellerdraper.com.

Debtor shall be allowed to cure up to two (2) defaults.  Upon a third default, the TWC or the Texas Comptroller, at their option, may declare the default non-curable and proceed to collect the remainder of the debt.

## Article 1:  Summary:

The Plan proposes to pay holders of Allowed Claims the Debtor's Projected Disposable Income which includes sums from future services, future contracts, payments of the Remote Texas Note and factoring its receivables.  Further, the Plan anticipates additional potential distributions to holders of Allowed Claims from the collection, if any, by the Litigation Trustee of funds from the Retained Causes of Action.

This Plan provides for:

|   |   |
|---|---|
| 0 | Classes of tax claims |
| 1 | Class of secured claims |
| 2 | Classes of non-priority unsecured claims; and |
| 1 | Class of equity security holders |

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

Secured creditor holding Allowed Class 1 Claim is estimated to receive distributions, which the proponent of the Plan states is a monthly payment of $393.04 for a total of 36 payments in an amount of $14,149.31 which includes interest of $1,698.65 at 8.50% on the amount owed.

Non-priority unsecured creditors holding Allowed Class 2 Claims are estimated to receive distributions, which the proponent of the Plan has valued at approximately 41% of the estimated Class 2 Claims in the amount of $24,212.62.  However, this percentage may be reduced based on the amount of claim holders that elect treatment as Class 2 creditors.

Non-priority unsecured creditors holding Allowed Class 3 Claims are estimated to receive distributions, which the proponent of the Plan has valued at approximately 14.5% - 16.4% of the estimated Class 3 Claims in the range amount of $7,330,079.75 - $6,499,279.00.  The ranges are estimated and may fluctuate based on the results of the Litigation Trust.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has <u>not</u> been circulated with this Plan and will not be prepared unless by further order of the bankruptcy court.

*Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.*

## Article 2:  Classification of Claims and Interests:

| Class | Claim or Interest | Voting Rights | Payments |
|---|---|---|---|
| 1 | Secured Claim – Texas Workforce Commission | Impaired.  Entitled to vote. | Monthly Payments to commence on the first full quarter following the Effective and continue for 12 quarters. |
| 2 | Convenience Class of claims $2,500 or less | Impaired. Entitled to vote. | Quarterly Payments to commence on the first full quarter following the Effective Date and |

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

|   |   |   | continue for 8 quarters. |
|---|---|---|---|
| 3 | General Unsecured Claims | Impaired.  Entitled to vote. | Quarterly Payments to commence at the end of the first full quarter that is six full months following the Effective Date and continue for 12 quarters. |
| 4 | Interests | Deemed to have accepted the Plan. | Retention of interests. |

### Article 3:  Treatment of Administrative Expense Claims and Priority Tax Claims:

3.1 **Unclassified claims**

Under § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.2 **Administrative expense Claims**

Each holder of an Allowed Administrative Claim under § 503 of the Bankruptcy Code whose claim is less than $10,000.00 will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  Ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade creditors.

 Allowed Professional Fee Claims and those of the Subchapter V Trustee incurred post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the Chapter 11 Case as well as the fees and expenses of the Subchapter V Trustee.  These fees and expenses must be noticed to Creditors within **thirty (30) days** of the notice of the Effective Date of the plan and approved by the Bankruptcy Court prior to payment.  The Professional Fees claims shall be paid in full in four quarterly payments over a 12-month period either out

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

of recoveries from claims or payment by the Reorganized Debtor.  The Debtor shall deposit 50,000 with the Litigation Trustee on the Effective date of the Plan.  Thirty Thousand dollars out of the deposit shall be paid pro-rata to the holders of Allowed Professional Fee claims.   Twenty thousand dollars shall be retained by the Litigation Trustee to cover his costs and expenses.

Holders of all other Allowed Administrative claims shall be paid over life of the Plan ( other Administrative Claims ) . The Reorganized Debtor shall pay to the Litigation Trustee for distribution to such creditors the sum of $25,000.00 in the first year ( two payments of $12,500.00 on the sixth and twelve month anniversary of the Effective for distribution pro-rata to such Other Administrative Claims.  The Reorganized Debtor shall pay 25,000 to the Litigation Trustee on the $18^{,24}$ and 30th month anniversary of the Effective Date for pro-rata distribution to such Other Administrative Claims.  On the thirty-six-month anniversary of the Effective Date the Reorganized Debtor shall pay the balance of the amounts owed to the holders of Allowed Other Administrative Claims for distribution to the holders of Allowed Administrative Claims.  To the extent that the holder of an Other Allowed Administrative Claim is paid by a third party the payments received shall be applied to reduce the balloon payment owed to such creditor on the thirty sixth anniversary of the Effective date.

| Professional | Estimated Amount |
|---|---|
| Counsel for the Debtor | Fees:  $125,000.00<br>Costs: $25,000.00 |
| Accountant for the Debtor<br>Cooper CPA Group | Fees:  $3,500.00 (paid) |
| Sub V Trustee | Fees:  $20,000.00<br>Costs:  $2,500.00 |

Insurance Claims:

| American Longshore<br>  Mutal Association, Ltd. | $4,185.00 |
|---|---|

RemoteMD, LLC - Case Number 22-11254

Potential Other Allowed Administrative Claims:

Elman 880-990 Associates LP          $186,605.33 (contested amount)

3.3   **Tax Claims**          Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code and those that have arisen post petition . Unless the holder of such a § 507(a)(8) Tax Claim agrees otherwise, the holder of such tax claims will receive quarterly payments of principal and interest calculated at the rate set forth in 11 USC 511 based upon a ten year amortization with a balloon payment due in the 3rd anniversary of the Effective date.  i  The Reorganized Debtor may prepay, without penalty, at any time any Allowed Tax Claim and to the extent necessary pay a balloon payment at the end of the installment period.  The estimated claim amounts are:

| Taxing Authority | Amount | Notes |
|---|---|---|
| Internal Revenue Service | $200,000( estimated) amounts owed | POC # 7 and post petition |
| FL Dept. of Revenue | $733.91 | POC # 37 |
| LA Dept. of Revenue | $2,011.71 | POC # 40 |
| LA Dept. of Revenue | $5,349.64 | POC # 41 |
| Texas Workforce Commissions | $8,095.16 | POC #42 |
| Bureau of Revenue & Tax Property Tax Division | $1,471.61 | Sch. D |
| Total | $17,962.03 | |

**Article 4:  Treatment of Claim and Interest Under the Plan:**

Claims and interest shall be treated as follows under this Plan, claims that are impaired are entitled to vote to accept or reject the Plan.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

| | Class | Impairment | Treatment |
|---|---|---|---|
| 2.1 | Class 1 – Secured Creditor Texas Workforce Commission | Impaired. | Class 1 consists of the Allowed Secured Claim pursuant to Proof of Claim Number 1 as filed by the Texas Workforce Commission in the amount of $12,450.66 subject to an annual interest rate of 8.50% and is secured by a tax lien to all real and personal property of the Debtor. Holder to the Class 1 Allowed Secured Claim will receive distributions as follows: Monthly payment of Monthly Payments of $393.04 to commence on the first full quarter following the Effective and continue for 12 quarters, for a total payment of $14,149.31 which includes $1,698.65 in interest. |
| 2.2 | Class 2 – Convenience Class Claims below $2,500.00 (and those who wish to reduce their claim for $2,500.00) See **Exhibit D** for Claims List Estimated amount is $24,562.37 exclusive of creditors who elect Class 2 treatment | Impaired. Entitled to Vote | Class 2 consists of Allowed General Unsecured Claims allowed under § 502 of the Bankruptcy Code in an amount less than $2,500.00 or those that reduce their claims to $2,500.00 Holders of Class 2- Allowed General Unsecured Claims will receive distributions as follows:  Pro rata payments out of a fund of $10,000.00 to be paid quarterly in eight (8) equal payments commencing commence on the first full quarter following the Effective Date or until the claims are paid in full.  Holders of claims are to submit the Notice of Consent attached hereto as **Exhibit E** that will be served with this Plan and to be returned on the ballot voting deadline. The holder of a Class 2 Claim is impaired and is entitled to vote to accept or reject the Plan. Estimated pro rata distribution is 41% for Class 2 exclusive of claims that elect |

RemoteMD, LLC - Case Number 22-11254

| | | | |
|---|---|---|---|
| | | | treatment under Class 2. The rate of distribution may be altered based on holders of claims that elect Class 2 treatment. |
| 2.3 | Class 3 – General Unsecured Claims over $2,500.00<br><br>See **Exhibit D** for Claims List<br><br>Estimated Amount range is $7,392,213.89 - $6,542,644.00<br><br>Projected Disposable Income: $554,921.34<br><br>Which includes the reduction for the $20,000.00 for the Liquidation Trust and the $10,000.00 reduction for Class 2 | Impaired<br><br>Entitled to Vote | Class 3 consists of Allowed General Unsecured Claims allowed under § 502 of the Bankruptcy Code, and holders of Allowed General Unsecured Claims will receive distributions as follows:<br><br><u>Payment frequency:</u> Twelve (12) Quarterly payments commencing on the at the end of the first full quarter that is six full months following the Effective Date for a total of three (3) years of payments.<br><br>The holders of Class 3 - Allowed General Unsecured Claims are Impaired, and thus, are entitled to vote to accept or reject the Plan.<br><br>Estimate distribution is 7.5% - 8.5% for Class 3. The rate of distribution may be altered based on the results of any objections filed by the Litigation Trustee that are sustained. |
| 2.4 | Class 4 - Equity Holders Interests | Unimpaired assumed to accept the plan. Not entitled to vote. | Class 4 equity security holder, which consists solely of Dr. Michael Kotler, will not be impaired by this Plan. The Class 4 equity security holder will continue to own 100% of the reorganized Debtor. |

## Article 5: Allowance and Disallowance of Claims:

5.1  **Disputed claims**  A disputed claim is a claim that has not been allowed by a final non-appealable order, and as to which either: (i) a proof of claim or Motion for Administrative Expense has been filed or deemed filed, and the Debtor or another party in interest has filed an objection to such claims ; or (ii) no proof of claim has been file or was filed after the bar date, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

Here the deadline for parties in interest to file a proof of

RemoteMD, LLC - Case Number 22-11254

claim under Rule 3003 was January 6, 2023 and the deadline for governmental units to file a proof of claim was May 3, 2023.

5.2    **Distribution**

No distribution will be made when no proof of claim has been filed or timely filed and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. To the extent that a claim is filed after January 6, 2023 for general claims and May 3, 2023 for governmental units, and after the filing of this Plan, the claim is deemed disallowed.

To the extent that a claim is subject to a pending objection, the Litigation Trustee will escrow any distribution which will either be tendered based on the allowed amount after the entry of a non-appealable final order allowing the claim or release the funds for future distributions upon the entry of a non-appealable final order disallowing the claim.

If any distribution is returned as undeliverable or remains unclaimed after thirty days of the distribution date, no further distributions to the applicable holder shall be made unless and until the Litigation Trustee is notified in writing of such holder's then-current address, and after the Litigation Trustee makes a reasonable attempt to contact the claim holder.   Such holders of returned and/or unclaimed distributions shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Any funds that are returned to the Litigation Trustee or not timely presented for payment within thirty days of the issue date, shall be used by the Litigation Trustee to make an additional distribution pursuant to the terms of the Plan.  Ninety days after the final distribution, the Litigation Trustee shall stop payment on any check remining unpaid and any remaining property of the estate shall be paid into the Court and disposed of under chapter 129 of title 28.

Whenever a distribution hereunder is required to be made on a day other than a Business Day, such distribution shall be made on the first Business Day immediately following, without interest.

Any other provision of this Plan to the contrary notwithstanding, no payments of fractions will be made. Whenever a payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding off

RemoteMD, LLC - Case Number 22-11254

of such fraction to the nearest whole cent (rounding down in the case of .5).

Whenever a distribution is less than $15, the funds will not be distributed shall accumulate and shall be paid whenever the accumulation aggregates $15. Any funds remaining shall be distributed with the final payment.

5.3 **Distribution Agent**    With the approval of the Bankruptcy Court as indicated in an order confirming this Plan, distributions provided for in this Plan will be made by the Litigation Trustee for the Litigation Trust. Even if the Plan is confirmed under § 1191(b) of the Bankruptcy Code, the Litigation Trustee, not the Subchapter V Trustee, shall make all payments to Creditors under the Plan. Upon completion of all Plan payments, the Litigation Trustee will serve a final report and final account of the administration of the estate into the record of the case.

5.4 **Settlement of dispute**    The Reorganized Debtor will have the power and authority to settle and compromise a disputed claim, that is not part of the Retained Causes of Action, with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

5.5 **Retained Causes of Action**

Unless any, Retained Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with § 1123(b) of the Bankruptcy Code, the Debtor shall retain, for the benefit of the Litigation Trust, at the Litigation Trustee's discretion to enforce all rights to commence and pursue any and all Retained Causes of Action, whether arising before or after the Petition Date.

**NO ENTITY MAY RELY ON THE ABSENCE OF A SPECIFIC REFERENCE IN THE PLAN TO ANY CAUSE OF ACTION AGAINST THEM AS ANY INDICATION THAT THE DEBTOR WILL NOT PURSUE ANY AND ALL AVAILABLE CAUSES OF ACTION AGAINST THEM. THE DEBTOR EXPRESSLY RESERVES ALL RIGHTS TO PROSECUTE ANY AND ALL CAUSES OF ACTION AGAINST ANY ENTITY, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN**.

Unless any Retained Causes of Action against an Entity are

RemoteMD, LLC - Case Number 22-11254

expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Debtor expressly reserves all Retained Causes of Action for later adjudication by the Litigation Trust, and therefore, no preclusion doctrine, including, but not limited to, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date.

The Debtor reserves and shall retain Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Case or pursuant to the Plan. In accordance with §§ 1123(b)(3) and 1141(b) of the Bankruptcy Code, any Retained Causes of Action that the Debtor may hold against any Entity shall vest in the Debtor. The Debtor shall retain and the Litigation Trust may exclusively enforce all such Retained Causes of Action. The Litigation Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

The Retained Causes of Action reservation for the benefit of the Litigation Trust includes, whether such action arises from state or federal law, and includes any action unknown now but becomes known while asserting a Retained Cause of Action:

- Avoidance Actions
- Causes of Action
- Objections to filed Proofs of Claim or the schedules
- Claims and Causes of Action arising from the assumption or rejection of Executory Contracts or Unexpired Leases
- Recovery of Remote Equipment, and liquidation of any Remote Equipment deemed unnecessary for continued operations by the Reorganized Debtor
- Claims and Causes of Action against third parties arising from the Bankruptcy Case, the Bankruptcy Code, applicable State law, and applicable federal law
- Claims and Causes of Action against the insurers of

RemoteMD, LLC - Case Number 22-11254

the Debtor that arose before the Petition Date

- Any derivative claims, Claims, or Causes of Action possessed by the Debtor against its current and former officers and directors
- Claims and Causes of Action against Steele Strategies, Inc. and Katheryn Steele including breach of fiduciary duty, mismanagement, and negligence in the operations of the Debtor; tortious interference with contracts and business relationships
- Claims and Causes of Action against Robert Dudley including assisting or encouraging another in the commission of wrongful acts, and breach of fiduciary duty
- Claims and Causes of Action against Richard Veltre including breach of fiduciary duty, malpractice, mismanagement of the finances of the Debtor, Remote Affiliates, and related entities, negligence, concealing financial information/financial software
- Claims and Causes of Action against John Kosmeh including breach of fiduciary duty, mismanagement, violation of non-compete agreement, Lanham Act violations, conversion of property, and tortious interference with contract
- Claims and Causes of Action against AC Skylines including violation of the automatic stay, conversion of property, and tortious interference with contract
- Claims and Causes of Action against Noble Drilling (U.S.) LLC (or related Noble entity) and Remote Medical International (or related entity) including for non-return of Debtor assets
- Claims and Causes of Action against Deidre Wheatley Liss and Porzio, Bromberg & Newman including for breach of fiduciary duty and lawyer/client confidences
- Claims and Causes of Action against United Church Homes including for conversion of Debtor assets
- Claims and Causes of Action against Steven Birch including disclosure of private information to third parties
- Claims and Causes of Action against Shannon Robbins Davidoff including for negligence, mismanagement, breach of fiduciary duty and loss of business and loss of revenue

**The Petitioning Creditors have requested that the**

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

**following claims be preserved, and in the exercise of its fiduciary duty, the Debtor is preserving the claims in accordance with applicable Fifth Circuit jurisprudence and case law:**

- Claims and causes of action related to or involving the transfer or advancement of funds or property or the incurrence of any obligation by the Debtor to any of the Remote Affiliates
- Claims and causes of action that the Remote Affiliates and the Debtor constitute a single business enterprise or should be subject to substantive consolidation
- Claims and causes of action based on the transfer of funds or property or incurrence of any obligation to any Insider
- Claims and causes of action based on mismanagement and breach of fiduciary duties against Dr. Michael Kotler and any other members, managers, owners, officers, directors, employees and professionals of Remoted, Remote Affiliates and any Insiders
- Claims and causes of action against Dr. Michael Kotler and any Insiders based on usurpation of corporate opportunities
- Directors & Officers claims and causes of action against any Insiders or their insurers, including, but not limited to, breach of any duties owed to the Debtor
- Claims and causes of action against non-debtor entities who participated or facilitated misconduct as to the Debtor
- Claims and causes of action for recovery of payments by the Debtor to Insiders
- Claims and causes of action against professionals that provided services prepetition to the Debtor
- Claims and causes of action against persons or entities who received distributions from the Debtor
- Claims and causes of action against persons or entities who engaged in theft or fraud as to the Debtor or its assets
- Claims and causes of action for misappropriation of Debtor property.
- Objections to and/or subordination of claims
- All Chapter 5 avoidance and other actions and claims and causes of action under 11 U.S.C. § 724.
- Claims and causes of action against any third parties

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

based on breach of contract.

The Petitioning Creditors and the Debtor assert that the foregoing list is a preliminary list. It may be amended or modified to include any additional claims and causes of action that may be discovered through the Rule 2004 examinations of the Debtor, the Petitioning Creditors, family members and/or the Insiders. All rights are reserved.

To the extent necessary the Debtor will file a Plan Supplement 5 days prior to the Confirmation Hearing that will contain any additional claims that the Petitioning Creditors and/or the Debtor assert exists. The claims identified in the Plan Supplement shall constitute additional retained claims.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

6.1 **Assumption/rejection**    (a) To the extent that the Debtor is lessee, and except for executory contracts and unexpired leases that have been assumed or rejected by order of the Court before the Effective Date, or that are the subject of a pending motion to assume or reject, the Debtor will conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date, which includes:

Data Sales Co.
Mody Capital LLC

A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **30 days** after the date of entry of the order confirming this Plan.

Out of an abundance of caution and for full disclosure, the Debtor does not believe that health insurance benefit agreements with insurance providers, that is those providers that reimburse health care providers for medical services rendered for patients are executory contracts. However, the Debtor states that such health insurance benefit agreements will remain effective between the Debtor and the provider post-effective date.

## Article 7: Means for Implementation of the Plan and Continued Management

The business model of the Debtor is such that the management and accounting staff that perform services for the Debtor (collectively, the "***Back of House Employees***") are

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

employed through MedClinic Management, LLC. The Debtor, each pay period funds the wages and all associated costs for the Back of House Employees.

The Debtor anticipates that Dr. Michael Kotler, the owner and chief medical officer, who is an insider of the Debtor, will continue in his position as sole officer and director of the Debtor. The pro forma attached hereto does not include a reduction for the compensation of Dr. Michael Kotler and Dr. Michael D. Kotler even though both will continue in their positions. Thus, any compensation to any Insider will not reduce projected disposable income for Plan payments to Class 3.

## Article 8:  General Provisions

8.1 **Definitions/Rules** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.

8.2 **Effective Date** The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the day on which the stay expires or is otherwise terminated. The projected Effective Date is December 30, 2023.

Except as provided in this Plan or the order confirming this Plan, all of the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any claim or interest of any creditor provided for by this Plan.

8.3 **Severability** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

8.4 **Binding Effect** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors and assigns of such entity.

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

whether or not such creditor or party has accepted or has rejected the Plan.

| | | |
|---|---|---|
| 8.5 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.6 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Louisiana govern this Plan, and any agreements, documents, and instruments executed with this Plan, except as otherwise provide in the Plan and/or the agreement. |
| 8.7 | **Corporate Governance** | Upon the effective date of this Plan, the Debtor shall be deemed authorized and approved without any or further order or corporate action to take all actions reasonably necessary to effectuate this Plan. |
| 8.8 | **Jurisdiction** | Notwithstanding the entry of an order confirming this Plan, the bankruptcy court shall retain and have exclusive jurisdiction after the effective date over any matter arising under the Code. |
| 8.9 | **Post-Petition Expenses** | <u>Subchapter V Trustee:</u> Should this Plan confirm pursuant to Section 1191(b), to the extent that the Subchapter V Trustee incurs any post-petition expenses, such amounts should be sent to the Debtor directly, with a copy to the United States Trustee and notice filed on the docket. The statement should be billed hourly, with a description of the services provided. If there is no objection to the fee request within fourteen (14) days of the notice filed on the docket, then the Debtor is directed to compensate the Subchapter V Trustee. If there is an objection, the matter is to be set for hearing for Court determination of the objection. |
| 8.10 | **Vesting of Assets** | Except as otherwise explicitly provided for in the Plan, on the Effective Date, all property comprising assets of the Estate (including Retained Causes of Actions, but excluding property that has been abandoned or settled pursuant to an order of the Bankruptcy Court) shall vest in Reorganized Debtor or the Litigation Trust, as applicable, free and clear of all Claims, Liens, charges, encumbrances, rights, and interests of creditors. As of and following the Effective Date, the Reorganized Debtor may operate its businesses and |

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

## Article 9:  Discharge

If the Debtor's Plan is confirmed under § 1191(a) of the Bankruptcy Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt:

(i)      imposed by this Plan; or

(ii)     to the extent provided in § 1141(d)(6) of the Bankruptcy Code.

If the Debtor's Plan is confirmed under § 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt:

(i)      on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192 of the Bankruptcy Code; or

(ii)     excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule
4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10:  Other Provisions

10.1  **Subchapter V Trustee**      If this Plan is confirmed as consensual under § 1191(a) of the Bankruptcy Code, § 1194 of the Bankruptcy Code does not contemplate that the Subchapter V Trustee will make the Plan distributions.  Under a consensual Plan, the Subchapter V  Trustee's  services  terminate  upon  substantial consummation.

If this Plan is confirmed as non-consensual under § 1191(b) of the Bankruptcy Code, § 1194(b) of the Bankruptcy Code provides  that  the  Subchapter  V  Trustee  shall  make payments  to  creditors  under  the  Plan.   However,  as otherwise provided in this Plan, and if approved by this Court in the order confirming this Plan, the Litigation Trustee shall

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

make the payments to the creditors and comply with the necessary reporting requirements.

| | | |
|---|---|---|
| 10.2 | **Substantial Consummation** | Substantial consummation occurs upon the transfer of all property proposed by the plan to be transferred (§ 1101(2)(A)), assumption by the debtor or successor of the business or of the management of all or substantially all of the property dealt with by the Plan (§ 1101(d)(B)), and commencement of distributions under the Plan (§ 1101(2)(C)). No later than **14 days** after the Plan is substantially consummated, the Debtor shall file notice of such substantial consummation (§ 1183(c)(2)). |
| 10.3 | **Consensual Confirmation** | If all applicable requirements in § 1129(a) of the Bankruptcy Code are met except for the projected disposable income rule of § 1129(a)(15) of the Bankruptcy Code – which applies to individual debtors - § 1191(a) of the Bankruptcy Code requires the Court to confirm this Plan. |
| 10.4 | **Non-consensual Confirmation** | Under § 1191(b) of the Bankruptcy Code, confirmation is permitted even if the requirements of § 1129 (8), (10) and (15) of the Bankruptcy Code are not meet. Thus, cramdown does not require that (1) all impaired classes accept the plan or (2) at least one impaired class accepts the plan. Instead § 1191(b) of the Bankruptcy Code cramdown rules (1) permit cramdown confirmation even if all impaired classes do not accept the plan. Thus, if all other confirmation standards ae met, the Court must confirm the Plan, on the request of the Debtor, if, with respect to each impaired class that has not accepted it, the Plan (1) does not discriminate unfairly; and (2) is fair and equitable. |
| 10.5 | **Disposable Income** | A plan must provide that all projected disposable income of the Debtor to be received in the three-year period or longer period as fixed by the Court after the first payment under the Plan is due. Alternatively, the plan may provide that the value of property to be distributed under the plan within the three-year period or longer period as fixed by the Court that is no less than the projected disposable income of the debtor. |
| | | Under § 1191(d) of the Bankruptcy Code, projected |

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

disposable income is defined as income that is received by the debtor that is not reasonably necessary to be expended for these specific purposes: (i) the maintenance or support of the debtor or a dependent of the debtor; or (ii) a domestic support obligation that first becomes payable after the date of the filing of the petition, or (iii) payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor. The Plan Proponent has provided projected financial information as **Exhibit B.**

**Agreed to and submitted by:**

*/s/ Michael D. Kotler, MD*
Member/Manager

RemoteMD, LLC - Case Number 22-11254

## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings whether capitalized or not in the Plan:

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Case pursuant to §§ 503(b), 507(a)(2), 507(b) or 1114I(2) of the Bankruptcy Code, including, (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate and operating the Debtor's business; and (b) Allowed Professional Fee Claims.

2.      "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided in the Plan: (a) a Claim that either (i) is not Disputed or (ii) has been allowed by Final Order; (b) a Claim that is allowed, compromised, settled or otherwise resolved (i) pursuant to the terms of the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court by a Final Order or (iii) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (c) a Claim relating to a rejected Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been allowed by Final Order; or (d) a Claim or Equity Interest as to which as a Proof of Claim or Proof of Interest, as applicable, has been timely Filed and as to which no objection has been Filed.

3.      "*Avoidance Action*" means any and all actual or potential claims or causes of action to avoid a transfer of property or an obligation incurred by the Debtor arising under §§ 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, or 553(b) of the Bankruptcy Code, or under similar or related state or federal statutes or common law, including fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s) or Cause(s) of Action was commenced prior to the Effective Date.

4.      "*Ballot*" means the ballot form distributed to holders of Impaired Claims and Interests entitled to vote under the Plan.

5.      "*Bankruptcy Code*" means the title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect for hereafter amended, and the rules and regulations promulgated thereunder.

6.      "*Bankruptcy Court*" refers to the United States Bankruptcy Court for the Eastern District of Louisiana or such other court having jurisdiction over the Case, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the Eastern District of Louisiana.

7.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Case and the general, local and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

8.      "*Case*" refers to this case, no. 22-11254, under Subchapter V of Chapter 11 of the Bankruptcy Code in which the Debtor is the debtor-in-possession.

9.      "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges,

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

licenses, Liens, indemnities, guaranties and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law equity or otherwise. Causes of Action also include: (a) all rights of set off, counterclaim or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests or Proofs of Claims; (c) claims pursuant to §§ 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress and usury, and any other defenses set forth in § 558 of the Bankruptcy Code; and any state or foreign law fraudulent transfer or similar claim.

10.     "*Claim*" means any claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor, whether or not assessed or asserted, or any claim, as defined in § 105(5) of the Bankruptcy Code, that can be asserted by the Debtor against any other person, third party or entity, whether or not assessed or asserted.

11.     "*Class*" means category of holders of Claims or Interests under § 1122(a) of the Bankruptcy Code.

12.     "*Confirmation*" means entry of the Confirmation Order by the Bankruptcy Court on the docket of the Case.

13.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of this Case within the meaning of Bankruptcy Rules 5003 and 9021.

14.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and § 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Bankruptcy Court will consider confirmation of the Plan.

15.     "*Creditor*" has the meaning assigned to such term in § 101(10) of the Bankruptcy Code.

16.     "*Debtor*" means RemoteMD, LLC, the debtor-in-possession in this Case.

17.     "*Disputed Claim*" means a Claim, or any portion thereof: (a) which is listed in the Schedules as disputed, contingent, or unliquidated; or (b) as to which (i) a Proof of Claim has been Filed, (ii) an objection, or request for estimation, has been timely Filed (and not withdrawn) by any party-in-interest, and (iii) no Final Order has been entered thereon.

18.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in the Plan have been satisfied or waived in accordance with the Plan.

19.     "*Estate*" means the estate of the Debtor in the Case created pursuant to § 541 of the Bankruptcy Code.

20.     "*Evergreen*" means Evergreen Working Capital, LLC.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

21.     "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

22.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, is not subject to any pending stay and as to which the time to appeal, move for re-argument, reconsideration, or rehearing, or seek certiorari has expired and no appeal, motion for re-argument, reconsideration, or rehearing or petition for certiorari has been timely taken or filed, or as to which any appeal that has been taken, motion for re-argument, reconsideration, or rehearing that has been granted or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, re-argument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

23.     "*General Unsecured Claim*" means any Claim that is not Secured and is not an Administrative Claim (including, for the avoidance of doubt, a Professional Fee Claim), Convenience Claim, or a Priority Tax Claim.

24.     "*Governmental Unit*" has the meaning set forth in § 101(27) of the Bankruptcy Code.

25.     "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

26.     "*Insider(s)*" has the meaning set forth in § 101(31) of the Bankruptcy Code, and includes, but is not limited to, Dr. Michael Kotler, Dr. William Kotler, Agnes Kotler, Kaitlin Kotler, and Courtney Kotler. The Petitioning Creditors assert that Lisa Jones, Shane Birchall, Paul LeBlanc and Cooper CPA are insiders of the Debtor.  Other parties that could be included as an Insider include Steele Strategies Inc, Kathryn Steele, Robert Dudley, Richard Veltre, John Kosmeh, Deidre Wheatley Liss, Porzio, Bromberg & Newman, Andy Kimmel, Shannon Robbins-Davidoff, and Steven Birch.

27.     "*Interest*" means any common stock, limited liability company interest, equity security (as defined in § 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

28.     "*Lien*" has the meaning set forth in § 101(37) of the Bankruptcy Code.

29.     "*Litigation Trust Agreement*" means the agreement attached to the Plan, subject to approval by the Bankruptcy Court and the United States Trustee at the Confirmation Hearing.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

30.    "*Litigation Trust Assets*" means all Disposable Income, payments by Remote Texas pursuant to the Remote Texas Note, and all Retained Causes of Action.

31.    "*Litigation Trustee*" means the individual or entity identified by the Petitioning Creditors, or such other individual or entity approved by the Bankruptcy Court and the United States Trustee at the Confirmation Hearing, shall be appointed as the Litigation Trustee under this Plan

32.    "*Order for Relief*" means November 4, 2022, when the Bankruptcy Court granted the Debtor relief under Chapter 11 of the Bankruptcy Code.

33.    "*Person*" has the meaning set forth in § 101(41) of the Bankruptcy Code.

34.    "*Petitioning Creditors*" means Robert Dudley, Premier Laboratory Services, Inc., Steel Strategies, Inc., Securitas Security Services USA, Inc. and KJG Strategies.

35.    "*Petition Date*" means October 8, 2022, the date on which the Petitioning Creditors commenced the Case by Filing an involuntary petition for relief under Chapter 11 of the Bankruptcy Code.

36.    "*Person*" has the meaning set forth in § 101(41) of the Bankruptcy Code.

37.    "*Plan*" means this Subchapter V plan, including all exhibits, supplements, appendices, and schedules hereto, either in its present form or as the sale may be altered, amending, or modified from time-to-time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

38.    "*Priority Claim*" means any Claim, or portion thereof, entitled to priority under § 507(a) of the Bankruptcy Code.

39.    "*Priority Tax Claim*" means any Priority Claim (or portion of a Claim) held by a Governmental Unit that is entitled to priority under § 507(a)(8) of the Bankruptcy Code.

40.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

41.    "*Professional*" means an Entity retained in the Case pursuant to a Final Order in accordance with §§ 327, 363, and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to §§ 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

42.    "*Professional Fee Claims*" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) incurred by a Professional in the Case on or after the Petition Date and through and including the Confirmation Date that the Bankruptcy Court has not denied by Final Order. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

43.     "*Projected Disposable Income*" has the meaning set forth in § 1191(d) of the Bankruptcy Code.

44.     "*Proof of Claim*" means a proof of Claim filed against the Debtor in the Case.

45.     "*Remote Affiliates*" has the meaning set forth in § 101(2) of the Bankruptcy Code and includes, but not limited to, Pelican State Industrial Medicine, Inc., MCM MedClinic Management, LLC, Elite Healthcare, LLC, Remote ER, LLC, RemoteMD Texas, PLLC, REmoteMD Services, Guyana, and RemoteMD Suriname.

46.     "*Remote Equipment*" means any equipment owned by the Debtor, including but not limited to the assets as listed on Schedule B, whether such equipment is in the possession of the Debtor or in the possession of a third party, including Noble Drilling (U.S.) LLC, RMI and/or Edison Chouest Offshore.

47.     "*Remote Receivables*" means any account receivable owed to the Debtor on the Effective Date that is outstanding for 90 days or greater which includes, but not limited to, the following with the amounts owed estimated: (i) Advanced Workplace Strategies, Inc. - $12,136.71; (ii) Cameron, a SLB Company - $68,888.97; (iii) Maersk Valiant - $25,218.81; (iv) Noble Drilling (U.S.) LLC - $173,548.93; (v) Schlumberger Technology Corporation - $44,200.00; (vi) Schlumberger – Houma - $22,704.73; (vii) Schlumberger Guyana - $146,172.83; (viii) Seacor Marine c/o Ramps Logistics - $17,125.00; (xi) United Church Homes - $180,000.00.  The Remote Receivables are to be retained by the Debtor, for collection by the Debtor to be included in the funds available for the Reorganized Debtor.

48.     "*Remote Texas*" means Remote MD Texas, PLLC formed as a domestic limited liability company in the State of Texas.

49.     "*Remote Texas Note*" means the note payable from Remote Texas to the Debtor subject to 8% interest with:  (i)  the Debtor receiving $30,000.00 payable in six (6) installments of $5,000.00 per month to commence at the end of the first full month following the Effective Date; (ii) the Debtor receiving $240,000.00 payable in twenty-four (24) installments of $10,000.00 per month starting on the seventh full month following the Effective Date; (iii) a balloon payment of the remaining amount due plus accrued interest the month following the last $10,000.00 installment.

50.     "*Reorganized Debtor*" means the Debtor as reorganized on and after the Effective Date pursuant to the provisions of the Plan.

51.     "*Retained Causes of Action*" has the meaning set forth in

52.     "*Secured*" means, when referring to a Claim: (a) secured by a valid, perfected, and enforceable lien on collateral to the extent of the value of such collateral, as determined in accordance with § 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to § 553 of the Bankruptcy Code.

53.     "*Subchapter V*" refers to §§ 1181 to 1195 of the Bankruptcy Code, as now in effect hereafter amended, and the rules and regulations promulgated thereunder.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

54. "*Substantial Consummation*" shall have the meaning set forth in § 1101(2) of the Bankruptcy Code.

55. "*Trustee*" or "*Subchapter V Trustee*" means and refers to Craig Geno, the duly appointed, acting and authorized Subchapter V trustee for the Estate.

56. "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of § 1124 of the Bankruptcy Code.

57. "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

year period or longer period as fixed by the Court that is no less than the projected disposable income of the debtor.

Under § 1191(d) of the Bankruptcy Code, projected disposable income is defined as income that is received by the debtor that is not reasonably necessary to be expended for these specific purposes: (i) the maintenance or support of the debtor or a dependent of the debtor; or (ii) a domestic support obligation that first becomes payable after the date of the filing of the petition, or (iii) payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor. The Plan Proponent has provided projected financial information as **Exhibit B.**

**Agreed to and submitted by:**

/s/ Michael D. Kotler, MD
Member/Manager

{00380816.00381052-1}