IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
www.laeb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 22-11254 |
| RemoteMD, L.L.C., | Chapter 11 (Subchapter V) |
| *Debtor.* | Judge John W. Kolwe |

## MOTION FOR NEW TRIAL, RECONSIDERATION, AND/OR RELEIF FROM JUDGMENT

**NOW INTO COURT**, through undersigned counsel, come Steele Strategies Inc. ("SSI") and Robert Dudley ("Dudley" and together with SSI, collectively, "Movants"), who move for a new trial, reconsideration, and/or relief from judgment. In support, Movants represent:

### I.    RELIEF REQUESTED

1.    Movants request the entry of an order amending the *Order Confirming the Debtor's Subchapter V Plan of Reorganization* (the "Confirmation Order") (ECF No. 306) and the *RemoteMD, LLC Plan of Reorganization, Dated: November 10, 2023* (the "Revised Plan") (ECF No. 306, Ex. A) to:

   a.    conform with the Court's December 14, 2023 ruling[1] concerning the vesting of property of the estate; and

   b.    include the additional default remedies of filing post-effective date monthly operating reports for the benefit of Class 3 unsecured creditors.

---

[1] A copy of the transcript from the December 14, 2023 hearing is attached hereto as Exhibit "A."

## II.    APLICABLE LAW AND ARGUMENT

2.    The Federal Rules of Civil Procedure do not recognize a general motion for reconsideration. *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336 (5th Cir. 1997). Nevertheless, a party may submit a motion seeking reconsideration under Federal Rule of Civil Procedure 54(b), 59(e), or 60(b) depending on the circumstances. FED. R. CIV. P. 54(b); Adams v. *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Canada, AFL-CIO, Loc. 198*, 495 F.Supp.3d 392, 395 (M.D. La. 2020). Motions to reconsider, whether analyzed under Rule 54(b), Rule 59(e) or Rule 60(b), "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). The Court should consider four factors in deciding a motion to reconsider under Rule 59(e): (1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) the initial decision was manifestly unjust; or (4) an intervening change in law alters the appropriate outcome. *Wiley v. Dep't of Energy*, 2021 U.S. Dist. LEXIS 105143, 2021 WL 2291135 (E.D. La. June 4, 2021); *Hightower v. Grp. 1 Auto., Inc.*, 2016 U.S. Dist. LEXIS 81233, 2016 WL 3430569 (E.D. La. June 22, 2016).

3.    A motion for reconsideration is an extraordinary remedy and should be used sparingly in the interest of finality and conservation of judicial resources. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). They are not the proper vehicle for rehashing evidence, legal theories, or arguments. *Simon v. U.S.*, 891

F.2d 1154, 1159 (5th Cir. 1990). Nor should a motion for reconsideration be used to raise arguments that could have and should have been made before entry of an order or to re-urge matters that have already been advanced by a party. *See Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990). Furthermore, when there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted. *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F.Supp.2d 471 (M.D. La. 2002).

### A. The Confirmation Order and Plan do not conform to the December 14, 2023 ruling.

4. There are two grounds for relief under Rules 54, 59, and/or 60. First, the Confirmation Order does not conform with the Court's December 14, 2024 ruling. In concluding that the Debtor's default remedies were not appropriate under 11 U.S.C. § 1191(c), the Court ordered, among other things, that property of the estate and post-petition income should not vest in the Debtor until dismissal or discharge.[2] The Court also specifically referred to 11 U.S.C. § 1186(a). This section provides:

> (a)Inclusions.—If a plan is confirmed under section 1191(b) of this title, property of the estate includes, in addition to the property specified in section 541 of this title—
>
> > (1) all property of the kind specified in that section that the debtor acquires after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of this title, whichever occurs first; and

---

[2] Dec. 14, 2023 Hrg. Tr., p.16, lines 4-5.

> (2) earnings from services performed by the debtor after the date
> of commencement of the case but before the case is closed,
> dismissed, or converted to a case under chapter 7, 12, or 13 of
> this title, whichever occurs first.

11 U.S.C. § 1186(a). Thus, it was the Court's intention that property of the estate

under 11 U.S.C. §§ 541(a) and 1186(a) such as post-petition (and post-effective date)

income should not vest in the Debtor until this case is dismissed or the discharge is

entered.

5.     The Confirmation Order and the Revised Plan do not conform to the

Court's December 14, 2023 ruling. Paragraph 3 of the Confirmation order provides:

> Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the
> Plan or in this Confirmation Order, all of the property of the estate
> vests in the Debtor as of the Plan Effective Date. Except as provided in
> 11 U.S.C. §§ 1141(d)(2) and (3) and except as otherwise provided in the
> Plan or in this Order, after confirmation of the Plan, the property dealt
> with by the Plan is free and clear of all claims and interests of
> creditors.

(Confirmation Order, ¶3; ECF No. 306 at 11) Section 8.2 of the Plan contains

similar language.

> Except as provided in this Plan or the order confirming this Plan, all of
> the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the
> Bankruptcy Code, vests in the Debtor as of the Effective Date free and
> clear of any claim or interest of any creditor provided for by this Plan.

(Revised Plan, § 8.2; ECF No. 306 at 34)

6.     The Confirmation Order and Plan should be amended and revised so

that they are consistent with the Court's December 14, 2023 ruling. To be fair, this

inconsistency appears to be a simply scrivener's error. The Debtor did eliminate

Section 8.10 as the Court ordered. Thus, it seems that something was lost in

4

translation during the redline process. Upon information and belief, the Debtor, through counsel, does not oppose the amendment requested.

7.      Accordingly, Movants request the entry of an order amended the Confirmation Order and the Revised Plan to conform with the Court's ruling regarding the vesting of property of the estate.

### B.      The Plan should include an additional appropriate default remedy.

8.      The Confirmation Order and the Plan should also be amended to require the Debtor to file post-confirmation monthly operating reports.

9.      In its December 14, 2024 ruling, the Court correctly concluded that the default remedies originally proposed by the Debtor were far from appropriate because they gave the Debtor too much time to cure a plan default. Thus, the Court *sua sponte* ordered certain amendments to the default remedies.

10.     Movants submit that the default remedies imposed by the Court are a big step in the right direction, but the Court ultimately missed one crucial ingredient—monthly operating reports.

11.     Throughout this case, monthly operating reports have haunted the Debtor. The Debtor was several months late in filing numerous monthly operating reports, which remedied only after the U.S. Trustee filed a motion to convert. Indeed, the Debtor just filed its November 2023 monthly operating report. (ECF No. 313) This problem is especially pronounced because the Debtor was unable to follow a reasonable procedure for completing and signing monthly operating reports that was instituted by its counsel.

12. In denying the U.S. Trustee's motion to convert, the Court ultimately concluded there is a reasonable likelihood that the Debtor will be rehabilitated. However, rehabilitation is not synonymous with being able to make plan payments.

13. "Courts have consistently held that rehabilitation refers to the debtor's ability to restore the viability of the business." *In re Herb Philipson's Army & Navy Stores, Inc.*, 2019 Bankr. LEXIS 3831, at *18 (Bankr. N.D.N.Y. Dec. 19, 2019) (citing *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004)). "'Rehabilitate' has been known to mean 'to put back in good condition; reestablish a firm, sound basis.'" *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 790 (Bankr. W.D. Tenn. 1992) (quoting Webster's New World Dictionary 1225 (World 1964)).

14. If the Revised Plan is to be successfully implemented, the Debtor needs to rehabilitate, not simply make plan payments. Thus, Movants submit that the Confirmation Order and the Revised Plan should be amended to include one additional appropriate default remedy—the filing of post-confirmation monthly operating reports. In doing so, not only interested parties will be able to actively monitor the Debtor's financial wellbeing and the Revised Plan's success, but it will also assist the Debtor in putting its finance and accounting back together.

15. Such an additional default remedy is not prejudicial to the Debtor because the Court concluded that Dr. Michael Kotler is not the entire business[3] and that the Debtor has made "great strides in turning its business around since the inception of this case."[4] Post-confirmation financial reporting is consistent with the

---

[3] Dec. 14, 2023 Hrg. Tr., p.10, lines 6-7.
[4] Dec. 14, 2023 Hrg. Tr., p.10, lines 9-10.

Debtor's rehabilitation since the commencement of this case. Further, counsel for the Debtor described a very reasonable procedure for completing and filing monthly operating reports.

16.     Accordingly, the Confirmation Order and Revised Plan should include this additional appropriate default remedy.

**WHEREFORE**, Movants request the entry of an order: (a) amending the Confirmation Order and the Plan to: (i) conform with the Court's December 14, 2023 ruling concerning the vesting of estate property; and (ii) require the Debtor to file post-effective date monthly operating reports; and (b) granting such further and additional relief as the facts may warrant and justice so requires.

Submitted by:

STERNBERG, NACCARI & WHITE, LLC

By: /s/ Ryan J. Richmond
Ryan J. Richmond (La. Bar No. 30688)
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801
Tel. (225) 412-3667
Fax (225) 286-3046
ryan@snw.law

*Attorneys for Steele Strategies Inc.*
*and Robert Dudley*

## **EXHIBIT A**

**December 14, 2023 Hearing Transcript**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:                          .  Case No. 22-11254
                                .
                                .
REMOTEMD, L.L.C.,               .  800 Lafayette Street
                                .  Suite 1200
                                .  Lafayette, LA 70501
                                .
                  Debtor.       .  Thursday, December 14, 2023
. . . . . . . . . . . . . . . .    9:00 A.M.


TRANSCRIPT OF CONFIRMATION HEARING ON CHAPTER 11 SMALL BUSINESS
      SUBCHAPTER V PLAN FILED BY REMOTEMD, L.L.C. (286)
         BEFORE THE HONORABLE JOHN W. KOLWE
         UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES VIA WEBEX:

For the Debtor:                 Heller, Draper & Horn L.L.C.
                                BY:  DOUGLAS S. DRAPER, ESQ.
                                     MICHAEL E. LANDIS, ESQ.
                                650 Poydras Street
                                Suite 2500
                                New Orleans, LA 70130

For Robert Dudley and           Sternberg, Naccari & White, LLC
Steele Strategies, Inc.:        BY:  RYAN JAMES RICHMOND, ESQ.
                                450 Laurel Street, Suite 1450
                                Baton Rouge, LA 70801


For the U.S. Trustee:           Office of the U.S. Trustee
                                BY:  CHRISTY RENEE BERGERON, ESQ.
                                     RACHEL VOGLETANZ, ESQ.
                                400 Poydras Street, Suite 2110
                                New Orleans, LA 70130


Proceedings recorded by electronic sound recording, transcript
                produced by a transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

2

APPEARANCES VIA WEBEX (Cont'd):

| | |
|---|---|
| For the Subchapter V Trustee: | Law Offices of Craig M. Geno, PLLC<br>BY:  CRAIG M. GENO, ESQ.<br>587 Highland Colony Parkway<br>Ridgeland, MS 39157 |
| For Elman 880-990 Associates, LP: | Sher Garner Cahill<br>BY:  THOMAS J. MADIGAN, ESQ.<br>909 Poydras Street<br>Suite 2800<br>New Orleans, LA 70112 |
| For AFCO Credit Corporation: | Lugenbuhl, Wheaton, Peck, Rankin & Hubbard<br>BY:  ALICIA M. BENDANA, ESQ.<br>601 Poydras Street, Suite 2775<br>New Orleans, LA 70130 |
| For Premier Laboratory Services, LLC: | Jones Walker, et al<br>BY:  OLIVIA K. GREENBERG, ESQ.<br>201 St. Charles Street<br>49th Floor<br>New Orleans, LA 70170 |

- - -

3

1       (Proceedings commenced at 9:00 a.m.)

2           THE COURT:  Good morning, everyone.  This is Judge

3   Kolwe.  We are here in the case RemoteMD, L.L.C., Case Number

4   22-11254.  Before the Court today for ruling is confirmation of

5   the debtor's plan and the United States Trustee's motion to

6   convert or dismiss the case.

7           I'm prepared to rule, but I want to give everyone an

8   opportunity to make an appearance if you'd like to make an

9   appearance.

10          MR. DRAPER:  Your Honor, Douglas Draper on behalf of

11  the debtor.

12          THE COURT:  Good morning.

13          MR. RICHMOND:  Good morning, Your Honor.  Ryan

14  Richmond on behalf of Robert Dudley and Steele Strategies,

15  Incorporated.

16          THE COURT:  Good morning.

17          MS. BERGERON:  Christy Bergeron on behalf of the

18  United States Trustee's Office.

19          THE COURT:  Good morning.

20          MR. GENO:  Good morning, Your Honor.  Craig Geno,

21  Sub-V Trustee.

22          THE COURT:  Good morning.

23          MR. MADIGAN:  Good morning, Your Honor.  TJ Madigan

24  on behalf of Elman.

25          THE COURT:  Good morning.  Anyone else?

4

1          MR. KOTLER:  (Indiscernible).

2          MS. BENDANA:  Good morning, Your Honor.  Alicia

3    Bendana -- oops, sorry.  Alicia Bendana on behalf of AFCO.

4          THE COURT:  Good morning.

5          MS. GREENBERG:  Good morning, Your Honor.  Olivia

6    Greenberg on behalf of Premier Laboratories.

7          THE COURT:  Good morning.

8          MS. VOGLETANZ:  Good morning, Your Honor.  Rachel

9    Vogletanz also from the U.S. Trustee's Office.

10          THE COURT:  Good morning.

11          MR. KOTLER:  Michael Kotler on behalf of RemoteMD.

12          THE COURT:  Good morning.

13          Is that everyone?

14                    (No audible response)

15          THE COURT:  Okay.  All right.  The Court's going to

16    put this ruling on the record at this point.

17          The Court had a hearing on confirmation of the

18    debtor's proposed non-consensual plan which is ECF Number 286

19    under Subchapter V of Chapter 11 on November 27, 2023.

20    Speaking frankly, the Court had serious questions about the

21    viability of this case going into the confirmation hearing.

22    And even with the testimony and evidence submitted at the

23    hearing, the Court was left with a difficult decision.

24    However, the post-hearing briefing by the parties was very

25    helpful, and the Court is now prepared to rule.

5

1          Now for a bit of background.  This case began as an

2   involuntary Chapter 7 bankruptcy filed by petitioning

3   creditors, Robert Dudley, Premier Laboratory Services, Inc.,

4   Steele Strategies, Inc., Securitas Security Services USA, Inc.,

5   and KJG Strategies.  And that's ECF Number 1.

6          It was eventually converted to a voluntary case under

7   Subchapter V of Chapter 11, and the debtor eventually proposed

8   this plan.  As set out in the plan, the debtor is in the

9   business of providing remote healthcare services and relevant

10  consulting and training to business clients around the world.

11  The goal of the plan is to reorganize and eventually grow this

12  business and to maintain the business.

13          The plan establishes four classes, but the most

14  important class for purposes of confirmation is Class 3,

15  general unsecured claims over $2,500, which is impaired and

16  voted to reject the plan.  Now for clarity or for complete

17  analysis of the various classes, Class 1 is the Texas Workforce

18  Commission, and it's impaired but did not vote.  Class 2,

19  claims below $2,500 is impaired but voted to accept the plan.

20  And Class 4 is equity, in this case, Dr. Kotler, the principal

21  of the debtor, which is deemed to have accepted the plan.

22          Now turning back to Class 3, it includes original

23  petitioning creditors Robert Dudley and Steele Strategies,

24  Inc., which among other creditors voted to reject the plan and

25  they also filed objections to the previous version of the plan

6

1 and filed a post-hearing brief regarding confirmation.

2 As set out in the plan, the estimated amount of Class
3 3 claims is $7,392,213.89 and it can range down to $6,542,533.
4 The projected disposable income over the plan term to be paid
5 to this class of $554,921.34. The plan proposes to make "12
6 quarterly payments beginning at the end of the first full
7 quarter that is 6 full months following the effective date for
8 a total of 3 years of payments." See ECF Number 286, Page 12.

9 It's estimated that the distribution will be 7.5 to
10 8.5 percent. The current version of the plan, ECF 286, was
11 filed on November 15, 2023 shortly before the confirmation
12 hearing, and there were no objections filed to that plan.
13 Instead, the Court looks through the objections filed in
14 connection with the previous plan filed on September 21, 2023,
15 which is ECF Number 239.

16 Dudley and Steele Strategies objected on the grounds
17 that the plan is not feasible because the debtor is losing
18 money each month, that the plan was not proposed in good faith,
19 and that the plan does not contain appropriate remedies in the
20 event of a default on plan payments by the debtor. The good-
21 faith objection was based on the debtor's alleged failure to
22 explain changes from one plan to another, but the Court finds
23 that the debtor's witnesses, particularly its accounting
24 expert, Joseph Dwyer, adequately explained the debtor's
25 position and the Court otherwise found no evidence of bad

7

1 faith.

2    Accordingly, the Court will reject the bad-faith

3 argument at the outset and find that the debtor has acted in

4 good faith.  The crux of the dispute before the Court is

5 whether the plan is feasible and, if so, whether it includes

6 adequate remedies in the event of default.  The Court will

7 first set out the applicable law before turning to its

8 analysis.

9    Because Class 3 has voted to reject the plan, the

10 Court may only confirm it as a non-consensual plan.

11 Confirmation of a non-consensual plan under Subchapter V is

12 governed by Title 11 United States Code Section 1191(b), which

13 allows confirmation "if all of the applicable requirements of

14 Section 1129(a) of this Title other than Paragraphs 8, 10, and

15 15 of that section are met with respect to a plan."  And just

16 for completeness, Section 8 of 1129 deals with acceptance by

17 all impaired creditors.  Section 10 would have required the

18 vote of at least one impaired class member and each impaired

19 class.  And Section 15 of 1129(a) requires a certain minimum

20 standard for payments of each claim.  Again, those do not

21 apply.

22    Thus, 1129(a)'s usual confirmation standards

23 generally apply except for those.  Instead of the omitted

24 sections of 1129(a), Section 1191(b) of the Bankruptcy Code

25 provides that a court shall only confirm "if the plan does not

8

discriminate unfairly and is fair and equitable with respect to each class of claims or interest that is impaired under and has not accepted the plan."

Section 1191(c) provides that "fair and equitable" -- let me start that again. Section 1191(c) provides that "fair and equitable" test means that the plan commit either all disposable income for the applicable period or at least that much value of property to be distributed under the plan and requires either that "the debtor will be able to make all payments under the plan" or a determination that "there is a reasonable likelihood" of doing so, provided that "the plan provides that appropriate remedies which may include the liquidation of non-exempt assets to protect the holders of claims or interest in the event that the payments are not made." See 11 United States Code Section 1191(c).

Thus, both the feasibility objection and the remedies objection fall squarely under Section 1191(c). As the plan proponent, a debtor must prove by a preponderance of the evidence that all statutory requirements to confirmation are satisfied. See <u>In re T-H New Orleans Ltd. Partnership</u>, 116 F.3d 790, quoting from Pages 801, 802. It's a Fifth Circuit case from 1993.

Now the Court will turn to its analysis. The most important question is whether there is a "reasonable likelihood" of the debtor making all required plan payments and

9

whether the plan includes appropriate remedies in the event of
default by the debtor.  In support of confirmation, the debtor
presented the testimony of its accounting expert, Joseph Dwyer,
CPA, and its own principal, Dr. Michael Kotler.

Dr. Kotler's testimony was in short a mess.  It
seemed clear to the Court that he considers himself to be
primarily a doctor, not a businessperson, despite being the
100-percent owner of the debtor.  As he testified at length, he
delegates much of his day-to-day business duties for the debtor
and must apparently -- I'm sorry, let me start that sentence
again.

As he testified at length, he delegates much of his
day-to-day business duties for the debtor and apparently most
of his knowledge of the business to employees.  His testimony
was not helpful.  It took extensive coaxing for him to even
admit to electronically signing key documents filed in this
case, including the monthly operating reports, and he did not
have much substance to say when questioned about most aspects
of the debtor's business.

It is not that the Court did not find him to be
credible.  Instead his testimony offered little in the way of
relevant facts to which a credibility determination might apply
at all.  The Court would have been better served by presenting
testimony of one or more of the employees to whom the
operations have been largely delegated.

1    In this regard, the Court agrees with the post-

2   hearing brief filed by the Subchapter V Trustee, Mr. Geno,

3   which places little value on Dr. Kotler's testimony.  If the

4   Court's decision rested only on the testimony of Dr. Kotler, it

5   would be hard to confirm this plan.  However, although

6   Dr. Kotler is the 100-percent owner of the debtor, he is not

7   the entire business.  And the evidence submitted in support of

8   confirmation and the testimony of Mr. Dwyer showed that the

9   debtor's great strides in turning its business around since the

10  inception of this case.

11    The debtor was in fairly dire financial straits at

12  the inception of the case, but as Mr. Dwyer effectively

13  testified, the debtor has recently implemented a number of

14  cost-cutting measures, including closing approximately one

15  month before the confirmation hearing a Houston facility that

16  was incurring a net loss in excess of $100,000 annually,

17  terminating elder care for a savings of nearly $200,000

18  annually, and other measures including the shuttering of

19  certain overseas operations.

20    Between the substantial cost savings and the plans

21  for future business, Mr. Dwyer opined that the debtor

22  realistically should be able to meet or exceed the projected

23  disposable income targets set out in the plan before the Court.

24    The Court found Mr. Dwyer's testimony to be both

25  credible and helpful.  While the scope of his engagement did

11

1  not include every document filed in the bankruptcy case, he did

2  have access to the debtor's underlying books and records, and

3  he was able to explain the debtor's business and the risk and

4  opportunities facing the debtor during the plan term in detail.

5       Although he took issue with some of the debtor's

6  previous numbers, including certain line items in the pro forma

7  submitted in connection with the plan, he testified that the

8  debtor will be able to meet the projected annual revenue

9  targets and, thus, be able to fund its plan payments.  Meeting

10 these targets will require the debtor to grow revenues

11 approximately 15 percent in the first year, 23 percent in the

12 second year, and 6 percent in the third year.

13      Indeed, part of that growth may well be dependent

14 upon the debtor exiting bankruptcy successfully.  That's one of

15 the only areas of Dr. Kotler's testimony that the Court did

16 find helpful was his discussion of his contacts within various

17 industries who would be willing to work with the debtor once it

18 exits from bankruptcy.

19      And speaking of that, and this is just an aside, the

20 Court did find credible Dr. Kotler's testimony insofar as his

21 contacts in various industries and the ability to grow the

22 business and the fact that he had done this for many years

23 previous to the recent history when the company ran into its

24 problems.

25      To continue to the opinion, the Court has kept this

12

1 discussion at a higher level for a few reasons; first, because

2 the debtor has been in the process of getting its financial

3 affairs in order. The financial picture presented throughout

4 this bankruptcy was in flux leading up to the confirmation

5 hearing, and some of the specific points and figures the

6 parties argued about were either resolved or substantially

7 improved by the time of the confirmation hearing. Indeed, many

8 of the items that were discussed at the hearing dealt with

9 one-time charges that painted a more negative picture of the

10 debtor's business.

11        Second, the feasability determination, or more

12 precisely the determination of whether the plan satisfies

13 Section 1191(c) in this case, is a high-level question. Is it

14 likely that the debtor will succeed if the plan is confirmed?

15        Third, the debtor bears the burden of proof and it

16 presented evidence and testimony supporting confirmation.

17 Although the parties objecting to confirmation raised their own

18 concerns while questioning the debtor's witnesses, they did not

19 present any witnesses of their own. The Court has considered

20 the questions and arguments raised by the objectors, but it

21 finds that, on balance, the debtor has adequately proved that

22 the plan is feasible. The Court's particularly looking at the

23 various reports in the record from an accrual basis that

24 paints, the Court thinks, a different picture in this case.

25        The Court is satisfied from the evidence and

13

1  testimony that there is at least a "reasonable likelihood" that

2  the debtor will be able to make its plan payments, though the

3  Court will stop short of finding that the debtor actually will

4  be able to make those payments.

5       Under Section 1191(c), a finding that there is a

6  reasonable likelihood that the debtor will make the plan

7  payments is not enough to confirm unless "the plan provides

8  appropriate remedies which may include the liquidation of

9  non-exempt assets to protect the holders of claims or interest

10 in the event that the payments are not made."  I'm quoting from

11 Title 11 United States Code Section 1191(c).

12      The Court finds that the plan, as proposed by the

13 debtor, does not include appropriate remedies for a default on

14 payments to Class 3 unsecured creditors.  The plan includes a

15 section titled "Remedies Upon Plan Default."  It's actually in

16 the Preamble's second paragraph D -- there's two paragraph Ds

17 in that section -- which sets out two different types of

18 remedies for default depending on the class of claims.  For

19 payments to the Texas Workforce Commission or the Texas

20 comptroller on a secured claim, the plan allows the debtor to

21 accrue only up to two defaults after which the Texas Workforce

22 Commission or the Texas Comptroller has the option to "declare

23 the default non-curable and proceed to collect the remainder of

24 the debt."

25      For payments to Class 3 unsecured creditors under the

14

1  first paragraph of the "Remedies Upon Plan Default" section, on

2  the other hand, the plan apparently gives the debtor the chance

3  to cure an unlimited number of defaults within 30 days of each

4  default.  Upon failing to cure a default, the plan provides

5  that the litigation trustee shall market the business for sale

6  for a period of six months.  And only "at the end of the

7  six-month period," would the litigation trustee either

8  liquidate the business directly or convert this case to one

9  under Chapter 7.

10       The Court does not believe this adequately protects

11  the Class 3 unsecured creditors, not only because it would

12  allow the debtor to repeatedly default and then cure within 30

13  days but also because it would force the creditors to wait for

14  a period of seven months after a default calculated by the

15  missed payment date plus 30 days to wait for a cure plus 6

16  months to market the property.

17       For any liquidation to commence, assuming the

18  liquidation trustee is unable to find a buyer.  Considering the

19  first plan payment is not due for approximately six months

20  after the effective date even if default on the first payment

21  would mean Class 3 creditors could be forced to wait at least

22  13 months after the effective date for a liquidation or

23  conversion, even if the debtor defaults on the very first

24  payment.

25       The Court finds that is not an appropriate remedy.

15

1  Instead, considering how few payments there are, there are 12

2  quarterly payments over 3 years, the Court believes the debtors

3  should have the right to cure only a single default.  Failure

4  to cure a default within 30 days will give the Class 3

5  creditors by an assent of a majority of claims by value the

6  option of either, A, accepting the late payment without

7  prejudicing their right to seek other remedies in the event of

8  a subsequent default; B, letting the litigation trustee market

9  the property for a period of six months; or, C, moving to

10 immediately convert the case to one under Chapter 7.

11      If the Class 3 creditors choose to allow the

12 litigation trustee to market the property but no buyer is found

13 within six months, the case shall be converted to one under

14 Chapter 7.  The  Court believes this will adequately protect

15 the Class 3 creditors as it substantially shortens the

16 potential weight for a remedy following a default and it gives

17 them a direct say in how to treat a default.

18      As a final note, the Court will render null and void

19 Section 8.10 of the proposed plan concerning vesting of assets.

20 Instead, all properties specified in Section 11 -- I'm sorry,

21 let me start that sentence again.

22      Instead, all property specified in Title 11 United

23 States Code Section 1186(a), i.e., property specified in

24 Section 541 plus all property acquired post-petition and income

25 from services earned post-petition, shall remain property of

16

1  the estate.  That way, in the event of a default, there will be

2  no impediment to the efficient administration of the debtor's

3  property either by the liquidation trustee or by a Chapter 7

4  Trustee.  And to be clear, what this means is no assets to

5  revest in the debtor until discharge or the case is dismissed.

6          Again, the Court finds that there is a reasonable

7  likelihood that the debtor will be able to make the plan

8  payments with the addition of the appropriate remedies just

9  discussed.  The Court finds that the proposed plan is fair and

10 equitable and, thus, is confirmable.

11         It is ordered, therefore, that the debtor's plan, ECF

12 Number 286, be confirmed in accordance with the Court's order

13 as stated in this opinion and that the U.S. Trustee's motion to

14 convert or, in the alternative, dismiss, which is ECF Number

15 240, is denied.

16         That's the ruling of the Court.  Mr. Draper, can I

17 ask you to have the order, please?

18         MR. DRAPER:  Yes, I'll prepare the order, and I'll

19 include in the order the amended plan, the language that the

20 Court wants.  If you can send that over to me.

21         THE COURT:  Very good.  Okay, thank you to everyone.

22 I hope everyone has a wonderful holiday, and we're going to be

23 adjourned.

24         MR. DRAPER:  Thank you, Your Honor.

25         UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

17

1         MS. BERGERON:  Thank you, Your Honor.

2         THE COURT:  Thank you.

3           (Proceedings adjourned at 9:18 a.m.)

4                    * * * * *

13                **C E R T I F I C A T I O N**

14         I, DIPTI PATEL, court approved transcriber, certify

15 that the foregoing is a correct transcript from the official

16 electronic sound recording of the proceedings in the above-

17 entitled matter, and to the best of my ability.

19 /s/ Dipti Patel

20 DIPTI PATEL, CET-997

21 J&J COURT TRANSCRIBERS, INC.    DATE:  January 10, 2024