# Exhibit B

# EXHIBIT B

SO ORDERED,
SIGNED_____ April 3, 2024

_John W. Kolwe_

JOHN W. KOLWE
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re | : | NO: 22-11254 |
| | : | |
| REMOTEMD, LLC | : | CHAPTER 11 |
| | : | SUBCHAPTER V |
| Debtor. | : | |
| | : | |

### AMENDED ORDER CONFIRMING THE DEBTOR'S
### SUBCHAPTER V PLAN OF REORGANIZATION

The Court held a confirmation hearing on November 27, 2023, to consider the

*RemoteMD, LLC Plan of Reorganization, Dated: November 10, 2023* (the "Plan") [Dkt. #

286]; the *United States Trustee's Objection to Confirmation* filed by the David W. Asbach,

Acting United States Trustee for Region 5 ("U.S. Trustee") [Dkt. # 268]; the *Objection to

Confirmation* filed by Steele Strategies Inc. ("Steele") (the vehicle that employed

Katherine Steele) and Robert Dudley (the "Dudley") (the "Dudley Objection") [Dkt. #265];

and the *Report and Recommendation with Respect to Debtor's Amended Plan of

Reorganization for Small Business Under Chapter 11* [Dkt. # 300].

At the confirmation hearing, the Court considered: (i) the evidence (both oral

testimony and documentation) presented; (ii) the testimony of Dr. Michael D. Kotler, and

Joseph Dwyer, an expert retained by Dr. Michael D. Kotler and his family; the Monthly

Operating Reports filed in the case; and (iii) the *Amended Certification of Tabulation of*

*Ballots*, [Dkt. # 295], filed by the Debtor. The Court also considered the representations made by the SubChapter V Trustee.

Accordingly, based upon the admitted evidence, applicable law, and the record in this case, the Court makes the following findings of fact and conclusions of law pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure:[1]

## FINDINGS OF FACTS & CONCLUSIONS OF LAW

**A.**       **Jurisdiction**. The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This matter is a core matter, that this Court can hear and determine on a final basis under 28 U.S.C. § 157(b)(2).

**B.**       **Venue**. Venue before the Court is proper under 28 U.S.C. §§ 1408 and 1409.

**C.**       **Immaterial Modifications.** The court finds that the modifications to the Debtor's Plan are immaterial. Notwithstanding the foregoing, parties in interest, other than the U.S. Trustee, Dudley and Steele, any other party-in-interest who contends that the modifications are material, shall have ten (10) days from the entry of this Order to file a motion seeking to have the modifications identified below to be material. Pending further order of Court, if an objection is filed in accordance with 11 U.S.C. § 1193, the modifications do not adversely change the treatment of any creditor, and all such modifications are approved, and no additional disclosure to the Holder of Claims is required by the Bankruptcy Code or Rules. The immaterial modifications to the Plan are the following:

  i.    Identification of Dwayne Murray as the Litigation Trustee, and the compensation agreement for the Litigation Trustee;

  ii.   Modification of the financial projections and effective date;

  iii.  List Texas Workforce Commission as a secured creditor;

       **iv.**     Effectiveness post-effective date of insurance benefit agreements;

       **v.**     The payment to the IRS reflected in section 3.2 of the Plan; and

       **vi.**     The incorporation of the settlement set forth in Docket Entry 288

between the Debtor and Elman 880-990 Associates LP.

The Modifications are incorporated in **Exhibit A** which is the Plan confirmed by this Court.

    **D.**      **Notice.** Due, adequate, and sufficient notice of the Plan, solicitation package and the Order setting a hearing on Plan Confirmation [Dkt. # 244], was served upon all creditors, interest holders, and parties requesting notice along with a copy of the Debtor's Plan, as evidenced by the Affidavit of Mailing filed on September 29, 2023 [Dkt. # 247], and the Debtor's Amended Plan, as evidence by the Certificate of Service filed on November 15, 2023 [Dkt. # 287]. Accordingly, the method of service and solicitation of acceptance of the Plan, notice of the hearing to consider confirmation of the Plan, and notices of all other deadlines or requirements relating thereto (collectively, the "Confirmation Deadlines") comply with the Federal Rules of Bankruptcy Procedure, are adequate and reasonable under the circumstances of this case, and no further or additional notice of the Confirmation Hearing or the Confirmation Deadlines are necessary or required.

    **E.**      **Objections to Confirmation**. The Court overrules the objections provided the changes identified below are incorporated into the Plan for the reasons stated on the record.

    **F.**      **Proper Classification of Claims – 11 U.S.C. §§ 1122 and 1123**. The Plan adequately and properly identifies and classifies all claims. Pursuant to 11 U.S.C. § 1122(a), the claims placed in each class are substantially similar to other claims in each such class. Pursuant to 11 U.S.C. § 1123(a)(1), valid legal and business reasons exist for the various

classes of claims created under the Plan and such classification does not unfairly discriminate among holders of claims. The classification of claims in the Plan is reasonable.

G.      **Specified Unimpaired Classes – 11 U.S.C. § 1123(a)(2)**. The Plan specifies all classes or claims that are not impaired under the Plan.

H.      **Specified Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3)**. The Plan specifies the treatment of all classes of claims that are impaired under the Plan.

I.      **No Discrimination – 11 U.S.C. § 1123(a)(4)**. The Plan provides for the same treatment of claims or interests in each respective class unless the holder of a particular claim or interest has agreed to a less favorable treatment of such claim or interest.

J.      **Implementation of the Plan – 11 U.S.C. § 1123(a)(5)**. The Plan provides adequate means for its implementation. The Debtor will act as the post-confirmation disbursement agent herein for the unsecured creditor class.

K.      **Non-Voting Equity Securities/Allocation of Voting Power – 11 U.S.C. § 1123(a)(6)**. This Debtor will continue to be owned and operated by Dr. Michael D. Kotler.

L.      **Interests of the Creditors, Equity Security Holders, & Public Policy – 11 U.S.C. § 1123(a)(7)**. The Debtor attached a Liquidation Analysis as Exhibit A to its Plan. Under that Liquidation Analysis, in a hypothetical Chapter 7 proceeding, unsecured creditors would receive a distribution in an amount greater than the amount such creditors would receive in a hypothetical Chapter 7.

M.      **Payments to Creditors from Earnings from Personal Services - 11 U.S.C. § 1123(a)(8)**. The Court finds and concludes that 11 U.S.C. § 1123(a)(8) is satisfied because the Debtor will use its future disposable income to fund the Plan payments.

N.  **Assumption & Rejection – 11 U.S.C. § 1123(b)(2)**. The Plan, pursuant to 11 U.S.C. § 365, provides for the assumption, rejection, or assignment of any executory contract or unexpired lease of the Debtor not previously rejected.

O.  **Additional Plan Provisions – 11 U.S.C. § 1123(b)(6)**. Each of the provisions of the Plan are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

P.  **Principal Purpose of the Plan – 11 U.S.C. § 1129(d)**. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of § 5 of the Securities Act of 1933.

Q.  **Subchapter V Plan Requirements – 11 U.S.C. § 1189**. The Debtor has complied with 11 U.S.C. § 1189 as the Debtor sought an extension of time to file its Plan granted by the Court. The original *Plan of Reorganization for Small Business Under Chapter 11* [Dkt. # 202] was timely filed on May 16, 2023, prior to the extended plan deadline. The Debtor has met the requirements of 11 U.S.C. § 1189.

R.  **Contents of a Subchapter V Plan – 11 U.S.C. § 1190**. In compliance with 11 U.S.C. § 1190, the Plan includes: (1) a brief history of the business operations of the Debtor, (2) a liquidation analysis, and (3) projections with respect to the ability of the Debtor's ability to make payments under the proposed plan for reorganization. The Plan provides for the submission of the Debtor's future disposable income as is necessary for the execution of the Plan.

S.  **Satisfaction of Conditions – 11 U.S.C. § 1191(a) and 11 USC SSS 1191(b)**. The Court finds that the Plan is a nonconsensual cramdown due to pending objections, and the votes of Steele and Dudley and, as such, the confirmation of the Plan is governed by 11 U.S.C. § 1191(b). The Plan does not discriminate unfairly. The Plan is also fair and

equitable inasmuch as no evidence that the Debtor's disposable income under the Plan was not accurate and the Plan proposes to pay such disposable income to the Class 3 creditors over the three-year period from the Effective date of the Plan. The Court does find however the Plan, as written, does not adequately protect the holders of claims or interests in the event that the payments are not made and, as such, does not meet the requirement for confirmation under 11 U.S.C. § 1191(b). The Court will confirm the Plan with the modification set forth below to rectify the deficiency in the Plan with respect to protecting the claims or interests in the event the Plan payments are not made. The provisions set forth below are hereby added to the Plan to satisfy the requirement that holders of Class 3 - General Unsecured Claims over $2,500.00 must be adequately protected if the Debtor has a second default under the Plan Payments to the holders of Class 3 Claims.

T.      With respect to the relevant provisions of 11 U.S.C. § 1129(a), the Court finds and concludes as follows:

a.    **11 U.S.C. § 1129(a)(1).** The Plan incorporates the requirements of 11 U.S.C. §§ 1122 and 1123, governing classification and contents of the Plan. Further, the Debtor has provided adequate means for the Plan's implementation, thereby satisfying 11 U.S.C. § 1123(a)(5).

b.    **11 U.S.C 1129(a)(2).** The Debtor has complied with the applicable provisions of the Bankruptcy Code.

c.    **11 U.S.C. § 1129(a)(3).** The Plan was proposed in good faith and not by any means forbidden by law.

d.    **11 U.S.C. § 1129(a)(4).** The Debtor shall not make any payments for services or for costs and expenses in or in connection with the

case or the Plan until such time as such request for payment has been approved by the Court as reasonable.

e. **11 U.S.C. § 1129(a)(5).** Dr. Michael D. Kotler, the sole shareholder of the Debtor, will continue to serve as the Debtor's officer and director, as his position as officer and director is in the best interests of creditors.

f. **11 U.S.C. § 1129(a)(6).** This provision deals with government regulatory commissions and is inapplicable herein.

g. **11 U.S.C. § 1129(a)(7).** The Plan provides that, with respect to each impaired class of claims, each holder of a claim has accepted the plan, or will receive or retain under the plan on account of such claim or interest property of a value, as of the Plan Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of this Title.

h. **11 U.S.C. § 1129(a)(8).** Is not applicable to this case since confirmation is pursuant to 11 U.S.C. § 1191(b).

i. **11 U.S.C. § 1129(a)(9).** The Plan satisfies 11 U.S.C. § 1129(a)(9) and no objection has been filed that the Plan does not comply with this section.

j. **11 U.S.C. § 1129(a)(10).** This section is not applicable to a Plan confirmed under 11 U.S.C. § 1191(b).

k. **11 U.S.C. § 1129(a)(11).** Confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial

reorganization by the Debtor, unless such liquidation or reorganization is proposed in the Plan. No objection was filed that the Plan does not satisfy this section. The testimony of the Debtor's expert supports that this requirement for Plan confirmation has been satisfied.

l.    **11 U.S.C. § 1129(a)(12).** This provision is inapplicable to Subchapter V cases, as no fees are required to be paid to the U.S. Trustee under 28 U.S.C. § 1930.

m.    **11 U.S.C. § 1129(a)(13).** This provision is inapplicable herein as the Debtor pays no retiree benefits.

n.    **11 U.S.C. § 1129(a)(14).** This provision is inapplicable to a corporate debtor.

o.    **11 U.S.C. § 1129(a)(15).** This provision is not required to confirm a Plan in Subchapter V under Section § 1191(a).

p.    **11 U.S.C. § 1129(a)(16).** This provision is not applicable herein as there is no contemplated transfer of property.

**Default and Remedies after Confirmation (§ 1191(c)).**

The Court does find however the Plan, as written, does not adequately protect the holders of claims or interests, however, the Court will confirm the Plan with the following modification to the Plan to rectify this deficiency in the Plan. The Plan Remedies Upon Default Section of the Plan in the Plan is replaced by the revised Remedies Upon Plan Default Section set forth below to satisfy the requirement that holders of Class 3 – General

Unsecured Claims over $2,500.00 must be adequately protected if the Debtor has a second

default under the Plan Payments to the holders of Class 3 Claims.

### Remedies upon Plan Default.

The Debtor must make monthly distributions of the Projected Disposable Income to

the Litigation Trustee. If the Debtor fails to make any payments as described herein, the

Litigation Trustee must give written notice of such default to the Debtor and counsel and all

holders of Class 3 Claims who request that the Liquidating Trustee provide them notice of any

such default. The Debtor shall have thirty (30) days from the date of such written notice to

bring all payments current or seek appropriate plan modifications pursuant to § 1193 of the

Bankruptcy Code within a reasonable amount of time after such default. If the Debtor does

not timely bring the payments current or seek appropriate plan modifications, the Litigation

Trustee shall market the business for sale for a six (6) month period. During the six-month

period, the Litigation Trustee must approve all expenditures and no payments shall be made

to Dr. Kotler or any insider or affiliate of Dr. Kotler without the express written consent of the

Litigation Trustee. If at the end of the six (6) month period no buyer has been found, then the

Litigation Trustee shall either schedule a liquidation auction or convert the proceeding to a

Chapter 7 liquidation.

If a second default occurs in the payment to the holders of Class 3 claims, due to the

nonpayment by the Reorganized Debtor of payment that must be made to the Liquidating

Trustee to provide the funds, such that the Liquidating Trustee can pay a Class 3 creditor its

payment under the Plan due in addition to the rights granted above, a Class 3 creditor or

creditors may elect to file Motion with the Court seeking to have the case either dismissed or

converted to a case under Chapter 7 or place the Liquidating Trustee in control of the

operations of the Debtor or exercise whatever rights such creditor may have under applicable non bankruptcy state law.

A failure by the reorganized Debtor to make a payment to TWC or the Texas Comptroller pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the TWC or the Texas Comptroller, the TWC or the Texas Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the reorganized Debtor at: 880 W. Commerce Rd., Suite 101, New Orleans, LA 70123; Attn: Chief Executive Officer, and upon Debtor's attorney at Heller, Draper, & Horn, LLC, 650 Poydras St., Suite 2500, New Orleans, LA 70130; Attn: Greta M. Brouphy, Esq.; gbrouphy@hellerdraper.com.

Debtor shall be allowed to cure up to two (2) defaults to the TWC or the Texas Comptroller. Upon a third default, the TWC or the Texas Comptroller, at their option, may declare the default non-curable and proceed to collect the remainder of the debt.

In addition, the Court strikes Section 8.10.

**IT IS ORDERED** that:

1.	The Plan is **CONFIRMED** under 11 U.S.C. § 1191(b).

2.	**Binding Effect of Plan**. Pursuant 11 U.S.C. § 1141(a), except as provided in §§ 1141(d)(2) and (3), the provisions of the Plan, as of the Effective Date, bind the Debtor and any creditor, whether or not the claim or interest of such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

3. **Revesting of Property**. Notwithstanding anything to the contrary in this Amended Order or the Amended Plan attached hereto as Exhibit A, property of the estate, including property under 11 U.S.C. § 1186(a), shall not vest in the Debtor until this case is dismissed or a discharge order is entered pursuant to 11 U.S.C. § 1192 as stated on the record on December 14, 2023.

4. **Post-Confirmation Operation of Business**. Except as otherwise provided in the Plan or in this Confirmation Order, on and after the Effective Date, the Debtor may operate a business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provisions of the Bankruptcy Code. The Debtor is entitled to retain and compensate professionals without the necessity of further approval of this Court. Except as set forth in the Plan concerning objections to claims, the Debtor may also settle or compromise any claims without Court approval.

5. **Injunction and Discharge**. Except as otherwise expressly provided in the Plan or in this Order, as of the Effective Date, (i) the Debtor shall be discharged from any debt to the fullest extent provided by 11 U.S.C. § 1141(d), and (ii) all holders of any discharged claims against the Debtor are enjoined from enforcing any such claim to the fullest extent provided by 11 U.S.C. § 524(a).

6. **Disbursing Agent**. The Liquidation Trustee shall make all Plan distributions to holders of Allowed unclassified claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed classified claims.

7. **Effect of Confirmation Order on Plan**. The failure to reference or address all or part of any particular provision of the Plan herein has no effect on the validity, binding effect,

or enforceability of such provision and such provision has the same validity, binding effect, and enforceability as every other provision of the Plan. To the extent that any inconsistencies exist between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

8.      **Executory Contracts and Leases**. Except as otherwise provided in a separate order of the Court, all executory contracts and unexpired leases not otherwise assumed are deemed rejected as of the Effective Date., and a proof of claim from the rejection must be filed no later than thirty (30) days after the entry of this Order. Notwithstanding the foregoing, health insurance benefit agreements with insurance providers are not considered executory contracts, and remain effective between the Debtor and the provider.

9.      **Jurisdiction**. The Bankruptcy Court retains jurisdiction to:

    a.      Enter such orders as are necessary or appropriate to the implementation of the Plan provisions and/or to resolve any disputes arising from implementation of this Plan;

    b.      Resolve issues with respect to the Debtor's substantial consummation of the Plan and issues regarding motions to amend or modify the plan;

    c.      Hear and allow all applications for compensation to Professionals and other Administrative Expense Claims;

    d.      Resolve any motions, adversary proceedings, or contested matters, that are pending as of the date of substantial consummation;

    e.      Adjudicate objections to claims;

     f.     Resolve disputes with respect to any and all injunctions created as a result of confirmation of the Plan;

     g.     Adjudicate modifications of the plan under 11 U.S.C. § 1193;

     h.     Review and consider issues associated with the Debtor's final report and entry of final decree, and to enter a final decree; and

     i.     Enter such orders as the Court deems necessary or appropriate with respect to enforcement of the Plan.

10.     **Documents Required to Effectuate Plan.** The Debtor is authorized to execute any and all documents reasonably required to effectuate the provisions of the Plan or prior Orders of this Court.

11.     **Discharge of the Subchapter V Trustee.** Pursuant to 11 U.S.C. § 1183, the services of the Subchapter V Trustee in the case shall terminate when the Plan has been substantially consummated, except that the United States trustee may reappoint a trustee as needed for performance of duties under 11 U.S.C § 1183(b)(3)(C) and § 1185(a). Not later than 14 days after the Plan is substantially consummated, the Debtor shall file with the Court and serve on the Subchapter V Trustee, the United States Trustee, and all parties in interest a Notice of such substantial consummation.

12.     **Narrative Status Report.** The Debtor shall file a narrative post confirmation report within six (6) months after the Effective Date detailing the steps taken toward consummation of the Plan. Additional reports are to be filed semi-annually thereafter until a motion for final decree is filed.

**IT IS FURTHER ORDERED** that the Debtor shall serve this Order via first-class U.S. Mail on the required parties who will not receive a copy through the Court's CM/ECF system

pursuant to the Federal Rules of Bankruptcy Procedure and this Court's Local Rules and file a

certificate of service to that effect within three (3) days.

###

**Exhibit A**

| Fill in this information to identify the case: |
|---|
| Debtor Name:  RemoteMD, LLC |
| United States Bankruptcy Court for the Eastern District of Louisiana |
| Case number:  22-11254 |

❑ Check if this is an amended filing

Official Form 425A

Plan of Reorganization for Small Business Under Chapter 11                                10/20

**RemoteMD, LLC Plan of Reorganization, Dated:  November 10, 2023**

**Petition Date for the Involuntary Chapter 7 Case: October 18, 202 [Dkt. # 1]**
**Entry of Order Converting the Case to Voluntary:  November 4, 2022 [Dkt. # 29]**
**Amended Voluntary Petition Filed by the Debtor:  November 7, 2022 [Dkt. # 32]**

**Petition Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)  This Plan is a proposal by the Debtor, RemoteMD, LLC, and subject to court approval after opportunity for objections and a hearing.**

**Background for Cases Filed Under Subchapter V:**

**A.       Description and History of the Debtor's Business**

Since 2008, the Debtor has successfully provided a proprietary system for the delivery of healthcare, conceived and developed by the Debtor for distant/remote or inaccessible locations, such as Oil, Gas & Remote Industrial/Work Sites gaining the company a Global reputation for capability and quality of care on all seven continents.  The Debtor further developed the capability to safely & responsibly provide comprehensive care for effectively treating Medical & Traumatic Emergencies, as well as routine Medical Conditions.

Debtor provides Consulting Services to assist Corporate Clients with the development, implementation, and management of their Medical Policies and Procedures; including Health & Hygiene Policies & Procedures, Infectious Disease Prevention & Avoidance Strategies; and Drug and Alcohol Avoidance Policies.  The Debtor provides Real Time, 24/7/365, Remote Medical Care, Globally, including Subspecialty Care.       Upon request, the Debtor provides Corporate Clients with

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

MERP's, Medical Emergency Response Planning; information outlining Medical & Logistical Resources; including geographically specific Hospitals, Medical Clinics/Providers, Air, Land & Sea Transportation Providers specific for the duration of each and every project.

The Debtor also offers training for outside Healthcare Providers who treat patients in an Industrial Setting. The Debtor also offers American Heart Association Courses, National Association of Emergency Medical Technician Courses, United States Coast Guard Courses and other Specialty Courses specific to Industry.

## B.   Creation of a Litigation Trust and Appointment of the Litigation Trustee

This Plan provides for the creation of a Litigation Trust.   A summary of the Litigation Trust is as follows and is further delineated in the attached Litigation Trust Agreement:

Establishment of a Litigation Trust. On the Effective Date, the Reorganized Debtor on their own behalf and on behalf of the holders of Allowed Claims, shall execute the Litigation Trust Agreement.   **See Exhibit A.**  The entry of the confirmation order shall include and constitute approval of the Litigation Trust Agreement and authorization of the Debtor to execute the Litigation Trust Agreement. In connection with the formation of the Litigation Trust, the Reorganized Debtors shall transfer the Initial Litigation Trust Funds to the Litigation Trust.

Purpose of the Litigation Trust. The Litigation Trust shall be established for the purposes of: (i) making all Plan distributions to holders of Allowed unclassified claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed classified claims; (ii) confecting all objections to Claims; (iii) collection of the Remote Texas Note to the Reorganized Debtor; and (iv) receiving and distributing the proceeds derived from the Reserved Causes of Action according to the terms of this Plan, and taking such other and further action as the Litigation Trustee deems necessary, in its sole discretion, to enforce the rights and obligations associated therewith.

Appointment of the Litigation Trustee. On the Effective Date, the individual or entity identified by the Petitioning Creditors, or such other individual or entity approved by the Bankruptcy Court and the United States Trustee at the Confirmation Hearing, shall be appointed as the Litigation Trustee under this Plan. Any successor Litigation Trustee shall be appointed as set forth in the Litigation Trust Agreement. The Litigation Trustee's powers, duties, bonding requirements and compensation shall be set forth in the Litigation Trust Agreement, which shall be approved by the Court and which the Reorganized Debtors shall be specifically authorized to execute in the Confirmation Order.  The proposed initial Litigation Trustee is Dwayne Murray.

Authority of the Litigation Trustee to Settle and Grant Releases. The Litigation Trustee is authorized to settle the Retained Causes of Action, and release and discharge, to the fullest extent permitted by applicable Law, from the Retained Causes

{00381052-1}

of Action to which the Litigation Trustee is a party in accordance with this Plan without the need for approval by the Bankruptcy Court. Any settlement effectuated prior to the Confirmation Date, upon approval thereof by the Bankruptcy Court or other court of competent jurisdiction, shall be deemed incorporated into this Amended Plan by reference, and entry of the Confirmation Order, including provisions of such settlement, shall be deemed a settlement pursuant to § 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019. With respect to any settlement effectuated subsequent to the Confirmation Date, the Litigation Trustee shall have the authority to settle or otherwise dispose of any Retained Cause of Action without the need for obtaining approval of the Bankruptcy Court, however, the Litigation Trustee, in their discretion, can seek approval of the Bankruptcy Court.  Further, the Litigation Trustee will be required to file a notice of the settlement into the record of this case and serve upon all parties entitled to such notice, which includes the sums received by the Litigation Trustee and the costs associated with the settlement.

Powers and Duties of the Litigation Trustee. The Litigation Trustee's powers and duties shall consist of (i) distributing the Litigation Trust Assets based on the terms of the Plan and based on the following priority (a) first for Litigation Trust Expenses and Fees; (b) second for Allowed Administrative Claims; (c) third to priority tax claims and pro rata to holders of Allowed Class 1, Class 2 and Class 3 Claims; (ii) receiving the proceeds derived from the Retained Causes of Action according to the terms of this Plan, (iii) investigate, file, prosecute and settle the Retained Causes of Action, (iv) taking such other and further action as the Litigation Trustee deems necessary, in its sole discretion, to enforce the rights and obligations associated with the Retained Causes of Action; and (v) and other such duties which are necessary to give effect to the terms and provisions of this Plan.

Fees and Expenses of the Litigation Trustee. The Litigation Trustee shall be compensated for the services rendered and expenses incurred in accordance with an agreement reached between the Debtor, the Litigation Trustee and the Petitioning Creditors.  The proposed compensation agreement includes the distribution of $20,000.00 from the Debtor's projected disposable income, with a minimum of compensation of $40,000.00 and 3% of gross recoveries by the Litigation Trustee in the performance of his powers and duties.  The Litigation Trust Expenses and Fees as agreed will be incorporated into the Litigation Agreement, which is subject to approval by the Bankruptcy Court and the United States Trustee at the Confirmation Hearing.

Litigation Trust Distributions   The Litigation Trustee shall have discretion as to when and in what amounts distributions will be made to creditors and other parties in interest who will receive payment under the Plan.  When funds are distributed to parties receiving payments under the plan the Litigation Trustee shall distribute to such parties as follows
A) 25%  to Allowed Professional Fee Claims
B) 25%  to Other Administrative Claims
C) 25%  to Tax Claims and
D) 25%  to the holders of claims in Class 3

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

<u>Applicability of Securities Laws and Reporting Requirements</u>. Under § 1145 of the Bankruptcy Code, this Plan and the interests of creditors in the distributions provided therein shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities. If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Litigation Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

<u>Termination of Litigation Trust and the Litigation Trustee</u>. The Litigation Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that, on or prior to the date three (3) months prior to such termination, a party in interest, including the Litigation Trustee, may file a motion to extend the term of the Litigation Trust, upon notice to all interested parties and showing that such an extension is necessary in the discretion of the Litigation Trustee. Notwithstanding the foregoing, multiple extensions may be obtained so long as Bankruptcy Court approval is requested at least three (3) months prior to the expiration of each extended term. Furthermore, the Litigation Trustee shall further cause the Litigation Trust to be terminated within three (3) months of the occurrence of the later of (i) the entry of a Final Order by the Bankruptcy Court closing the Bankruptcy Case pursuant to § 350(a) of the Bankruptcy Code, or (ii) the final distribution of all net liquidated recovery derived from the Retained Causes of Action.

The Debtor states that it any funds recovered under the Retained Causes of Action will be distributed pursuant to the terms of the Plan, however recovery is uncertain and at this time, the Debtor is unable to quantify the amount of any proposed distribution.

**C.      Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit B**.

**D.      Feasibility and the Debtor's ability to make future plan payments and operate without further reorganization**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.  The Debtor, among other things, will perform remote medical services, lease of equipment for remote medical services, the continuance of factoring its receivables, and the continuance of collection of the Remote Receivables.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

The Debtor and Evergreen Working Capital, LLC reached an agreement, with court approval, whereby Evergreen provides the Debtor financing for working capital by factoring receivables. Debtor and Evergreen do not have a pre-petition contract for the factoring of receivables. No other party or person has a security interest in Debtor's post-petition receivables. Sallyport Commercial Finance, LLC had a first-priority security interest in Debtor's pre-petition receivables, but Evergreen purchased Sallyport Commercial Finance, LLC's interest in the pre-petition receivables and is assigned the priming security interest. Upon information and belief, there may be other lower priority interests in Debtor's pre-petition receivables, but, due to the assignment, Evergreen has a first priority interest in pre-petition receivables. The Debtor, on a post-confirmation basis, will continue with the sale of its accounts receivable to Evergreen pursuant to the post-petition agreement reached with court approval. In that regard, all obligations arising between Evergreen and the Debtor are deemed to be valid and binding obligations which are enforceable against the Reorganized Debtor in favor of Evergreen. The Reorganized Debtor, with the confirmation of this Plan, is granted the authority to execute all documents and take all actions, to the extent necessary, to continue selling and assign the post-confirmation receivables to Evergreen. Notwithstanding the foregoing, the Reorganized Debtor reserve the right to reach a factoring agreement with another party, reserves the right to terminate any agreement with Evergreen subject to the contract in place, or the dispense with factoring receivable is the financial conditions are such that it is no longer necessary.

The Plan Proponent has provided projected financial information as **Exhibit C.**

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of three (3) years. The financial projections indicate that the Debtor, after payments for expenditures necessary for the continuation, preservation and operations Class 2, and to fund the Liquidation Trust, will have projected disposable income of: (i) $3,481.17 for year one; (ii) $220,848.02 for year two; and (iii) $215,578.39 for year three total of $584,921.34 (as defined by § 1119(d) of the Bankruptcy Code) for the payment term as indicated in § 1191(c)(2) in the amounts indicated therein. However, the projected disposable total income will be reduced by $20,000.00 to fund the Liquidation Trust, such that the distribution is $564,921.34. The financial projections are based on historical data, current performance, and the management's experience.

The anticipated Effective Date is December 30, 2023. Payments will commence pursuant to the terms of this Plan.

**You should consult with your accountant, financial advisor and/or attorney if you have question pertaining to the Debtor's projections.**

The Debtor, if it is deemed necessary, will file a declaration from Dr. Michael D. Kotler prior to the Confirmation Hearing.

The final Plan payment is expected to be paid on or before the second quarter of 2027.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

## D.   Remedies upon Plan default

The Debtor must make monthly distributions of the Projected Disposable Income to the Litigation Trustee.  If the Debtor fails to make any payments as described herein, the Litigation Trustee must give written notice of such default to the Debtor and counsel.  The Debtor shall have thirty days from the date of such written notice to bring all payments current or seek appropriate plan modifications pursuant to § 1193 of the Bankruptcy Code within a reasonable amount of time after such default.  If the Debtor does not timely bring the payments current or seek appropriate plan modifications, the Litigation Trustee shall market the business for sale for a six (6) month period.  During the six-month period the Litigation Trustee must approve all expenditures and no payments shall be made to Dr. Kotlar or any insider or affiliate of Dr. Kotlar without the express written consent of the Litigation Trustee.  If at the end of the six (6) month period no buyer has been found, then the Litigation Trustee shall either schedule a liquidation auction or convert the proceeding to a Chapter 7 liquidation.

A failure by the reorganized Debtor to make a payment to TWC or the Texas Comptroller pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the TWC or the Texas Comptroller, the TWC or the Texas Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the reorganized Debtor at:  880 W. Commerce Rd., Suite 101, New Orleans, LA  70123; Attn:  Chief Executive Officer, and upon Debtor's attorney at Heller, Draper, & Horn, LLC, 650 Poydras St., Suite 2500, New Orleans, LA  70130; Attn: Greta M. Brouphy, Esq.; gbrouphy@hellerdraper.com.

Debtor shall be allowed to cure up to two (2) defaults.  Upon a third default, the TWC or the Texas Comptroller, at their option, may declare the default non-curable and proceed to collect the remainder of the debt.

## Article 1:  Summary:

The Plan proposes to pay holders of Allowed Claims the Debtor's Projected Disposable Income which includes sums from future services, future contracts, payments of the Remote Texas Note and factoring its receivables.  Further, the Plan anticipates additional potential distributions to holders of Allowed Claims from the collection, if any, by the Litigation Trustee of funds from the Retained Causes of Action.

This Plan provides for:

|   |   |
|---|---|
| 0 | Classes of tax claims |
| 1 | Class of secured claims |
| 2 | Classes of non-priority unsecured claims; and |
| 1 | Class of equity security holders |

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

Secured creditor holding Allowed Class 1 Claim is estimated to receive distributions, which the proponent of the Plan states is a monthly payment of $393.04 for a total of 36 payments in an amount of $14,149.31 which includes interest of $1,698.65 at 8.50% on the amount owed.

Non-priority unsecured creditors holding Allowed Class 2 Claims are estimated to receive distributions, which the proponent of the Plan has valued at approximately 41% of the estimated Class 2 Claims in the amount of $24,212.62. However, this percentage may be reduced based on the amount of claim holders that elect treatment as Class 2 creditors.

Non-priority unsecured creditors holding Allowed Class 3 Claims are estimated to receive distributions, which the proponent of the Plan has valued at approximately 14.5% - 16.4% of the estimated Class 3 Claims in the range amount of $7,330,079.75 - $6,499,279.00. The ranges are estimated and may fluctuate based on the results of the Litigation Trust.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has <u>not</u> been circulated with this Plan and will not be prepared unless by further order of the bankruptcy court.

***Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.***

### <u>Article 2: Classification of Claims and Interests:</u>

| Class | Claim or Interest | Voting Rights | Payments |
|-------|-------------------|---------------|----------|
| 1 | Secured Claim – Texas Workforce Commission | Impaired. Entitled to vote. | Monthly Payments to commence on the first full quarter following the Effective and continue for 12 quarters. |
| 2 | Convenience Class of claims $2,500 or less | Impaired. Entitled to vote. | Quarterly Payments to commence on the first full quarter following the Effective Date and |

{00381052-1}

| | | | continue for 8 quarters. |
|---|---|---|---|
| 3 | General Unsecured Claims | Impaired.  Entitled to vote. | Quarterly Payments to commence at the end of the first full quarter that is six full months following the Effective Date and continue for 12 quarters. |
| 4 | Interests | Deemed to have accepted the Plan. | Retention of interests. |

## Article 3:  Treatment of Administrative Expense Claims and Priority Tax Claims:

3.1    **Unclassified claims**    Under § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.2    **Administrative expense Claims**

Each holder of an Allowed Administrative Claim under § 503 of the Bankruptcy Code whose claim is less than $10,000.00 will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  Ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade creditors.

 Allowed Professional Fee Claims and those of the Subchapter V Trustee incurred post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the Chapter 11 Case as well as the fees and expenses of the Subchapter V Trustee. These fees and expenses must be noticed to Creditors within **thirty (30) days** of the notice of the Effective Date of the plan and approved by the Bankruptcy Court prior to payment.  The Professional Fees claims shall be paid in full in four quarterly payments over a 12-month period either out

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

of recoveries from claims or payment by the Reorganized Debtor. The Debtor shall deposit 50,000 with the Litigation Trustee on the Effective date of the Plan. Thirty Thousand dollars out of the deposit shall be paid pro-rata to the holders of Allowed Professional Fee claims. Twenty thousand dollars shall be retained by the Litigation Trustee to cover his costs and expenses.

Holders of all other Allowed Administrative claims shall be paid over life of the Plan ( other Administrative Claims ) . The Reorganized Debtor shall pay to the Litigation Trustee for distribution to such creditors the sum of $25,000.00 in the first year ( two payments of $12,500.00 on the sixth and twelve month anniversary of the Effective for distribution pro-rata to such Other Administrative Claims. The Reorganized Debtor shall pay 25,000 to the Litigation Trustee on the 18,24 and 30th month anniversary of the Effective Date for pro-rata distribution to such Other Administrative Claims. On the thirty-six-month anniversary of the Effective Date the Reorganized Debtor shall pay the balance of the amounts owed to the holders of Allowed Other Administrative Claims for distribution to the holders of Allowed Administrative Claims. To the extent that the holder of an Other Allowed Administrative Claim is paid by a third party the payments received shall be applied to reduce the balloon payment owed to such creditor on the thirty sixth anniversary of the Effective date.

| Professional | Estimated Amount |
|---|---|
| Counsel for the Debtor | Fees: $125,000.00<br>Costs: $25,000.00 |
| Accountant for the Debtor<br>Cooper CPA Group | Fees: $3,500.00 (paid) |
| Sub V Trustee | Fees: $20,000.00<br>Costs: $2,500.00 |

Insurance Claims:

| | |
|---|---|
| American Longshore<br> Mutal Association, Ltd. | $4,185.00 |

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

Potential Other Allowed Administrative Claims:

Elman 880-990 Associates LP          $186,605.33 (contested amount)

3.3   **Tax Claims**          Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code and those that have arisen post petition . Unless the holder of such a § 507(a)(8) Tax Claim agrees otherwise, the holder of such tax claims will receive quarterly payments of principal and interest calculated at the rate set forth in 11 USC 511 based upon a ten year amortization with a balloon payment due in the 3rd anniversary of the Effective date.  i  The Reorganized Debtor may prepay, without penalty, at any time any Allowed Tax Claim and to the extent necessary pay a balloon payment at the end of the installment period.  The estimated claim amounts are:

| Taxing Authority | Amount | Notes |
|---|---|---|
| Internal Revenue Service | $200,000( estimated) amounts owed | POC # 7 and post petition |
| FL Dept. of Revenue | $733.91 | POC # 37 |
| LA Dept. of Revenue | $2,011.71 | POC # 40 |
| LA Dept. of Revenue | $5,349.64 | POC # 41 |
| Texas Workforce Commissions | $8,095.16 | POC #42 |
| Bureau of Revenue & Tax Property Tax Division | $1,471.61 | Sch. D |
| Total | $17,962.03 | |

## Article 4:  Treatment of Claim and Interest Under the Plan:

Claims and interest shall be treated as follows under this Plan, claims that are impaired are entitled to vote to accept or reject the Plan.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

| | Class | Impairment | Treatment |
|---|---|---|---|
| 2.1 | Class 1 – Secured Creditor Texas Workforce Commission | Impaired. | Class 1 consists of the Allowed Secured Claim pursuant to Proof of Claim Number 1 as filed by the Texas Workforce Commission in the amount of $12,450.66 subject to an annual interest rate of 8.50% and is secured by a tax lien to all real and personal property of the Debtor. Holder to the Class 1 Allowed Secured Claim will receive distributions as follows: Monthly payment of Monthly Payments of $393.04 to commence on the first full quarter following the Effective and continue for 12 quarters, for a total payment of $14,149.31 which includes $1,698.65 in interest. |
| 2.2 | Class 2 – Convenience Class Claims below $2,500.00 (and those who wish to reduce their claim for $2,500.00) See **Exhibit D** for Claims List Estimated amount is $24,562.37 exclusive of creditors who elect Class 2 treatment | Impaired. Entitled to Vote | Class 2 consists of Allowed General Unsecured Claims allowed under § 502 of the Bankruptcy Code in an amount less than $2,500.00 or those that reduce their claims to $2,500.00 Holders of Class 2-Allowed General Unsecured Claims will receive distributions as follows: Pro rata payments out of a fund of $10,000.00 to be paid quarterly in eight (8) equal payments commencing commence on the first full quarter following the Effective Date or until the claims are paid in full. Holders of claims are to submit the Notice of Consent attached hereto as **Exhibit E** that will be served with this Plan and to be returned on the ballot voting deadline. The holder of a Class 2 Claim is impaired and is entitled to vote to accept or reject the Plan. Estimated pro rata distribution is 41% for Class 2 exclusive of claims that elect |

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

| | | | |
|---|---|---|---|
| | | | treatment under Class 2. The rate of distribution may be altered based on holders of claims that elect Class 2 treatment. |
| 2.3 | Class 3 – General Unsecured Claims over $2,500.00<br><br>See **Exhibit D** for Claims List<br><br>Estimated Amount range is $7,392,213.89 - $6,542,644.00<br><br>Projected Disposable Income: $554,921.34<br><br>Which includes the reduction for the $20,000.00 for the Liquidation Trust and the $10,000.00 reduction for Class 2 | Impaired<br><br>Entitled to Vote | Class 3 consists of Allowed General Unsecured Claims allowed under § 502 of the Bankruptcy Code, and holders of Allowed General Unsecured Claims will receive distributions as follows:<br><br>Payment frequency: Twelve (12) Quarterly payments commencing on the at the end of the first full quarter that is six full months following the Effective Date for a total of three (3) years of payments.<br><br>The holders of Class 3 - Allowed General Unsecured Claims are Impaired, and thus, are entitled to vote to accept or reject the Plan.<br><br>Estimate distribution is 7.5% - 8.5% for Class 3. The rate of distribution may be altered based on the results of any objections filed by the Litigation Trustee that are sustained. |
| 2.4 | Class 4 - Equity Holders Interests | Unimpaired assumed to accept the plan. Not entitled to vote. | Class 4 equity security holder, which consists solely of Dr. Michael Kotler, will not be impaired by this Plan. The Class 4 equity security holder will continue to own 100% of the reorganized Debtor. |

## **Article 5: Allowance and Disallowance of Claims:**

5.1    **Disputed claims**       A disputed claim is a claim that has not been allowed by a final non-appealable order, and as to which either: (i) a proof of claim or Motion for Administrative Expense has been filed or deemed filed, and the Debtor or another party in interest has filed an objection to such claims ; or (ii) no proof of claim has been file or was filed after the bar date, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

Here the deadline for parties in interest to file a proof of

claim under Rule 3003 was January 6, 2023 and the deadline for governmental units to file a proof of claim was May 3, 2023.

5.2 **Distribution**

No distribution will be made when no proof of claim has been filed or timely filed and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. To the extent that a claim is filed after January 6, 2023 for general claims and May 3, 2023 for governmental units, and after the filing of this Plan, the claim is deemed disallowed.

To the extent that a claim is subject to a pending objection, the Litigation Trustee will escrow any distribution which will either be tendered based on the allowed amount after the entry of a non-appealable final order allowing the claim or release the funds for future distributions upon the entry of a non-appealable final order disallowing the claim.

If any distribution is returned as undeliverable or remains unclaimed after thirty days of the distribution date, no further distributions to the applicable holder shall be made unless and until the Litigation Trustee is notified in writing of such holder's then-current address, and after the Litigation Trustee makes a reasonable attempt to contact the claim holder. Such holders of returned and/or unclaimed distributions shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Any funds that are returned to the Litigation Trustee or not timely presented for payment within thirty days of the issue date, shall be used by the Litigation Trustee to make an additional distribution pursuant to the terms of the Plan. Ninety days after the final distribution, the Litigation Trustee shall stop payment on any check remining unpaid and any remaining property of the estate shall be paid into the Court and disposed of under chapter 129 of title 28.

Whenever a distribution hereunder is required to be made on a day other than a Business Day, such distribution shall be made on the first Business Day immediately following, without interest.

Any other provision of this Plan to the contrary notwithstanding, no payments of fractions will be made. Whenever a payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding off

RemoteMD, LLC - Case Number 22-11254

of such fraction to the nearest whole cent (rounding down in the case of .5).

Whenever a distribution is less than $15, the funds will not be distributed shall accumulate and shall be paid whenever the accumulation aggregates $15. Any funds remaining shall be distributed with the final payment.

5.3 **Distribution Agent**    With the approval of the Bankruptcy Court as indicated in an order confirming this Plan, distributions provided for in this Plan will be made by the Litigation Trustee for the Litigation Trust. Even if the Plan is confirmed under § 1191(b) of the Bankruptcy Code, the Litigation Trustee, not the Subchapter V Trustee, shall make all payments to Creditors under the Plan. Upon completion of all Plan payments, the Litigation Trustee will serve a final report and final account of the administration of the estate into the record of the case.

5.4 **Settlement of dispute**    The Reorganized Debtor will have the power and authority to settle and compromise a disputed claim, that is not part of the Retained Causes of Action, with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

5.5 **Retained Causes of Action**    Unless any, Retained Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with § 1123(b) of the Bankruptcy Code, the Debtor shall retain, for the benefit of the Litigation Trust, at the Litigation Trustee's discretion to enforce all rights to commence and pursue any and all Retained Causes of Action, whether arising before or after the Petition Date.

**NO ENTITY MAY RELY ON THE ABSENCE OF A SPECIFIC REFERENCE IN THE PLAN TO ANY CAUSE OF ACTION AGAINST THEM AS ANY INDICATION THAT THE DEBTOR WILL NOT PURSUE ANY AND ALL AVAILABLE CAUSES OF ACTION AGAINST THEM. THE DEBTOR EXPRESSLY RESERVES ALL RIGHTS TO PROSECUTE ANY AND ALL CAUSES OF ACTION AGAINST ANY ENTITY, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN.**

Unless any Retained Causes of Action against an Entity are

RemoteMD, LLC - Case Number 22-11254

expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Debtor expressly reserves all Retained Causes of Action for later adjudication by the Litigation Trust, and therefore, no preclusion doctrine, including, but not limited to, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date.

The Debtor reserves and shall retain Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Case or pursuant to the Plan. In accordance with §§ 1123(b)(3) and 1141(b) of the Bankruptcy Code, any Retained Causes of Action that the Debtor may hold against any Entity shall vest in the Debtor. The Debtor shall retain and the Litigation Trust may exclusively enforce all such Retained Causes of Action. The Litigation Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

The Retained Causes of Action reservation for the benefit of the Litigation Trust includes, whether such action arises from state or federal law, and includes any action unknown now but becomes known while asserting a Retained Cause of Action:

- Avoidance Actions
- Causes of Action
- Objections to filed Proofs of Claim or the schedules
- Claims and Causes of Action arising from the assumption or rejection of Executory Contracts or Unexpired Leases
- Recovery of Remote Equipment, and liquidation of any Remote Equipment deemed unnecessary for continued operations by the Reorganized Debtor
- Claims and Causes of Action against third parties arising from the Bankruptcy Case, the Bankruptcy Code, applicable State law, and applicable federal law
- Claims and Causes of Action against the insurers of

RemoteMD, LLC - Case Number 22-11254

the Debtor that arose before the Petition Date

- Any derivative claims, Claims, or Causes of Action possessed by the Debtor against its current and former officers and directors
- Claims and Causes of Action against Steele Strategies, Inc. and Katheryn Steele including breach of fiduciary duty, mismanagement, and negligence in the operations of the Debtor; tortious interference with contracts and business relationships
- Claims and Causes of Action against Robert Dudley including assisting or encouraging another in the commission of wrongful acts, and breach of fiduciary duty
- Claims and Causes of Action against Richard Veltre including breach of fiduciary duty, malpractice, mismanagement of the finances of the Debtor, Remote Affiliates, and related entities, negligence, concealing financial information/financial software
- Claims and Causes of Action against John Kosmeh including breach of fiduciary duty, mismanagement, violation of non-compete agreement, Lanham Act violations, conversion of property, and tortious interference with contract
- Claims and Causes of Action against AC Skylines including violation of the automatic stay, conversion of property, and tortious interference with contract
- Claims and Causes of Action against Noble Drilling (U.S.) LLC (or related Noble entity) and Remote Medical International (or related entity) including for non-return of Debtor assets
- Claims and Causes of Action against Deidre Wheatley Liss and Porzio, Bromberg & Newman including for breach of fiduciary duty and lawyer/client confidences
- Claims and Causes of Action against United Church Homes including for conversion of Debtor assets
- Claims and Causes of Action against Steven Birch including disclosure of private information to third parties
- Claims and Causes of Action against Shannon Robbins Davidoff including for negligence, mismanagement, breach of fiduciary duty and loss of business and loss of revenue

**The Petitioning Creditors have requested that the**

RemoteMD, LLC - Case Number 22-11254

**following claims be preserved, and in the exercise of its fiduciary duty, the Debtor is preserving the claims in accordance with applicable Fifth Circuit jurisprudence and case law:**

- Claims and causes of action related to or involving the transfer or advancement of funds or property or the incurrence of any obligation by the Debtor to any of the Remote Affiliates
- Claims and causes of action that the Remote Affiliates and the Debtor constitute a single business enterprise or should be subject to substantive consolidation
- Claims and causes of action based on the transfer of funds or property or incurrence of any obligation to any Insider
- Claims and causes of action based on mismanagement and breach of fiduciary duties against Dr. Michael Kotler and any other members, managers, owners, officers, directors, employees and professionals of Remoted, Remote Affiliates and any Insiders
- Claims and causes of action against Dr. Michael Kotler and any Insiders based on usurpation of corporate opportunities
- Directors & Officers claims and causes of action against any Insiders or their insurers, including, but not limited to, breach of any duties owed to the Debtor
- Claims and causes of action against non-debtor entities who participated or facilitated misconduct as to the Debtor
- Claims and causes of action for recovery of payments by the Debtor to Insiders
- Claims and causes of action against professionals that provided services prepetition to the Debtor
- Claims and causes of action against persons or entities who received distributions from the Debtor
- Claims and causes of action against persons or entities who engaged in theft or fraud as to the Debtor or its assets
- Claims and causes of action for misappropriation of Debtor property.
- Objections to and/or subordination of claims
- All Chapter 5 avoidance and other actions and claims and causes of action under 11 U.S.C. § 724.
- Claims and causes of action against any third parties

{00381052-1}

based on breach of contract.

The Petitioning Creditors and the Debtor assert that the foregoing list is a preliminary list. It may be amended or modified to include any additional claims and causes of action that may be discovered through the Rule 2004 examinations of the Debtor, the Petitioning Creditors, family members and/or the Insiders. All rights are reserved.

To the extent necessary the Debtor will file a Plan Supplement 5 days prior to the Confirmation Hearing that will contain any additional claims that the Petitioning Creditors and/or the Debtor assert exists. The claims identified in the Plan Supplement shall constitute additional retained claims.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

6.1     **Assumption/rejection**

(a) To the extent that the Debtor is lessee, and except for executory contracts and unexpired leases that have been assumed or rejected by order of the Court before the Effective Date, or that are the subject of a pending motion to assume or reject, the Debtor will conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date, which includes:

Data Sales Co.
Mody Capital LLC

A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **30 days** after the date of entry of the order confirming this Plan.

Out of an abundance of caution and for full disclosure, the Debtor does not believe that health insurance benefit agreements with insurance providers, that is those providers that reimburse health care providers for medical services rendered for patients are executory contracts. However, the Debtor states that such health insurance benefit agreements will remain effective between the Debtor and the provider post-effective date.

## Article 7: Means for Implementation of the Plan and Continued Management

The business model of the Debtor is such that the management and accounting staff that perform services for the Debtor (collectively, the "***Back of House Employees***") are

{00381052-1}

employed through MedClinic Management, LLC. The Debtor, each pay period funds the wages and all associated costs for the Back of House Employees.

The Debtor anticipates that Dr. Michael Kotler, the owner and chief medical officer, who is an insider of the Debtor, will continue in his position as sole officer and director of the Debtor. The pro forma attached hereto does not include a reduction for the compensation of Dr. Michael Kotler and Dr. Michael D. Kotler even though both will continue in their positions. Thus, any compensation to any Insider will not reduce projected disposable income for Plan payments to Class 3.

## Article 8: General Provisions

| | | |
|---|---|---|
| 8.1 | **Definitions/Rules** | The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. |
| 8.2 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the day on which the stay expires or is otherwise terminated. The projected Effective Date is December 30, 2023. |
| | | Except as provided in this Plan or the order confirming this Plan, all of the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any claim or interest of any creditor provided for by this Plan. |
| 8.3 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan. |
| 8.4 | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors and assigns of such entity. |
| | | Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and |

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

whether or not such creditor or party has accepted or has rejected the Plan.

| | | |
|---|---|---|
| 8.5 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

8.6 **Controlling Effect**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Louisiana govern this Plan, and any agreements, documents, and instruments executed with this Plan, except as otherwise provide in the Plan and/or the agreement.

8.7 **Corporate Governance**

Upon the effective date of this Plan, the Debtor shall be deemed authorized and approved without any or further order or corporate action to take all actions reasonably necessary to effectuate this Plan.

8.8 **Jurisdiction**

Notwithstanding the entry of an order confirming this Plan, the bankruptcy court shall retain and have exclusive jurisdiction after the effective date over any matter arising under the Code.

8.9 **Post-Petition Expenses**

Subchapter V Trustee: Should this Plan confirm pursuant to Section 1191(b), to the extent that the Subchapter V Trustee incurs any post-petition expenses, such amounts should be sent to the Debtor directly, with a copy to the United States Trustee and notice filed on the docket. The statement should be billed hourly, with a description of the services provided. If there is no objection to the fee request within fourteen (14) days of the notice filed on the docket, then the Debtor is directed to compensate the Subchapter V Trustee. If there is an objection, the matter is to be set for hearing for Court determination of the objection.

8.10 **Vesting of Assets**

Except as otherwise explicitly provided for in the Plan, on the Effective Date, all property comprising assets of the Estate (including Retained Causes of Actions, but excluding property that has been abandoned or settled pursuant to an order of the Bankruptcy Court) shall vest in Reorganized Debtor or the Litigation Trust, as applicable, free and clear of all Claims, Liens, charges, encumbrances, rights, and interests of creditors. As of and following the Effective Date, the Reorganized Debtor may operate its businesses and

use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

## Article 9:  Discharge

If the Debtor's Plan is confirmed under § 1191(a) of the Bankruptcy Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt:

(i)      imposed by this Plan; or

(ii)     to the extent provided in § 1141(d)(6) of the Bankruptcy Code.

If the Debtor's Plan is confirmed under § 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt:

(i)      on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192 of the Bankruptcy Code; or

(ii)     excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule
4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10:  Other Provisions

10.1  **Subchapter V Trustee**       If this Plan is confirmed as consensual under § 1191(a) of the Bankruptcy Code, § 1194 of the Bankruptcy Code does not contemplate that the Subchapter V Trustee will make the Plan distributions.  Under a consensual Plan, the Subchapter V Trustee's services terminate upon substantial consummation.

If this Plan is confirmed as non-consensual under § 1191(b) of the Bankruptcy Code, § 1194(b) of the Bankruptcy Code provides that the Subchapter V Trustee shall make payments to creditors under the Plan.  However, as otherwise provided in this Plan, and if approved by this Court in the order confirming this Plan, the Litigation Trustee shall

RemoteMD, LLC - Case Number 22-11254

make the payments to the creditors and comply with the necessary reporting requirements.

| | | |
|---|---|---|
| 10.2 | **Substantial Consummation** | Substantial consummation occurs upon the transfer of all property proposed by the plan to be transferred (§ 1101(2)(A)), assumption by the debtor or successor of the business or of the management of all or substantially all of the property dealt with by the Plan (§ 1101(d)(B)), and commencement of distributions under the Plan (§ 1101(2)(C)). No later than **14 days** after the Plan is substantially consummated, the Debtor shall file notice of such substantial consummation (§ 1183(c)(2)). |
| 10.3 | **Consensual Confirmation** | If all applicable requirements in § 1129(a) of the Bankruptcy Code are met except for the projected disposable income rule of § 1129(a)(15) of the Bankruptcy Code – which applies to individual debtors - § 1191(a) of the Bankruptcy Code requires the Court to confirm this Plan. |
| 10.4 | **Non-consensual Confirmation** | Under § 1191(b) of the Bankruptcy Code, confirmation is permitted even if the requirements of § 1129 (8), (10) and (15) of the Bankruptcy Code are not meet. Thus, cramdown does not require that (1) all impaired classes accept the plan or (2) at least one impaired class accepts the plan. Instead § 1191(b) of the Bankruptcy Code cramdown rules (1) permit cramdown confirmation even if all impaired classes do not accept the plan. Thus, if all other confirmation standards ae met, the Court must confirm the Plan, on the request of the Debtor, if, with respect to each impaired class that has not accepted it, the Plan (1) does not discriminate unfairly; and (2) is fair and equitable. |
| 10.5 | **Disposable Income** | A plan must provide that all projected disposable income of the Debtor to be received in the three-year period or longer period as fixed by the Court after the first payment under the Plan is due. Alternatively, the plan may provide that the value of property to be distributed under the plan within the three-year period or longer period as fixed by the Court that is no less than the projected disposable income of the debtor.<br><br>Under § 1191(d) of the Bankruptcy Code, projected |

disposable income is defined as income that is received by the debtor that is not reasonably necessary to be expended for these specific purposes: (i) the maintenance or support of the debtor or a dependent of the debtor; or (ii) a domestic support obligation that first becomes payable after the date of the filing of the petition, or (iii) payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.  The Plan Proponent has provided projected financial information as **Exhibit B.**

**Agreed to and submitted by:**


*/s/ Michael D. Kotler, MD*
Member/Manager

## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings whether capitalized or not in the Plan:

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Case pursuant to §§ 503(b), 507(a)(2), 507(b) or 1114I2) of the Bankruptcy Code, including, (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate and operating the Debtor's business; and (b) Allowed Professional Fee Claims.

2.      "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided in the Plan: (a) a Claim that either (i) is not Disputed or (ii) has been allowed by Final Order; (b) a Claim that is allowed, compromised, settled or otherwise resolved (i) pursuant to the terms of the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court by a Final Order or (iii) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (c) a Claim relating to a rejected Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been allowed by Final Order; or (d) a Claim or Equity Interest as to which as a Proof of Claim or Proof of Interest, as applicable, has been timely Filed and as to which no objection has been Filed.

3.      "*Avoidance Action*" means any and all actual or potential claims or causes of action to avoid a transfer of property or an obligation incurred by the Debtor arising under §§ 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, or 553(b) of the Bankruptcy Code, or under similar or related state or federal statutes or common law, including fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s) or Cause(s) of Action was commenced prior to the Effective Date.

4.      "*Ballot*" means the ballot form distributed to holders of Impaired Claims and Interests entitled to vote under the Plan.

5.      "*Bankruptcy Code*" means the title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect for hereafter amended, and the rules and regulations promulgated thereunder.

6.      "*Bankruptcy Court*" refers to the United States Bankruptcy Court for the Eastern District of Louisiana or such other court having jurisdiction over the Case, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the Eastern District of Louisiana.

7.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Case and the general, local and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

8.      "*Case*" refers to this case, no. 22-11254, under Subchapter V of Chapter 11 of the Bankruptcy Code in which the Debtor is the debtor-in-possession.

9.      "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges,

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

licenses, Liens, indemnities, guaranties and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law equity or otherwise. Causes of Action also include: (a) all rights of set off, counterclaim or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests or Proofs of Claims; (c) claims pursuant to §§ 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress and usury, and any other defenses set forth in § 558 of the Bankruptcy Code; and any state or foreign law fraudulent transfer or similar claim.

10.    "*Claim*" means any claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor, whether or not assessed or asserted, or any claim, as defined in § 105(5) of the Bankruptcy Code, that can be asserted by the Debtor against any other person, third party or entity, whether or not assessed or asserted.

11.    "*Class*" means category of holders of Claims or Interests under § 1122(a) of the Bankruptcy Code.

12.    "*Confirmation*" means entry of the Confirmation Order by the Bankruptcy Court on the docket of the Case.

13.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of this Case within the meaning of Bankruptcy Rules 5003 and 9021.

14.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and § 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Bankruptcy Court will consider confirmation of the Plan.

15.    "*Creditor*" has the meaning assigned to such term in § 101(10) of the Bankruptcy Code.

16.    "*Debtor*" means RemoteMD, LLC, the debtor-in-possession in this Case.

17.    "*Disputed Claim*" means a Claim, or any portion thereof: (a) which is listed in the Schedules as disputed, contingent, or unliquidated; or (b) as to which (i) a Proof of Claim has been Filed, (ii) an objection, or request for estimation, has been timely Filed (and not withdrawn) by any party-in-interest, and (iii) no Final Order has been entered thereon.

18.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in the Plan have been satisfied or waived in accordance with the Plan.

19.    "*Estate*" means the estate of the Debtor in the Case created pursuant to § 541 of the Bankruptcy Code.

20.    "*Evergreen*" means Evergreen Working Capital, LLC.

{00381052-1}

21.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

22.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, is not subject to any pending stay and as to which the time to appeal, move for re-argument, reconsideration, or rehearing, or seek certiorari has expired and no appeal, motion for re-argument, reconsideration, or rehearing or petition for certiorari has been timely taken or filed, or as to which any appeal that has been taken, motion for re-argument, reconsideration, or rehearing that has been granted or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, re-argument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

23.    "*General Unsecured Claim*" means any Claim that is not Secured and is not an Administrative Claim (including, for the avoidance of doubt, a Professional Fee Claim), Convenience Claim, or a Priority Tax Claim.

24.    "*Governmental Unit*" has the meaning set forth in § 101(27) of the Bankruptcy Code.

25.    "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

26.    "*Insider(s)*" has the meaning set forth in § 101(31) of the Bankruptcy Code, and includes, but is not limited to, Dr. Michael Kotler, Dr. William Kotler, Agnes Kotler, Kaitlin Kotler, and Courtney Kotler. The Petitioning Creditors assert that Lisa Jones, Shane Birchall, Paul LeBlanc and Cooper CPA are insiders of the Debtor.  Other parties that could be included as an Insider include Steele Strategies Inc, Kathryn Steele, Robert Dudley, Richard Veltre, John Kosmeh, Deidre Wheatley Liss, Porzio, Bromberg & Newman, Andy Kimmel, Shannon Robbins-Davidoff, and Steven Birch.

27.    "*Interest*" means any common stock, limited liability company interest, equity security (as defined in § 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

28.    "*Lien*" has the meaning set forth in § 101(37) of the Bankruptcy Code.

29.    "*Litigation Trust Agreement*" means the agreement attached to the Plan, subject to approval by the Bankruptcy Court and the United States Trustee at the Confirmation Hearing.

RemoteMD, LLC - Case Number 22-11254

30.     "*Litigation Trust Assets*" means all Disposable Income, payments by Remote Texas pursuant to the Remote Texas Note, and all Retained Causes of Action.

31.     "*Litigation Trustee*" means the individual or entity identified by the Petitioning Creditors, or such other individual or entity approved by the Bankruptcy Court and the United States Trustee at the Confirmation Hearing, shall be appointed as the Litigation Trustee under this Plan

32.     "*Order for Relief*" means November 4, 2022, when the Bankruptcy Court granted the Debtor relief under Chapter 11 of the Bankruptcy Code.

33.     "*Person*" has the meaning set forth in § 101(41) of the Bankruptcy Code.

34.     "*Petitioning Creditors*" means Robert Dudley, Premier Laboratory Services, Inc., Steel Strategies, Inc., Securitas Security Services USA, Inc. and KJG Strategies.

35.     "*Petition Date*" means October 8, 2022, the date on which the Petitioning Creditors commenced the Case by Filing an involuntary petition for relief under Chapter 11 of the Bankruptcy Code.

36.     "*Person*" has the meaning set forth in § 101(41) of the Bankruptcy Code.

37.     "*Plan*" means this Subchapter V plan, including all exhibits, supplements, appendices, and schedules hereto, either in its present form or as the sale may be altered, amending, or modified from time-to-time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

38.     "*Priority Claim*" means any Claim, or portion thereof, entitled to priority under § 507(a) of the Bankruptcy Code.

39.     "*Priority Tax Claim*" means any Priority Claim (or portion of a Claim) held by a Governmental Unit that is entitled to priority under § 507(a)(8) of the Bankruptcy Code.

40.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

41.     "*Professional*" means an Entity retained in the Case pursuant to a Final Order in accordance with §§ 327, 363, and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to §§ 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

42.     "*Professional Fee Claims*" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) incurred by a Professional in the Case on or after the Petition Date and through and including the Confirmation Date that the Bankruptcy Court has not denied by Final Order. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

43.     "*Projected Disposable Income*" has the meaning set forth in § 1191(d) of the Bankruptcy Code.

44.     "*Proof of Claim*" means a proof of Claim filed against the Debtor in the Case.

45.     "*Remote Affiliates*" has the meaning set forth in § 101(2) of the Bankruptcy Code and includes, but not limited to, Pelican State Industrial Medicine, Inc., MCM MedClinic Management, LLC, Elite Healthcare, LLC, Remote ER, LLC, RemoteMD Texas, PLLC, REmoteMD Services, Guyana, and RemoteMD Suriname.

46.     "*Remote Equipment*" means any equipment owned by the Debtor, including but not limited to the assets as listed on Schedule B, whether such equipment is in the possession of the Debtor or in the possession of a third party, including Noble Drilling (U.S.) LLC, RMI and/or Edison Chouest Offshore.

47.     "*Remote Receivables*" means any account receivable owed to the Debtor on the Effective Date that is outstanding for 90 days or greater which includes, but not limited to, the following with the amounts owed estimated: (i) Advanced Workplace Strategies, Inc. - $12,136.71; (ii) Cameron, a SLB Company - $68,888.97; (iii) Maersk Valiant - $25,218.81; (iv) Noble Drilling (U.S.) LLC - $173,548.93; (v) Schlumberger Technology Corporation - $44,200.00; (vi) Schlumberger – Houma - $22,704.73; (vii) Schlumberger Guyana - $146,172.83; (viii) Seacor Marine c/o Ramps Logistics - $17,125.00; (xi) United Church Homes - $180,000.00.  The Remote Receivables are to be retained by the Debtor, for collection by the Debtor to be included in the funds available for the Reorganized Debtor.

48.     "*Remote Texas*" means Remote MD Texas, PLLC formed as a domestic limited liability company in the State of Texas.

49.     "*Remote Texas Note*" means the note payable from Remote Texas to the Debtor subject to 8% interest with:  (i)  the Debtor receiving $30,000.00 payable in six (6) installments of $5,000.00 per month to commence at the end of the first full month following the Effective Date; (ii) the Debtor receiving $240,000.00 payable in twenty-four (24) installments of $10,000.00 per month starting on the seventh full month following the Effective Date; (iii) a balloon payment of the remaining amount due plus accrued interest the month following the last $10,000.00 installment.

50.     "*Reorganized Debtor*" means the Debtor as reorganized on and after the Effective Date pursuant to the provisions of the Plan.

51.     "*Retained Causes of Action*" has the meaning set forth in

52.     "*Secured*" means, when referring to a Claim: (a) secured by a valid, perfected, and enforceable lien on collateral to the extent of the value of such collateral, as determined in accordance with § 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to § 553 of the Bankruptcy Code.

53.     "*Subchapter V*" refers to §§ 1181 to 1195 of the Bankruptcy Code, as now in effect hereafter amended, and the rules and regulations promulgated thereunder.

{00381052-1}

RemoteMD, LLC - Case Number 22-11254

54.    "*Substantial Consummation*" shall have the meaning set forth in § 1101(2) of the Bankruptcy Code.

55.    "*Trustee*" or "*Subchapter V Trustee*" means and refers to Craig Geno, the duly appointed, acting and authorized Subchapter V trustee for the Estate.

56.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of § 1124 of the Bankruptcy Code.

57.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

RemoteMD, LLC - Case Number 22-11254

year period or longer period as fixed by the Court that is no less than the projected disposable income of the debtor.

Under § 1191(d) of the Bankruptcy Code, projected disposable income is defined as income that is received by the debtor that is not reasonably necessary to be expended for these specific purposes: (i) the maintenance or support of the debtor or a dependent of the debtor; or (ii) a domestic support obligation that first becomes payable after the date of the filing of the petition, or (iii) payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor. The Plan Proponent has provided projected financial information as **Exhibit B.**

**Agreed to and submitted by:**

/s/ Michael D. Kotler, MD
Member/Manager

# Exhibit A

## LITIGATION TRUST AGREEMENT

This Litigation Trust Agreement ("Agreement"), dated as of _____ 2023, is made by

RemoteMD, LLC ("Debtor") and Dwayne Murray, as trustee[1] ("Litigation Trustee"), in accordance with and as

part of the Confirmation Order (defined below).

### WITNESSETH:

**WHEREAS,** the United States Bankruptcy Court entered an Order Confirming the RemoteMD, LLC

Plan of Reorganization (the "Plan") [Dkt. # _____] under Subchapter V of Chapter 11 of the Bankruptcy Code. To

the extent the Confirmation Order and Agreement conflict, if at all, the Confirmation Order shall control;

**WHEREAS,** the Plan provides for the creation of an irrevocable Litigation Trust for the benefit of the

holders of Allowed Claims (as defined in the Plan) (collectively, the "Beneficiaries" or "Beneficiaries");

**WHEREAS,** this Agreement is executed in accordance with Treas. Reg. § 301.7701-4(a) and (d) to

establish a trust to be known as the "Litigation Trust", the sole purpose of which is to facilitate the

implementation of the Plan and not to engage in the conduct of an active trade or business;

**WHEREAS,** the corpus of the Litigation Trust and all income earned thereon remaining after the

satisfaction of all trust expenses and liabilities shall be used solely for the purpose of paying Debtor's Allowed

Claims in accordance with the Plan and expenses and professional fees incurred by the Litigation Trust or

Litigation Trustee; and

**WHEREAS,** the parties to this Agreement desire that the Litigation Trust created pursuant to this

Agreement qualify as a creditor trust in accordance with Treas. Regs. § 301.7701-4(d) and that on qualification,

the Litigation Trust shall be taxed as a grantor trust under and in accordance with the relevant provisions of the

Internal Revenue Code of 1986, as amended (the "Code") and the Treasury Regulations thereunder;

**NOW, THEREFORE,** in consideration of the premises and other valuable consideration, the receipt and

sufficiency of which are hereby acknowledged, and subject to the terms and conditions of this Agreement and the

---

[1] On the Effective Date, the individual or entity identified by the Petitioning Creditors, or such other individual or entity approved by the Bankruptcy Court and the United States Trustee at the Confirmation Hearing, shall be appointed as the Litigation Trustee under this Plan.

{00380290-5}

Plan, the Debtor and Litigation Trustee have executed this Agreement for the sole benefit of the Beneficiaries (as hereinafter defined) and no other party as follows:

## ARTICLE 1

## GRANT, ACCEPTANCE, NAME AND DEFINITIONS

1.1.  **Grant**.

i)　　The Debtor hereby grants, assigns, transfers, conveys, delivers, delegates and sets over unto the Litigation Trustee the Trust Estate, in trust, for the benefit of the Beneficiaries, and subject to the terms and provisions sets out in this Agreement and in the Plan, which are incorporated herein by reference.  Additionally, the Debtor hereby irrevocably grants, assigns, transfers, conveys, delivers, delegates and sets over unto the Litigation Trustee all of the authority, rights, powers and duties previously vested in the Debtor under Sections 541, 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code.  To the extent that any law, regulation or contractual provision prohibits the transfer of ownership of any of the Trust Estate from the Debtor to the Litigation Trust or the Litigation Trustee, or if for any reason the Debtor shall retain or receive at any point any property that is included in or intended under the Plan and this Agreement to be included in the definition of Trust Estate, then the Debtor shall and is hereby deemed to hold such property (and any proceeds or products thereof) in trust for the Beneficiaries, and the Debtor shall promptly notify the Litigation Trustee of the existence of such property, and shall promptly take such actions with respect to such property as the Litigation Trustee shall direct in writing.  It is intended that the Trust Estate transferred pursuant to this paragraph shall provide the Beneficiaries with distributions on account of their Allowed Claims pursuant to and in accordance with the Plan.

ii)　　For tax purposes, the transfer of the Trust Estate will be treated as a deemed transfer to the Beneficiaries followed by a deemed transfer by the Beneficiaries to the Litigation Trust, in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.  The taxation of the initial transfer from the Beneficiaries to the Litigation Trust will be guided by the provisions of Sections 61(a)(12), 483, 1001, 1012 and 1274 of the Code.

iii)　　The Litigation Trustee hereby accepts the Trust Estate and the Litigation Trust created hereunder, subject to the terms and provisions set out below and in the Plan on behalf of and for the benefit of the Beneficiaries.

1.2. __Name__. The trust created pursuant to the terms hereof shall be known as the "Litigation Trust."

1.3. __Certain Terms Defined__. For all purposes of this Agreement, the capitalized terms used herein shall have the following meanings:

(a)    "Agreement" shall mean this Agreement as originally executed or as it may from time to time be amended pursuant to the terms hereof;

(b)    "Bankruptcy Case" means the case of the Debtor.

(c)    "Beneficiaries" shall mean the holders of Allowed Claims as defined and provided for in the Plan;

(d)    "Debtor" shall mean RemoteMD, LLC.

(e)    "Litigation Trust" or "Litigation Trust" shall mean the trust established pursuant to the terms and conditions of the Agreement.

(f)    "Litigation Trustee" shall mean __Dwayne Murray o__r any successor Litigation Trustee.  The appointment of the Litigation Trustee is subject to Bankruptcy Court approval.

(g)    "Litigation Trust Expense Reserve" means the reserve established for the payment of fees and expenses incurred by the Litigation Trustee (together with professionals retained by the Litigation Trustee) in accordance with its obligations under the Plan and this Agreement.  Any cash remaining in the account at the time of the final distribution shall be distributed to the Beneficiaries in accordance with This Agreement and the Plan.

(h)    "Plan" shall mean the plan of reorganization confirmed by the Debtor.

(i)    "Retained Causes of Action" shall by defined by Article 5 of the Plan.

(j)    "Trust Estate" shall consist of all property that is to vest in the Litigation Trust or that is to be assigned to the Litigation Trust in accordance with the Plan.  The Trust Estate shall also consist of the products and proceeds of all of the foregoing whether through sale, disposition, judgment or decree in connection therewith.  The Trust Estate shall also include interest or other earnings on any of the foregoing.  The Trust Estate shall not include any assets paid out, distributed or disposed of by the

Litigation Trustee in accordance with this Agreement or the Plan after the date of any such payment, distribution or disposition.

1.4.   **Other Definitions**.  All capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## ARTICLE 2

## NATURE OF TRANSFER

2.1.   **Purpose of Litigation Trust**.  The Litigation Trust is created solely to implement the terms of the Plan. The purposes of the Litigation Trust are to manage, liquidate, conserve and protect the value of the Trust Estate for the benefit of the Beneficiaries.  The Litigation Trust shall be established for the purposes of: (i) making all Plan distributions to holders of Allowed unclassified claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed classified claims; (ii) overseeing all objections to Claims; (iii) collection of the Remote Texas Note to the Reorganized Debtor; and (iv) receiving and distributing the proceeds derived from the Reserved Causes of Action according to the terms of the Plan, and taking such other and further action as the Litigation Trustee deems necessary, in its sole discretion, to enforce the rights and obligations associated therewith.  Under no circumstances shall the Litigation Trustee, in its capacity as Litigation Trustee, have any power to engage in any trade or business or any other activity except as specifically provided herein or otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Trust Estate.  The Litigation Trustee will make continuing efforts to dispose of the Trust Estate, make timely distributions, and not unduly prolong the duration of the Litigation Trust.

2.2.   **Grantor Trust**.  The Litigation Trust created by this Agreement is intended: (i) as a trust governed and construed in all respects as a creditor trust pursuant to Section 301.7701-4(d) of the United States Treasury Regulations and as a grantor trust in favor of the Beneficiaries pursuant to Section 1.671-4(a) thereof, and (ii) to comply with the requirements of a creditor trust which is a grantor trust, as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

2.3.   **Liabilities of the Debtor**.  To the extent of available funds, the Litigation Trustee, solely for and on behalf of the Litigation Trust, shall utilize all or such part of the Trust Estate as may be necessary to pay any and

all Allowed Claims, in accordance with the Plan, including any expenses and professional fees incurred by the Litigation Trust or Litigation Trustee.

2.4.     **Representative of the Debtor**.  The Litigation Trustee shall be deemed to be a "representative" of the Debtor's estate within the meaning of 11 U.S.C. § 1123(b)(3)(B).

**ARTICLE 3**

**BENEFICIARIES**

3.1.     **Rights of Beneficiaries**.  Each Beneficiary shall receive an interest in the Litigation Trust in exchange for such Beneficiaries allowed claim in the RemoteMD, LLC Chapter 11 and shall be entitled to participate in the rights and benefits due to a Beneficiary under the provisions of the Confirmed Plan.  The transfer of the Claim possessed by a Beneficiary to the Litigation Trust in exchange for a beneficial interest in the Trust shall occur on the Effective Date of the Plan subject, however, to any objection or offsets the Debtor may have to such Claim and subject to any litigation concerning such Claim including the litigation concerning the extent and priority of distribution such Claim will receive under the Plan. The interest of each Beneficiary in the Litigation Trust is declared to be and shall be in all respects personal property of such Beneficiary, and upon the death of an individual Beneficiary, his or her interest shall pass to his or her legal representative and such death shall not terminate the Litigation Trust or otherwise affect the validity of this Agreement.  Each Beneficiary shall have the rights with respect to the Trust Estate as are provided by this Agreement and the Plan.  No widower, widow, heir, or devisee of any individual who may be a Beneficiary shall have any right of homestead, inheritance, or of partition, or any other right, statutory or otherwise, in any property whatsoever forming a part of the Trust Estate, but the whole title to all the Trust Estate shall be vested in the Litigation Trustee.  The sole interest of each Beneficiary shall be the rights and benefits given to such person under the Plan and this Agreement.

3.2.     **Transfer of Interests of Beneficiaries**.  No interest of a Beneficiary may be transferred either by the Beneficiary in person or by a duly authorized agent or attorney, or by the properly appointed legal representative of the Beneficiary except as otherwise permitted by the Agreement and Plan.  In the event of the transfer of the interest of any Beneficiary, as permitted by this Agreement and Plan, the transferee shall take and hold such interest subject to the terms and provisions of this Agreement and shall give written notice of such transfer to the

Litigation Trustee. The Litigation Trust shall not be required to issue certificates or other instruments representing or evidencing the interests of a Beneficiary in the Litigation Trust, but nothing contained herein shall prohibit the Litigation Trustee from doing so. The Litigation Trustee shall not be liable to any transferee of an interest of a Beneficiary for any distributions provided for hereunder unless such transfer is valid under the terms of the Plan and the order confirming same, and until the Litigation Trustee receives written notice of such transfer together with appropriate assignment and transfer documents signed by the Beneficiary. The Litigation Trustee may require a Beneficiary or his or her duly appointed representative to provide affidavits or other certifications satisfactory to the Litigation Trustee that attest to the validity of the transfer, including the authority of the transferor Beneficiary or representative to sign the transfer documents.

3.3. **Beneficiary Information.** The Litigation Trustee may rely upon information relating to each Beneficiary as it appears in records of the Bankruptcy Court. In the absence of information in Bankruptcy Court records, the Litigation Trustee may rely upon information as it appears in records of the Debtor on the date of this Agreement. A Beneficiary may provide address or other information to the Litigation Trust by notifying it in writing. Upon receipt by the Litigation Trustee of appropriate assignment or transfer documents signed by a Beneficiary or his or her duly appointed representative, the Litigation Trustee shall record such assignment or transfer on the books and records of the Litigation Trust and shall treat such transferee as a Beneficiary for all purposes hereunder in accordance with such assignment or transfer from and after the date the Litigation Trust receives such notice. Thereafter, the Litigation Trust shall have no further liability or obligation to the transferor Beneficiary unless provided otherwise in the assignment or transfer documents.

3.4. **Litigation or Claims Against Beneficiaries.** Notwithstanding anything to the contrary herein, no Beneficiary shall have any right to, or interest in, any claims, causes of action or proceeds of same, that may be pending against any such Beneficiary by the Debtor or that may be brought or filed against any such Beneficiary by the Litigation Trustee.

## ARTICLE 4

## DURATION OF TRUST ESTATE

4.1.    **Duration**.  The Litigation Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that, on or prior to the date three (3) months prior to such termination, a party in interest, including the Litigation Trustee, may file a motion to extend the term of the Litigation Trust, upon notice to all interested parties and showing that such an extension is necessary in the discretion of the Litigation Trustee. Notwithstanding the foregoing, multiple extensions may be obtained so long as Bankruptcy Court approval is requested at least three (3) months prior to the expiration of each extended term. Furthermore, the Litigation Trustee shall further cause the Litigation Trust to be terminated within three (3) months of the occurrence of the later of (i) the entry of a Final Order by the Bankruptcy Court closing the Bankruptcy Case pursuant to § 350(a) of the Bankruptcy Code, or (ii) the final distribution of all net liquidated recovery derived from the Retained Causes of Action.

## ARTICLE 5

## ADMINISTRATION OF TRUST ESTATE

5.1.    **Sale of Trust Estate**.  The Litigation Trustee may, at such times and in such manner as he may deem appropriate, transfer, assign, or otherwise dispose of all or any part of the Trust Estate, subject to Court approval if required under the terms of the Plan.

5.2.    **Payment of Interest to Beneficiaries**.  The Litigation Trustee shall hold the Trust Estate without provision for, or the payment of interest to, any Beneficiary, except to the extent prescribed under the Plan.

5.3.    **Payment of Claims, Expenses and Liabilities and the Reserve Amounts**.  The Litigation Trustee shall pay from the Trust Estate all claims (including administrative and priority claims), expenses, charges, liabilities, and obligations of the Trust Estate, and all liabilities and obligations that the Litigation Trustee, on behalf of the Litigation Trust, has specifically assumed and agreed to pay pursuant to this Agreement, together with such transferee liabilities which the Litigation Trust may be obligated to pay as transferee of the Trust Estate, including without limitation, interest, taxes, assessments, and public charges of every kind and nature, and the costs, charges, and expenses connected with or arising out of the execution or administration of this Litigation Trust, and such other payments and disbursements as are provided in this Agreement or that may be determined to be a proper charge against the Trust Estate by the Litigation Trustee or by any court of competent jurisdiction.  In

{00380290-5}

addition, the Litigation Trustee may make provision out of the Trust Estate for the Disputed Claims Reserve and Litigation Trust Expense Reserve to pay present or future claims, expenses and liabilities of the Litigation Trust, whether fixed or contingent, known or unknown. The Litigation Trust is not permitted to receive or retain cash or cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities (including disputed claims) or to maintain the value of the assets during liquidation.

The Litigation Trust shall notwithstanding anything to the contrary herein pay our allowed Administrative Expenses (including allowed professional fees and those fees of the Subchapter V Trustee) in accordance with the payments identified in the Plan

5.4.     **Federal Income Tax Information**.  As soon as practicable after the close of each calendar year, but in no event later than March 15th following the close of the calendar year, the Litigation Trustee shall, if required by law, mail to each Beneficiary of record during such year, a statement showing information sufficient for each Beneficiary to determine its share of income, deductions and credits for federal income tax purposes in accordance with Sections 1.671-4(a) and 1.671-4(b)(3) of the United States Treasury Regulations.

5.5.     **Required Filing**.  The Litigation Trustee shall prepare and file with appropriate state and federal agencies and authorities, all such documents, forms, reports and returns (including, but not limited to, state and federal income tax returns) as the Litigation Trustee shall, with the advice and assistance of professionals engaged by the Litigation Trustee, including, but not limited to, legal counsel and accountants, deem necessary, required or appropriate in connection with the creation, existence, operation or termination of the Litigation Trust.  The Litigation Trustee shall file returns for the Litigation Trust as a grantor trust pursuant to Sections 1.671-4(a) and 1.671-4(b)(3)(ii) of the United States Treasury Regulations.

5.6.     **Tax Attributes and Tax Characteristics of the Trust**.  The Beneficiaries of the Litigation Trust shall be treated as its grantors and deemed owners. The Litigation Trustee shall file tax returns for the Litigation Trust as a grantor trust pursuant to § 1.671-4(a) or (b) of the United States Treasury Regulations, as appropriate. Accordingly, all earnings of the Litigation Trust, including earnings retained in reserve accounts, if any, will be allocated to the Beneficiaries on an annual basis and the Trustee shall file such returns and reporting as required by applicable law.  The Trustee shall have no responsibility or obligation to provide tax advice to the

{00380290-5}

Beneficiaries and the Beneficiaries shall report any distribution they receive or any funds in any reserve account allocable to such Beneficiary in accordance with advice provided to such Beneficiary. The value of the assets transferred into the Litigation Trust shall be the fair market value of such assets at the time of such transfer. The assets transferred to the Litigation Trust shall be valued consistently by all parties including, but not limited to, the Debtor and all Beneficiaries and these valuations will be used for federal income tax purposes.

5.7.    **Revenue Ruling Requests**. The Litigation Trustee on behalf of Beneficiaries shall file a ruling request (in accordance with the procedures set forth in Rev. Proc. 94-45, 1994-2 C.B. 684) with the Internal Revenue Service to have the Litigation Trust classified as a creditor trust as described in Treas. Reg. § 301.7701-4(d). If the ruling request is approved, the Litigation Trust will qualify for tax treatment as a grantor trust in accordance with the relevant provisions of Subpart E of Part I of Subchapter J of the Code.

## ARTICLE 6

## DISTRIBUTIONS TO BENEFICIARIES AND RELATED MATTERS

6.1.    **Allowed Claims.** The Litigation Trustee shall make the distributions to the holders of Allowed Claims (including administrative and priority claims) pursuant to the Plan. The maximum aggregate distributions to the holders of such Allowed Claims shall be payment in full of the Allowed Claims. The timing of any distributions, except as set forth in the Plan, shall be within the discretion of the Litigation Trustee except if a shorter period is set forth in the Plan.

6.2.    **Unclaimed Distribution**. The Litigation Trustee shall administer unclaimed property in accordance with the Plan.

6.3.    **Tax Withholding**. The Litigation Trust may withhold from any distribution any amount that it determines must be withheld under applicable law for taxes payable by the person or entity entitled to the distribution.

6.4.    ***De Minimis* Amount**. In the event that a distribution on account of an Allowed Claim is less than fifteen dollars ($15.00), the Litigation Trust need not make such de minimis distribution, but may accumulate such distributions and make a distribution to the claimant on a distribution date when the amount to be distributed

equals or exceeds $15.00. If the amount of the final distribution is less than $15.00, then the Litigation Trustee shall make the distribution at that time.

## ARTICLE 7

## POWERS OF AND LIMITATIONS ON THE LITIGATION TRUSTEE

7.1.    **Limitations on Litigation Trustee.** The Litigation Trustee shall not do any act or undertake any activity unless he determines, in good faith, that such act or activity is desirable, necessary or appropriate for the management, liquidation, conservation and protection of the Trust Estate.    The investment powers of the Litigation Trustee are limited to the powers to invest temporarily cash portions of the Trust Estate in demand and time deposits in banks or savings institutions, or temporary investments such as short-term certificates of deposit or Treasury bills or money market funds. The Litigation Trustee shall be restricted to the holding, liquidation and collection of the Trust Estate and the payment and distribution thereof for the purposes set forth in this Agreement and in the Plan, and to the conservation and protection of the Trust Estate and administration thereof in accordance with the provisions of this Agreement and the Plan.

(a)    **Specific Powers of Litigation Trustee.** Subject to the limitations set forth herein, the Litigation Trustee shall have the following specific powers in addition to any powers granted by applicable law or conferred upon him by any other provision of this Agreement and the Plan, except as may be considered inconsistent with the Plan, this Agreement, or a trust created in accordance with Treas. Reg. § 301.7701-4(d).    The Litigation Trustee is authorized to settle the Retained Causes of Action, and release and discharge, to the fullest extent permitted by applicable Law, from the Retained Causes of Action to which the Litigation Trustee is a party in accordance with this Plan without the need for approval by the Bankruptcy Court. Any settlement effectuated prior to the Confirmation Date, upon approval thereof by the Bankruptcy Court or other court of competent jurisdiction, shall be deemed incorporated into this Amended Plan by reference, and entry of the Confirmation Order, including provisions of such settlement, shall be deemed a settlement pursuant to § 1123(b)(3)(A) of the Bankruptcy Code and

Bankruptcy Rule 9019. With respect to any settlement effectuated subsequent to the Confirmation Date, the Litigation Trustee shall have the authority to settle or otherwise dispose of any Retained Cause of Action without the need for obtaining approval of the Bankruptcy Court, however, the Litigation Trustee, in their discretion, can seek approval of the Bankruptcy Court. Further, the Litigation Trustee will be required to file a notice of the settlement into the record of this case and serve upon all parties entitled to such notice, which includes the sums received by the Litigation Trustee and the costs associated with the settlement. These powers shall not be considered in any way to limit or control the power of the Litigation Trustee to act as specifically authorized by any other provisions of this Agreement or the Plan and to act in such manner as the Litigation Trustee may deem necessary or appropriate to discharge all obligations of or assumed by the Litigation Trust or provided herein and to conserve and protect the Trust Estate or to confer on the Beneficiaries the benefits intended to be conferred upon them by this Agreement and the Plan. Further, the Liquidation Trust can perform any acts or things necessary or appropriate for the management, conservation and protection of the Trust Estate, including acts or things necessary or appropriate to maintain assets held by the Litigation Trustee pending sale or other disposition thereof or distribution thereof to the Beneficiaries, and in connection therewith, to employ such agents, and to confer upon them such authority as the Litigation Trustee may deem expedient, and to pay fees and expenses therefor.

## ARTICLE 8

## CONCERNING THE LITIGATION TRUSTEE

8.1.     **Generally**.  In performing his duties, the Litigation Trustee may rely on information believed by him to be reasonably accurate and reliable.

8.2.     **Reliance by Litigation Trustee**.  Except as otherwise provided in paragraph 8.1:

(a)      the Litigation Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him to be genuine and to have been signed or presented by the proper party or parties; and

(b)     the Litigation Trustee may consult with and retain legal counsel and other professionals, including accountants, to be selected by him, and the Litigation Trustee shall not be liable for any actions taken or suffered by him in accordance with the advice of such counsel. The Litigation Trustee may also consult with accountants and former consultants or advisors of the Debtor, the Official Unsecured Creditors' Committee, present and former officers, directors and consultants of the Debtor's affiliates or subsidiaries. The fees of such legal counsel and other professionals for the Litigation Trustee shall be provided for and paid from the Litigation Trust Expense Reserve in accordance with the provisions of the Plan.

8.3.    **Indemnification**. The Litigation Trustee and Litigation Trust's attorneys and other agents shall be and hereby are held harmless by and indemnified by the Litigation Trust and the Trust Estate for any and all claims, losses, expenses (including attorneys' fees and expenses), liabilities, actions, cause of action, and all fees and expenses related thereto arising out of or in any way related to any claim arising from the administration of the Litigation Trust. The Litigation Trustee may contract in such a manner that the Litigation Trustee is exempt from personal liability and that liability is limited to the Trust Estate. The foregoing notwithstanding, the Litigation Trustee shall be personally liable to the Litigation Trust, Beneficiaries or third parties for bad faith, breach of fiduciary duty, dishonesty, gross negligence, fraud, or other similar acts. This indemnification obligation also includes costs and expenses, including attorneys' fees and expenses, incurred to enforce this indemnity provision.

8.4.    **Bond**. The Litigation Trustee shall post a bond, in a form acceptable to the United States Bankruptcy Court for the Eastern District of Louisiana in an amount to be determined on a quarterly basis, but in any event no less than 120% of the cash balance held by the Litigation Trustee. The cost of such bond shall be a cost of administration of the Litigation Trust.

## ARTICLE 9

## PERSONS DEALING WITH THE LITIGATION TRUSTEE

9.1     **Litigation Trustee Not Personally Liable**. Persons dealing with the Litigation Trustee shall look only to the Trust Estate to satisfy any liability incurred by the Litigation Trustee to such person in carrying out the terms

of this Litigation Trust, and the Litigation Trustee shall have no personal or individual obligation to satisfy any such liability.

9.2    **Authority of Litigation Trustee**. Any person dealing with the Litigation Trustee shall be fully protected in relying upon the Litigation Trustee's certificate signed by the Litigation Trustee that such Litigation Trustee has authority to take any action under this Agreement.

## ARTICLE 10

## COMPENSATION

10.1    **Compensation of Litigation Trustee**. As compensation for the services as Litigation Trustee hereunder, includes the distribution of $20,000.00 from the Debtor's projected disposable income, with a minimum of compensation of $40,000.00 and 3% of gross recoveries by the Litigation Trustee in the performance of his powers and duties. subject to approval of the Bankruptcy Court and the United States Trustee at the Confirmation Hearing

## ARTICLE 11

## LITIGATION TRUSTEE AND SUCCESSOR LITIGATION TRUSTEE

11.1    **Resignation and Removal**. The Litigation Trustee may: (i) resign and be discharged from the Litigation Trust hereby created only by filing an appropriate motion in and obtaining an order of the Bankruptcy Court setting forth the reason therefor; or (ii) be removed subject to Bankruptcy Court approval upon application and order of the Bankruptcy Court and only for (a) fraud or willful misconduct in connection with the affairs of the Trust, (b) for such physical or mental disability as substantially prevents the Litigation Trustee from performing the duties of Litigation Trustee under this Trust Agreement or the Plan, or (c) for cause, which shall include a breach of fiduciary duty or an unresolved conflict of interest; or (iii) be removed by a Beneficiary or Beneficiaries for similar cause by filing an appropriate motion with and obtaining an order from the Bankruptcy Court directing such removal; provided, however, that the Litigation Trustee can only be removed by the Beneficiaries for good cause shown. In the event of a resignation or removal, the Litigation Trustee shall continue to perform his duties

{00380290-5}

hereunder until such a time as a successor is appointed unless he is incapable of doing so or the Bankruptcy Court orders otherwise.

11.2 **Appointment of Successor**. Should the Litigation Trustee resign or be removed, or die or become incapable of action, a vacancy shall be deemed to exist. In the event of such a vacancy, subject to Bankruptcy Court approval, the Debtor and the Beneficiaries shall have the right to select a successor by consent. The successor Litigation Trustee must be approved by the Bankruptcy Court upon proper motion. In the event the Beneficiaries are not able to, or choose not to select a successor, then upon motion to the Bankruptcy Court by any party in interest, the Bankruptcy Court shall select a successor. The compensation, if any, of the successor Litigation Trustee shall be as stated in the instrument evidencing such successor Litigation Trustee's appointment.

11.3 **Acceptance of Appointment by Successor Litigation Trustee**. Each successor Litigation Trustee appointed hereunder shall execute an instrument accepting such appointment along with a bond in the amount specified in this Agreement. Thereupon, such successor Litigation Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trust, and duties of his or its predecessor in the Litigation Trust hereunder with like effect as if originally named therein; but the prior Litigation Trustee shall nevertheless, when requested in writing by the successor Litigation Trustee, execute and deliver any instrument or instruments conveying and transferring to such successor Litigation Trustee upon the Litigation Trust herein expressed, all the estates, properties, rights, powers, and trusts of such prior Litigation Trustee, and shall duly assign, transfer, and deliver to such successor Litigation Trustee all property and money held by him hereunder. Notwithstanding the appointment of a successor Litigation Trustee, the prior Litigation Trustee shall, without limitation, continue to be entitled to indemnity as provided in this Agreement.

## ARTICLE 12

## CONCERNING THE BENEFICIARIES

12.1 **Limitation on Suits by Beneficiaries**. No Beneficiary shall have any right by virtue of any provision of this Agreement to institute any action or proceeding at law or in equity against any party upon, under, or with respect to the Trust Estate.

{00380290-5}

12.2  **Requirement of Undertaking**.  The Litigation Trustee may request any court to require, and any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Litigation Trustee for any action taken or omitted by the Litigation Trustee, that the filing party in such suit file with the court an undertaking under which the filing party agrees to pay the Litigation Trust's costs of such suit, including, but not limited to, reasonable attorneys' fees and expenses.  Before requiring an undertaking, the court may consider the merit and good faith of the claims or defenses made by such filing litigant.

12.3  **Beneficiary Consent**.  Wherever beneficiary consent is required under this Agreement, such consent shall be deemed to have been met when both a majority in number and two-thirds in dollar amount of the Beneficiaries who vote, vote in favor of the relief requested.  For voting purposes, each Beneficiary shall have one vote notwithstanding the number of claims he may have, and the dollar amount attributable to such Beneficiary shall be the dollar amount of the Beneficiary's interest in the Trust Estate as of the date of the vote.

## ARTICLE 13

## AMENDMENTS

13.1  **Amendments**.  Subject to Bankruptcy Court approval, the Litigation Trustee may make and execute such declarations amending this Agreement for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or amendments hereto; provided, however, that no such amendment shall permit the Litigation Trustee to act in any manner that is inconsistent with the Plan, or to affect the Beneficiaries' rights to receive their share of any distributions under this Agreement and the Plan.

13.2  **Notice and Effect of Amendment**.  Promptly after the execution by the Litigation Trustee of any declaration of amendment permitted by and pursuant to Article 14.1 hereof, the Litigation Trustee shall give notice of the substance of such amendment to: (i) the Beneficiaries who are the holders of the twenty largest allowed unsecured claims; (ii) all parties that filed requests for notice or notices of appearance in the Bankruptcy Case; and (iii) all Beneficiaries who request in writing a copy of such amendments.  Upon the execution of any such declaration of amendment by the Litigation Trustee, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and

immunities of the Litigation Trustee and the Beneficiaries under this Agreement shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment.

## ARTICLE 14

## MISCELLANEOUS PROVISIONS

14.1 **Further Assurances**. The Debtor and Litigation Trustee shall promptly execute and deliver such further instruments and do such further acts as may be necessary or proper to more effectively transfer to the Litigation Trustee any portion of the Trust Estate intended to be conveyed pursuant to the Plan and this Agreement and to otherwise carry out the intentions of this Agreement and Plan.

14.2 **Retention of Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over this Agreement and the Litigation Trust established hereby as set forth in the Plan, and concerning matters relating to, without limitation, the enforcement, modification and interpretation of its provisions, determining all disputes with respect to this Agreement, approving successor Litigation Trustee, or appointing same in accordance with this Agreement.

14.3 **Filing Documents**. This Agreement shall be filed or recorded in such offices as the Litigation Trustee may determine to be necessary or desirable. A copy of this Agreement and all amendments shall be available at the Litigation Trustee's office during regular business hours for inspection by any Beneficiary or his duly authorized representative. The Litigation Trustee shall file or record any amendment of this Agreement in the same places where the original Agreement is filed or recorded. The Litigation Trustee shall file or record any instrument which relates to any change of address of the office of the Litigation Trustee in the same places where the original Agreement is filed or recorded.

14.4 **Intention of Parties to Establish Trust**. This Agreement is not intended to create and shall not be interpreted as creating an association, partnership, or joint venture of any kind.

14.5 **Governing Law**. This Agreement shall be governed and construed in accordance with the laws of the State of Louisiana, without giving effect to the principles of conflicts of law.

14.6 **Severability**. In the event any provision of this Agreement or the application thereof to any person or circumstances shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances

other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

14.7     **No Assignment.** Except as otherwise provided herein, the obligations, duties or rights of the Litigation Trustee under this Agreement shall not be assignable, voluntarily, involuntarily or by operation of law, and any such attempted assignment shall be void.

15.1.     **Calendar Year.** The Litigation Trust will utilize the calendar year for tax and financial accounting purposes.

14.8     **Inconsistency With Plan.** In the event of any inconsistency between the provisions of the Plan and this Agreement, the terms of the Plan shall govern.

14.9     **Third Party Claims.** This Agreement in no way prohibits, enjoins, restrains, or in any way interferes with any Beneficiaries' rights to pursue, litigate or compromise any and all claims and causes of action of any kind or nature which any Beneficiary may have, hold or acquire against any third party or parties, singular or plural, or their respective insurers. To the contrary, all such claims and cause of action are specifically preserved by such Beneficiaries.

14.10     **Effectiveness.** This Agreement shall become effective on the Effective Date (defined in the Plan).

14.11     **Notices.** Any notice or other communication hereunder shall be deemed to have been sufficiently given, for all purposes, three days after deposit, postage prepaid, in the U.S. Mail and addressed to a Beneficiary at his address as shown in the records of the Litigation Trustee, and addressed to the Litigation Trustee at:_____
_____, except that notice of change of address shall be effective only upon receipt thereof.

14.12     **Consent to Jurisdiction.** Each of the parties hereto, and each Beneficiary by its acceptance of the benefits of the Litigation Trust created hereunder: (i) consents and submits to the jurisdiction of the federal courts of the United States for the Eastern District of Louisiana, for all purposes concerning this Agreement, including, without limitation, any action or proceeding instituted for the enforcement of any right, remedy, obligation or liability arising under or by reason of this Agreement; and (ii) consents and submits to venue in New Orleans, Louisiana.

{00380290-5}

14.13 __Waiver of Jury Trial__. ANY AND ALL RIGHT TO TRIAL BY JURY IS HEREBY WAIVED, AND THERE SHALL BE NO RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

14.14 __Counterparts__. This Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed and acknowledged as of the day set forth in the opening paragraph hereof.

**DEBTOR**

**RemoteMD, LLC**

By: _/s_____

Name: _____
Title: _____

**LITIGATION TRUSTEE**

By: _/s/_____
Name: _____

**Exhibit B**
**Liquidation Analysis**

| | Sch A/B Values | Liquidation Value 08/31/2023 based on a 25% Value |
|---|---|---|
| Cash On Hand | $10,696.00 | $86,443.69 |
| Accounts Receivable | $1,744,376.67 | $274,340.00 |
| Evergreen Reserves | | $4,168.35 |
| Furniture & Fixtures | $26,118.00 | $6,529.50 |
| Office Equipment | $414,819.85 | $103,704.96 |
| Machinery Equipment | $360,479.16 | $90,119.79 |
| Cameras | $86,936.25 | $21,734.06 |
| TM/Videoconf | $56,369.02 | $14,092.26 |
| 880 W. Commerce | $206,658.76 | $0.00 |
| Trademarks | $58,173.00 | $0.00 |
| Goodwill | $45,000.00 | $0.00 |
| | | |
| Total Assets Available | $3,009,626.71 | $601,132.61 |

**Administrative Expense**

| | |
|---|---|
| Chapter 7 Costs | $45,000.00 |
| Chapter 7 Trustee Fees | $23,002.00 |
| Priority Tax Claims | $17,209.58 |
| Est. Chp. 11 Adm. Claims | $152,500.00 |
| | |
| Total Expenses | $237,711.58 |

Secured Claims

| | |
|---|---|
| TX Workforce | $12,450.66 |
| | |
| Total Secured Claims | $12,450.66 |
| | |
| Amount Aval. For Unsecured Clams | $350,970.37 |
| Unsecured Claims - high limit | $7,397,377.51 | 4.74% |
| Unsecured Claims - lower limit | $6,566,856.62 | 5.34% |

Notes:
Schedule A/B are at book value
Debtor is no longer located at 880 W Commerce
Accounts Receiveable as of Aug. 31, 2023

REMOTE MD, L.L.C.
Pro-Forma
For period of: July 1, 2023 through June 30, 2026

| | 2023-2024 TOTAL | | 12 mo | 2024-2025 TOTAL | | 12mo | 2025-2026 TOTAL | | 12mo | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | $ | % | | $ | % | | $ | % | | $ | % |
| Sales | 1,286,220.96 | | | 1,479,154.10 | | | 1,745,401.84 | | | 4,510,776.91 | |
| Projected Sales | 1,479,154.10 | | | 1,745,401.84 | | | 2,111,936.23 | | | 5,336,492.18 | |
| Difference +/- | 192,933.14 | 15.00% | | 266,247.74 | 18.00% | | 366,534.39 | 21.00% | | 825,715.27 | 18.31% |
| Additional Revenue | 110,215.11 | 6.93% | | 232,309.77 | 11.75% | | | | | 342,524.88 | 6.03% |
| **Grand total Projected Revenue** | 1,589,369.21 | | | 1,977,711.61 | | | 2,111,936.23 | | | 5,679,017.06 | |
| | | | | | | | | | | | |
| **Cost of Services** | | | | | | | | | | | |
| Wages Medics | 360,617.83 | 22.69% | | 436,350.46 | 22.06% | | 469,905.81 | 22.25% | | 1,266,874.55 | 22.31% |
| Payroll Taxes Medics | 6,671.43 | 0.42% | | 8,072.48 | 0.41% | | 8,693.26 | 0.41% | | 23,437.18 | 0.41% |
| Wages Med Control Dr's | 388,616.02 | 24.45% | | 425,000.00 | 21.49% | | 450,000.00 | 21.31% | | 1,263,616.48 | 22.25% |
| Benefits Medics | 34,834.41 | 2.19% | | 35,000.00 | 1.77% | | 45,617.82 | 2.16% | | 115,452.23 | 2.03% |
| Insurance for Jobs | 60,000.00 | 3.78% | | 67,000.00 | 3.39% | | 75,000.00 | 3.55% | | 202,000.00 | 3.56% |
| Medical Supplies & Equipment | 25,000.00 | 1.57% | | 35,000.00 | 1.77% | | 37,500.00 | 1.78% | | 97,500.05 | 1.72% |
| Med Control Phones/Ipads | 15,000.00 | 0.94% | | 20,000.00 | 1.01% | | 22,500.00 | 1.07% | | 31,740.00 | 0.56% |
| Other Costs (for Education Classes etc) | 28,000.00 | 1.76% | | 28,000.00 | 1.42% | | 28,000.00 | 1.33% | | 84,000.00 | 1.48% |
| Total Cost of Services/Goods | 918,739.69 | 57.81% | | 1,054,422.94 | 53.32% | | 1,137,216.89 | 53.85% | | 3,084,620.49 | 54.32% |
| GROSS PROFIT | 670,629.52 | 42.19% | | 923,288.67 | 46.68% | | 974,719.34 | 46.15% | | 2,594,396.56 | 45.68% |
| | | | | | | | | | | | |
| Wages: Admin | 243,607.86 | 15.33% | | 393,000.00 | 19.87% | | 425,000.00 | 20.12% | | 1,061,608.21 | 18.69% |
| Vacation Pay | 8,770.29 | 0.55% | | 15,050.14 | 0.76% | | 16,545.55 | 0.78% | | 40,365.99 | 0.71% |
| **Total Payroll** | 252,378.15 | 15.88% | | 408,050.14 | 20.63% | | 441,545.55 | 20.91% | | 1,101,974.21 | 19.40% |
| | | | | | | | | | | | |
| Payroll Taxes | 11,178.18 | 0.70% | | 15,342.98 | 0.78% | | 18,162.65 | 0.86% | | 44,683.83 | 0.79% |
| Workman's Compensation | 25,262.00 | 1.59% | | 28,275.51 | 1.43% | | 34,213.37 | 1.62% | | 87,750.91 | 1.55% |
| Health Insurance | 16,363.71 | 1.03% | | 22,500.00 | 1.14% | | 25,500.00 | 1.21% | | 64,363.73 | 1.13% |
| 401k Match | 10,095.13 | 0.64% | | 16,322.01 | 0.83% | | 17,661.82 | 0.84% | | 44,078.97 | 0.78% |
| **Total Fringe Benefit** | 62,899.01 | 3.96% | | 82,440.50 | 4.17% | | 95,537.84 | 4.52% | | 240,877.43 | 4.24% |
| | | | | | | | | | | | |
| Rent | 47,724.00 | 3.00% | | 47,724.00 | 2.41% | | 47,724.00 | 2.26% | | 48,000.00 | 0.85% |
| Computer Software | 32,000.00 | 2.01% | | 33,000.00 | 1.67% | | 35,000.00 | 1.66% | | 147,820.83 | 2.60% |
| Utilities & Property Tax | 12,000.00 | 0.76% | | 18,000.00 | 0.91% | | 24,000.00 | 1.14% | | 9,000.00 | 0.16% |
| Telephone | 13,452.00 | 0.85% | | 13,452.00 | 0.68% | | 13,452.00 | 0.64% | | 13,452.00 | 0.24% |
| Business Insurance | 31,787.38 | 2.00% | | 34,908.04 | 1.77% | | 33,000.00 | 1.56% | | 99,695.42 | 1.76% |
| Payroll Service | 11,761.33 | 0.74% | | 12,915.97 | 0.65% | | 15,628.33 | 0.74% | | 40,305.63 | 0.71% |
| Bank Charge | 14,340.00 | 0.90% | | 14,500.00 | 0.73% | | 19,429.81 | 0.92% | | 48,269.81 | 0.85% |
| Total General & Administrative Expenses | 163,064.72 | 10.26% | | 174,500.01 | 8.82% | | 188,234.14 | 8.91% | | 406,543.70 | 7.16% |
| | | | | | | | | | | | |
| TOTAL OPERATING PROFIT | 192,287.65 | 12.10% | | 258,298.02 | 13.06% | | 249,401.81 | 11.81% | | 845,001.23 | 14.88% |
| | | | | | | | | | | | |
| Operational Expense Reserve-10% | 16,306.47 | 1.03% | | 17,450.00 | 0.88% | | 18,823.41 | 0.89% | | 52,579.89 | 0.93% |
| Administration Expenses/Professional Fees | 152,500.00 | 9.60% | | - | 0.00% | | - | 0.00% | | 152,500.00 | 2.69% |
| Tax Distribution | 15,000.00 | 0.94% | | 15,000.00 | 0.76% | | 15,000.00 | 0.71% | | 45,000.00 | 0.79% |
| Claim Payment Class 1 (Convenience Claim) | 5,000.00 | 0.31% | | 5,000.00 | 0.25% | | - | 0.00% | | 10,000.00 | 0.18% |
| | | | | | | | | | | | |
| TOTAL OPERATING EXPENSES | 188,806.47 | 11.88% | | 37,450.00 | 1.89% | | 33,823.41 | 1.60% | | 260,079.89 | 4.58% |
| | | | | | | | | | | | |
| **NET CASH FLOW** for Distribution to Class 2 | 3,481.17 | 0.22% | | 220,848.02 | 11.17% | | 215,578.39 | 10.21% | | 584,921.34 | 10.30% |

Exhibit D

Claims List

Class 2 - Convenience Class

| Creditor | Schedule | Proof of Claim | Allowed Amount |
|---|---|---|---|
| ADT Security | F | | $62.07 |
| AJ English, Bound Tree | F | | $867.86 |
| ATT - 7926225 | F | | $1,221.04 |
| Bound Tree Medical LLC | | 32 | $867.86 |
| Comptroller of Public Accounts | | 36 | $1,260.95 |
| Concentra Occupational Health Centers | F | | $250.50 |
| CT Corporation Systems | F | | $914.00 |
| FedEx | F | | $1,332.19 |
| GC Office Products | F | | $481.88 |
| Global Data Systems | F | | $796.56 |
| Grainger | F | | $281.95 |
| Heathrow Medical | F | | $537.76 |
| IRS | | 7 | $600.00 |
| LifeLoc Technologies | F | | $44.35 |
| Maersk Training | F | | $815.00 |
| Massachusetts Medical Board | F | | $1,425.00 |
| McGriff Seibels & Williams Inc. | F | | $666.85 |
| Modio Health Inc. | F | | $1,633.22 |
| NAEMT | F | | $20.00 |
| NHST Global Publications | F | | $86.24 |
| Norman Wachtel | F | | $371.25 |
| Orga Nice | F | | $112.00 |
| Phillips Kaiser PLLC | F | | $1,555.75 |
| Quest Diagnostics | F | | $65.00 |
| Southern Diagnostics Laboratory LLC | F | | $125.00 |
| Telicity | F | | $795.64 |
| The Commerical Collection Corp. of NY | F | | $1,440.49 |
| TIG Diagnostics LLC | F | | $90.00 |
| Tri State Medical | F | | $327.60 |
| Veriforce | F | | $1,275.00 |
| Vsee Lab, Inc. | F | | $148.00 |
| Wex Health | F | | $257.70 |
| Worksaver Employee Testing Systems, Inc. | F | 11 | $2,200.00 |
| Total | | | $24,212.62 |

EXHIBIT D
Class 3 - General Unsecured Claims

| Creditor | Schedule | Proof of Claim | Claim Amount |
|---|---|---|---|
| Alere Toxicology Service, Inc. | F | | $3,633.00 |
| American Express | F | | $38,977.17 |
| American Longshore Mutual Assoicaiton, Ltd. | | | $19,049.00 |
| BCBS | F | | $23,164.68 |
| CareAlign | F | 4 | $19,985.00 |
| Cares-Worth Medical Centre & Pharmacy | F | 26 | $143,973.05 |
| Central Dispatch, Inc. | | 43 | $43,085.14 |
| Chaffe McCall | F | 12 | $26,963.70 |
| Cooper CPA Group PC | F | | $7,979.00 |
| Data Sales | D | 21 | $391,068.06 |
| Eflex Recruiting LLC | F | 16 | $18,360.00 |
| Elman (CS) | F | 27 | $103,420.24 |
| Eversheds Southerland (US) LLP | F | | $37,484.74 |
| Favorites | F | 14 | $10,509.58 |
| Fidelity Bank | F | | $6,641.10 |
| Fishman Haygood LLP | F | | $7,104.00 |
| Gloria Nash-McNair | | 38 | $8,281.70 |
| Gro HR Consulting | F | 3 | $65,234.00 |
| Intacc Corporation | F | | $19,845.00 |
| Inventory Optimization Solutions, LLC | F | | $6,025.00 |
| Jones Walkder | F | | $8,395.00 |
| Julian Lott | F | | $3,570.00 |
| Kerr Consulting | F | | $17,104.38 |
| KJG Strategies | F | 31 | $34,998.42 |
| Law Office of Sesha Kalapatapu | F | | $26,280.00 |
| Logimedex SA de CV | F | | $2,661.68 |
| LSU Health Sciences Center | F | 9 | $27,672.91 |
| McKesson Medical | F | | $7,010.03 |
| Medi-Chest, Inc. | F | 2 | $26,082.15 |
| Metroplex Travel | F | | $12,000.00 |
| Michael Kotler * | | 34 | $0.00 |
| Mody Capital | | 39 | $251,607.87 |
| Mutual of Omaha | F | | $8,599.28 |
| Nelson Mullins Ray | F | 15 | $6,487.50 |
| NetQuarry Inc | F | 20 | $3,000.00 |
| People Haulers | F | 5 | $3,891.54 |
| Phelps Dunbar | F | | $16,375.72 |
| Porzio Bromberg & Newman | F | | $42,178.23 |
| Postlethwaite | F | 10 | $22,450.00 |
| Premier Laboratory Services | F | 25 | $1,511,016.54 |

| | | | |
|---|---|---|---|
| Quantive Business Valuations | F | | $9,500.00 |
| Ramps Logistics | | 29 | $2,521.82 |
| Ramps Logistics | F | 30 | $22,677.59 |
| Robert Dudley | F | 13 | $2,608,218.94 |
| SAP Concur | F | | $3,793.08 |
| Securitas Security Services USA, Inc. | F | 35 | $86,466.71 |
| Seroentine Road Family Care | F | | $8,751.14 |
| Shoreline Medical Building LLC | F | 6 | $7,700.00 |
| Siemens Healthcare Diagnostices, Inc. | F | 24 | $166,005.84 |
| St. Joseph Mercy Hospital | F | 33 | $118,397.68 |
| Steel Strategies | | 19 | $708,000.00 |
| Steel Strategies | | 18 | $90,102.52 |
| Steel Strategies | F | 17 | $503,099.16 |
| Strategic Health Care | F | | $10,000.00 |
| The American Equity Underwriters | F | | $8,471.00 |
| Vave Health Inc. | F | | $6,344.00 |
| Total | | | $7,392,213.89 |
| | | | |
| * Subordinate Insider Claim | | | |

## EXHIBIT E

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT LOUISIANA

| | |
|---|---|
| **In re** | : **NO: 22-11254** |
| | : |
| **REMOTEMD, LLC,** | : **CHAPTER 11** |
| | : **SUBCHAPTER V** |
| **Debtor.** | : |
| | : |

---

### NOTICE OF CONVENIENCE CLASS ELECTION

PLEASE TAKE NOTICE that _____ elects to have

its claim in the amount of $_____ reduced to $2,500.00 and consents to receive a

distribution under the confirmed plan of reorganization as a member of Class 1 – Convenience Claims.


Date: _____


Authorized by:

Creditor: _____


By: _____


Address: _____

_____